# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| **SINMIER, LLC,** | CASE NO. 3:19 CV 2854 |
| Plaintiff, | |
| v. | JUDGE JAMES R. KNEPP II |
| **EVEREST INDEMNITY INSURANCE COMPANY, et al.,** | |
| Defendants. | MEMORANDUM OPINION AND ORDER |

## INTRODUCTION

On October 28, 2020, Defendants Everest Indemnity Insurance Company and Specialty Insurance Group filed a Third-Party Complaint against Inderjit Grewal, the sole and managing member of Defendant Vintro Hotels & Resorts Ohio, LLC. (Doc. 86). In response, Third-Party Defendant Grewal filed a Motion to Dismiss. (Doc. 112). Everest Indemnity Insurance Company and Specialty Insurance Group filed an Opposition (Doc. 118) and Mr. Grewal filed a Reply (Doc. 120).

For the reasons discussed herein, Third-Party Defendant's Motion to Dismiss is DENIED.

## BACKGROUND

This case involves a complex insurance dispute between multiple parties that would serve well as an exam scenario for any Civil Procedure seminar. However, the Court will summarize the background only to the extent necessary to understand the pending motion.

Underlying Case Summary

Initially, Plaintiff Sinmier, LLC ("Sinmier") filed a Complaint against Everest Indemnity Insurance Company ("Everest"), Bankers Insurance, LLC and Vintro Hotels & Resorts Ohio, LLC ("Vintro"). (Doc. 1). Sinmier, as a mortgagee to Vintro, sought damages and declaratory relief against Defendants related to insurance pay-outs for wind and water damage to the Maui Sands Resort ("Property") in Sandusky, Ohio which Vintro owned at the time . (Doc. 1). Over the course of the litigation, additional defendants, including Specialty Insurance Group ("SIG"), a subsidiary of Everest, were brought into the lawsuit. (Doc. 76). Between the Defendants there are several outstanding counter- and cross-claims with respect to liability. *See, e.g.*, Docs. 76, 82, 94, 95, 96, 97, 98, 99.

Vintro is an Ohio limited liability company with Mr. Grewal as its sole member. (Doc. 86, at ¶¶7-9; Doc. 118-5). Vintro purchased the Property with the assistance of a $7 million mortgage held by Sinmier. (Doc. 86, ¶10; Doc. 118-5). Mr. Grewal personally guaranteed this loan. *Id*. at ¶30. In October 2018, Everest issued an insurance policy to Vintro for certain property coverage; SIG was the producer of this policy. *Id*. at ¶¶11, 12. In January 2019, Vintro submitted a claim for alleged loss related to wind and water damage at the Property. *Id*. at ¶14. Everest advanced funds to Vintro under the policy for remediation of the Property in February and March 2019. *Id*. at ¶15. Later in June 2019, Everest and Mr. Grewal, on behalf of Vintro, entered into a Settlement Agreement which provided additional funds for remediation of the Property and business interruption losses. *Id*. at ¶¶18, 19, 36.

Subsequently, and pursuant to this Settlement Agreement, Everest requested Vintro indemnify and hold it harmless in the underlying litigation; Vintro denied Everest's request. (Doc. 82, ¶¶55-60). Thereafter, Everest and SIG (collectively and hereinafter, "Everest") brought their

Third-Party Complaint asserting Vintro is a sham entity controlled by Mr. Grewal and requesting the Court pierce the corporate veil and find Mr. Grewal liable for fraud and breach of contract in relation to the Settlement Agreement. *See* Doc. 86. Everest further sought indemnification and subrogation from Mr. Grewal in the event Everest is found liable in the underlying litigation. *Id.*

<u>Facts Relevant to Personal Jurisdiction</u>

In response to Mr. Grewal's Motion to Dismiss, Everest asserted the following facts, by way of affidavit and exhibits, in support of the Court's jurisdiction. (Doc. 118, at 7-12; Doc. 118-1 *et seq.*). At this juncture, the Court must construe these facts in a light most favorable to Everest.

First, Everest presents numerous instances of Mr. Grewal's business transactions in relation to the purchase, upkeep, and remediation of the Property as support for jurisdiction. (Doc. 118, at 16-18). For example, Mr. Grewal executed purchase paperwork for the Property (Docs. 118-5, 118-6); he applied for insurance on the Property (Docs. 76-13, 76-14); he was designated as the "responsible person" and "on-site contact" in relation to licensing with the Ohio Department of Agriculture (Docs. 118-7, 118-8); he communicated with the Property's utility providers (Doc. 118-9, 118-10); he executed a contract for remediation work post-loss (Doc. 118-4); and he executed proofs of loss for the Property's insurance claim (Doc. 118-11). Further, Mr. Grewal was physically present in Ohio for multiple site inspections in relation to the insurance claim. (Docs. 118-12, 118-13); *Sinmier, LLC v. Vintro Hotels & Resorts, Ohio LLC, et al.*, Case No. 3:19-cv-705 (N.D. Ohio) (Doc. 17-1, at ¶¶ 5, 6, 8) (hereinafter "*Sinmier I*").

Second, Everest cites Mr. Grewal's prior appearances in this Court to defend against a foreclosure action on the Property in support of personal jurisdiction in the present litigation. (Doc. 118, at 7-9). In March 2019, Sinmier instituted a foreclosure and receivership action in this Court claiming the Property had been abandoned. *See Sinmier I*, Doc. 1. Sinmier sued Mr. Grewal

3

individually in that action as the personal guarantor of the loan. *See Sinmier I*, Docs. 1 & 19 at ¶5. Mr. Grewal and Vintro filed a joint Answer in that matter. *See Sinmier I*, Doc. 19. Mr. Grewal did not contest personal jurisdiction in the prior matter. *Id*. Instead, Mr. Grewal actively participated in the litigation, including filing motions, oppositions and declarations in support of the same. *See Sinmier I*, Docs. 11, 11-1, 17, 17-14, 20. In one such declaration, Mr. Grewal attested that he had been present at the Property as recently as June 1, 2019. *Sinmier I*, Doc. 17-1, at ¶¶ 5, 6, 8. Sinmier, Vintro, and Mr. Grewal ultimately settled the matter in October 2019 and the case was officially dismissed on April 9, 2020. *See Sinmier I*, Doc. 40.

Lastly, ongoing discovery in the present matter provides insight into Vintro and Mr. Grewal's financial dealings which Everest claims are relevant to personal jurisdiction. *See* Doc. 118, at 10-12. Everest identifies Vintro's undercapitalization, failure to pay bills, and use of business funds for emergency veterinarian services, nail spa services, a gym membership, clothing purchases, dry cleaning bills, an adult dating website, and the purchase of a luxury vehicle. (Doc. 86, at ¶¶25-44). Further, Everest asserts Vintro's bank records show improper diversion of Settlement Agreement funds to a luxury car dealership and a family trust. (Docs. 86-1, 86-2, & 86-3). Mr. Grewal also stood as personal guarantor for Vintro's obligations on multiple occasions in relation to the Property. *See* Docs. 118-2, 3, 4; *Sinmier I*, Doc. 19, at ¶5.

### STANDARD OF REVIEW

The plaintiff bears the burden of establishing personal jurisdiction. *Walker v. Concoby*, 79 F. Supp. 2d 827, 829 (N.D. Ohio 1999). When personal jurisdiction is challenged under Federal Civil Rule 12(b)(2) and no evidentiary hearing has been held, the Court "will not consider facts proffered by the defendant that conflict with those offered by the plaintiff, and will construe the facts in a light most favorable to the nonmoving party." *Bird v. Parsons*, 289 F.3d 865, 871 (6th

4

Cir. 2002). However, "[o]nce the defense has been raised, then the plaintiff must sustain [his] burden of proof in establishing jurisdictional facts through sworn affidavits and competent evidence." *Hammons v. Lasik Vision Inst.*, *LLC*, 2006 WL 2583162, at *3 (W.D. Tenn.) A *prima facie* showing of personal jurisdiction is all that is required. *See Bird*, 289 F.3d at 871; *see also Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991).

## DISCUSSION

Personal Jurisdiction

In a diversity case, plaintiff must show (1) the defendant is amenable to suit under the forum's long-arm statute and (2) that the exercise of personal jurisdiction comports with federal due process requirements. *Walker*, 79 F. Supp. 2d at 829 (citing *Compuserve, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996)). Where, like here, the court relies on written submissions and affidavits, the plaintiff's burden to satisfy these two factors is "relatively slight". *Air Prods. & Controls Inc. v. Safetech Int'l Inc.*, 503 F.3d 544, 549 (6th Cir. 2007).

*Ohio Long-Arm Statute*

Pursuant to Ohio's long-arm statute, a court may exercise personal jurisdiction over a defendant in Ohio when, in pertinent part, the cause of action arises from a person, directly or through an agent, transacting any business in the state. Ohio Rev. Code § 2307.382(A)(1). "The 'transacting business' clause in Ohio's long-arm statute is broader than the word 'contract' and encompasses 'carrying on' business and 'having dealings' within the state." *Walker*, 79 F. Supp. 2d at 831 (citing *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 53 Ohio St. 3d 73, 75 (1990)). Transacting business also includes conducting negotiations. *Id*. An additional factor for consideration is whether the nonresident initiated the business dealings. *Barnabus Consulting Ltd. v. Riverside Health Sys., Inc.*, 2008-Ohio-3287, ¶ 15 (Ohio Ct. App.).

5

Here, Mr. Grewal undertook business transactions in Ohio as the sole member of Vintro. For example, he executed the purchase of the Property, he communicated with utility companies in Ohio, and he executed a contract for remediation of the Property. *See* Docs. 118-4; 118-5; 118-6; 118-9; 118-10. Further, Mr. Grewal also stood as personal guarantor of Vintro's loans and defended against litigation related to the Property in this Court, in both his personal and official capacity. *See* Doc. 86, at ¶30; *Sinmier I*, Docs. 1 & 19. In particular as relates to the Third-Party Complaint, Mr. Grewal appeared at least three times in Ohio to attend site inspections at the Property; these site inspections were made for the purpose of assessing the insurance claim. *See* Docs. 86, 118-12, 118-13; *Sinmier I*, Doc. 17-1, at ¶¶ 5, 6, 8. Mr. Grewal also initiated these insurance claims by filing proofs of loss to the insurer; two of which were executed and notarized in Ohio. (Doc. 118-11). Lastly, he executed the Settlement Agreement in relation to the Property's loss which is the underlying basis of the Third-Party Complaint's allegations of fraud and breach of contract. (Doc. 86, at ¶¶7, 19).

Thus, Everest has adequately pled and evidenced sufficient facts to satisfy the "transacting business" clause of Ohio's long-arm statute. *See U.S. Sprint Commc'ns Co. Ltd. P'ship v. Mr. K's Foods, Inc.*, 68 Ohio St. 3d 181, 185 (1994) (holding that whether a nonresident defendant transacted business in Ohio relies on particularized fact situations and is a case-by-case determination).

Mr. Grewal argues his actions in Ohio were done in his official capacity as Vintro's representative and thus, he is not subject to the Court's jurisdiction in his individual capacity. *See* Docs. 112, 120. The fiduciary shield doctrine prevents an "individual officer of a corporation from being subject to personal jurisdiction in the forum state merely because the corporation is subject

6

to such jurisdiction". *Commodigy OG Vegas Holdings LLC v. ADM Labs*, 417 F. Supp. 3d 912, 924 (N.D. Ohio 2019).

However, this doctrine is not absolute. *Id.* The Sixth Circuit explained "the mere fact that the action connecting defendants to the state were undertaken in an official rather than personal capacity does not preclude the exercise of personal jurisdiction over those defendants." *Balance Dynamics Corp. v. Schmitt Indus.*, 204 F.3d 683, 698 (6th Cir. 2000). Where a corporate officer was a personal, active participant in the alleged tortious conduct, the fiduciary shield doctrine does not prevent the exercise of personal jurisdiction. *Id*. at 697-98. The Sixth Circuit further observed even where personal jurisdiction over an individual would not ordinarily exist, where that individual is an alter ego of the corporation otherwise subject to the court's personal jurisdiction, personal jurisdiction over the individual is compatible with due process. *Estate of Thomson v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 362 (6th Cir. 2008).[1]

Here, Everest has adequately pled alter ego and tortious conduct theories in its Third-Party Complaint, and provided additional evidence of the same in support of its Opposition to Mr. Grewal's Motion, to render the fiduciary shield doctrine inapplicable. Everest specifically alleges that Vintro is a sham entity subject to Mr. Grewal's complete control, as demonstrated by Vintro's undercapitalization, failure to pay bills, and bank records which appear to show multiple purchases for non-business related expenses. (Doc. 86, at ¶¶25-44; Docs. 86-1-3). Everest also cites Mr. Grewal's repeated personal guarantee of Vintro's business obligations. *See* Docs. 118-2, 3, 4; *Sinmier I*, Doc. 19, at ¶5. At this juncture, these allegations are sufficient to establish that Mr. Grewal and Vintro were indistinguishable such that the fiduciary shield will not apply. *See Taylor Steel, Inc. v. Keeton*, 417 F.3d 598, 605 (6th Cir. 2005) (outlining factors considered in determining

---

1. Mr. Grewal essentially admits jurisdiction over Vintro is proper. *See* Doc. 112, at 5.

7

if individual is corporation's alter ego) (citing *LeRoux's Billy Supper Club v. Ma*, 77 Ohio App. 3d 417 (Ohio Ct. App.)). Further, the Third-Party Complaint includes specific allegations of fraud and theft of settlement funds against Mr. Grewal. (Doc. 86, at ¶¶45-66). *See Commodigy OG*, 417 F. Supp. 3d at 924 (when a plaintiff alleges an individual defendant "was personally involved with the alleged torts, including fraud, in the course of his employment" the fiduciary shield doctrine will not apply); *see also Franklin Prods., Inc. v. Gen. Nutrition Corp.*, 2007 WL 2462665, at *3 (S.D. Ohio); *NPF XII, Inc. v. Special Care, Inc.*, 2001 WL 36951418, at *4 (S.D. Ohio).

Taking these facts and allegations in a light most favorable to Everest, the fiduciary shield doctrine does not preclude the Court from exercising personal jurisdiction over Mr. Grewal. Thus, Everest has, at this stage, satisfied Ohio's long-arm statute.

*Federal Due Process*

With Ohio's long-arm statute satisfied, the Court must also decide whether exercising its jurisdiction comports with "traditional notions of fair play and substantial justice." *Compuserve*, 89 F.3d at 1263 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The Sixth Circuit has translated this general rule into a three-part test: 1) the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state; 2) the cause of action must arise from the defendant's activities there; and 3) the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to the make the exercise of jurisdiction over the defendant reasonable. *Southern Machinery Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

Purposeful Availment

A defendant purposely avails himself of a forum state when he intentionally establishes "minimum contacts" in the forum and should reasonably anticipate being subject to litigation in that state. *Burger King v. Rudzewicz*, 471 U.S. 462, 474 (1985). Random, fortuitous, or attenuated

8

contacts do not establish purposeful availment in the forum state. *Id*. Purposeful availment is established when: 1) a defendant conducts business, creates obligations, or sets in motion business operations in a state; 2) that conduct has an impact on that state's commerce; and 3) the defendant should have reasonably foreseen that the transaction would have consequences in that state. *Tri-State Equip. Rentals, LLC v. Chevalier*, 2007 WL 2571672, at *3 (E.D. Ky.) (citing *Mohasco*, 401 F.2d at 382-83).

Mr. Grewal purposefully availed himself of Ohio's laws by forming his business, Vintro, in Ohio. Also, as Vintro's sole member, he purchased property in Ohio and operated a business here. *See* Docs. 76, at ¶¶4, 12, 13; 86, at ¶¶7, 10; 118-5. He even personally guaranteed the loan that permitted Vintro to purchase the Property. (Doc. 86, at ¶30). *See Burger King*, 471 U.S. at 472-73 (noting the purposeful direction of one's activities toward a state is significant to personal jurisdiction). Furthermore, Mr. Grewal initiated insurance coverage for the Property and the business operation, upon which he later executed proofs of loss in Ohio. (Docs. 76-13, 76-14; 118-11). He was also present in Ohio on at least three occasions to attend site inspections at the Property related to the insurance claim. *See* Docs. 86, 118-12, 118-13; *Sinmier I*, Doc. 17-1, at ¶¶ 5, 6, 8. He ultimately entered into the Settlement Agreement which provided funds to the remediate the Property and cover Vintro's business interruption losses. (Doc. 86, at ¶¶18, 19, 36). It is from this insurance coverage that the instant dispute regarding fraud and misappropriation of settlement funds arises. (Doc. 86, at ¶¶45-66); *See Mid-Continent Excess & Surplus Ins. Co. v. Maher*, 2020 WL 1933226, at *3 (W.D. Mich.) (finding it reasonable to anticipate a lawsuit in the state where insurance coverage is to be in effect when defendant knowingly undertook to insure the business operation).

Mr. Grewal's contacts with Ohio are not random but intentional. Setting aside the fiduciary shield at this juncture as discussed *supra*, it is evident Mr. Grewal set in motion and operated a business in Ohio such that he should have reasonably foreseen his conduct would have consequences here. *See Mohasco*, 401 F.2d at 382-83. Thereafter, Mr. Grewal actively participated in the insurance claim related to the Property; the result of which was a Settlement Agreement intended to rehabilitate the Property and compensate for the losses suffered by Vintro's then-ongoing Ohio business. These actions are sufficient to create a substantial connection with Ohio such that Mr. Grewal should have reasonably anticipated being haled into court here. *CompuServe*, 89 F.3d at 1263; *see also Air Prods. & Controls, Inc.*, 503 F.3d at 550 (finding purposeful availment when the contacts with the forum state result from the action of the defendant himself).

<u>Cause of Action Arises from Mr. Grewal's Activities in Ohio</u>

Next, "[f]or specific jurisdiction to attach under the second *Mohasco* factor, the cause of action must arise from the defendant's activities in the forum state." *Commodigy OG*, 417 F. Supp. 3d at 921. "If a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts." *CompuServe*, 89 F.3d at 1267. Here, Mr. Grewal's contacts with Ohio – specifically his purchase of insurance for the Ohio business operation and the Property; and the subsequent filing of an insurance claim related to losses for the same – are directly tied to Everest's causes of action in the Third-Party Complaint. Put another way, without Mr. Grewal's initiation and settlement of the insurance claim for the Property there is no underlying basis for Everest's claims of fraud, theft and or breach of contract. *See Commodigy OG*, 417 F.Supp.3d at 921 (noting there must be a causal connection between the defendant's activities in the forum and the harm caused).

<u>Exercise of Personal Jurisdiction is Reasonable</u>

10

Lastly, to establish specific jurisdiction "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Mohasco*, 401 F.2d 374 at 381. When deciding this factor, "the Court must consider the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies." *Commodigy OG*, 417 F. Supp. 3d at 921. However, where the first two elements of due process have been met, "an inference arises that the third, fairness, is also present; only the unusual case will not meet this third criterion." *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1170 (6th Cir. 1988).

As discussed above, Mr. Grewal's actions in Ohio – such as the operation of Vintro and the filing of insurance claims related to an Ohio property – created a substantial enough connection to the forum to make the exercise of personal jurisdiction reasonable. Mr. Grewal argues he will be unduly burdened by defending this litigation in Ohio, as he currently resides in Florida. (Doc. 120, at p. 7). But Mr. Grewal has previously defended against an action related to the Property in this district in both his personal and official capacity while allegedly residing in Florida. *See Sinmier I*, *see also OurPet's Co. v. PetEdge, Inc*., 2013 WL 4817365, at *5 (N.D. Ohio) ("Indeed, PetEdge's participation in a prior case in this Court and before this Judge weigh heavily against [an undue burden]").

Further, the balance of equities otherwise lends itself to this Court's jurisdiction. For example, resolution of Everest's Third-Party Complaint will, in part, rely upon the findings of this Court in the underlying litigation, which has already substantially progressed. Additionally, as between Everest, SIG, and Mr. Grewal there is no other common forum that would satisfy Mr. Grewal's concerns of burdensomeness except as to shift the burden onto the Third-Party Plaintiffs

11

instead. *See Asahi Metal Indus. Co., Ltd. v. Superior Court*, 480 U.S. 102, 114 (1987) ("When minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant."). Overall, Mr. Grewal's actions in Ohio are sufficient to make the exercise of jurisdiction reasonable and the alleged burden argued by Mr. Grewal is not undue enough to justify overcoming the inference in favor of personal jurisdiction. *See Am. Greetings Corp*, 839 F.2d at 1170.

Thus, Everest has met its slight burden to make a *prima facie* showing of personal jurisdiction over Mr. Grewal pursuant to Ohio's long-arm statute and federal due process. *See Walker*, 79 F. Supp. 2d at 829; *see also Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991).

<u>Venue</u>

As a corollary to his argument that the Court lacks personal jurisdiction, Mr. Grewal also asserted venue was improper; however, he provides no further legal or factual support for this argument aside from an off-handed conclusion. (Doc. 112, at 2-3). Everest alleges venue is proper pursuant to 28 U.S.C. § 1391(b)(2). (Doc. 86, at ¶6). Under this provision, venue is appropriate in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated". In determining if venue is proper, the Court will take a plaintiff's allegations pertaining to the venue issue as true, unless contradicted by a defendant's affidavit. *Prudential Ins. Co. of Am. v. Lucak-Brewer*, 2019 WL 6844252, at *2 (N.D. Ohio) (citing 5B Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 1352 (3d ed. 2013)), *report and recommendation adopted*, 2019 WL 6841864. Generally, "most courts are quite lenient in finding that a substantial part of the

events occurs in a district." *Codonics, Inc. v. DatCard Sys., Inc.*, 2009 WL 1097453, at *3 (N.D. Ohio) (citing 14D Wright & Miller § 3 806.1).

Here, a substantial part of the events giving rise to the causes of action in the Third-Party Complaint occurred in this District. For example, Vintro owned and operated a business on the Property which is situated in this District. *See* Docs. 76, at ¶¶4, 12, 13; 86, at ¶¶7, 10; 118-5. It was damage to this Property, and the subsequent insurance claim executed in Ohio, that serves as the basis for both the underlying litigation and Everest's Third-Party Complaint. *See* Docs. 76 & 86 Furthermore, the Settlement Agreement resulting from the insurance claim, required remediation of the Property and the alleged failure to do so, is the source of one of Everest's breach of contract claims. (Doc. 86, at ¶¶59-66). The parties dispute whether remediation has occurred, and as such, it is only logical that determinations of fact regarding the Property's remediation are substantially related to the district in which the Property sits. Ultimately, a court need only establish a substantial connection exists, it "need not compare the connection of its district to the connection of other districts or decide what district has the most substantial connection." *Codonics, Inc.*, 2009 WL 1097453, at *3 (N.D. Ohio) (citing *First of Michigan Corp. v. Bramlet*, 141 F.3d 260, 264 (6th Cir. 1998)). Here, Everest has asserted sufficient facts to render venue appropriate in this district pursuant to § 1391(b)(2).

Leave to File Third-Party Complaint

Next, Mr. Grewal argued Everest had failed to obtain the Court's leave prior to filing this Third-Party Complaint in violation of Federal Rule of Civil Procedure 14; and thus, the Third-Party Complaint should be dismissed. (Doc. 112, at p. 5-6). However, this Court did grant such leave on September 24, 2020. (Doc. 71). The Court ordered:

> At the request of counsel, leave is granted to any party to a file an amended pleading or bring in additional parties to this case. Such filing is due by November 2, 2020.

13

Everest filed its Third-Party Complaint against Mr. Grewal on October 28, 2020. (Doc. 86). Therefore, Everest timely filed its Complaint and Mr. Grewal's argument is without merit.

Compliance with Settlement Agreement

Lastly, Mr. Grewal argues the Third-Party Complaint should be dismissed because Vintro has complied with the terms of the Settlement Agreement entered into between it and Everest; and as such, Everest has no standing to bring suit against Mr. Grewal, in either his official or unofficial capacity. (Doc. 112, at pp. 6-7). Everest opposed this argument on four grounds: 1) Vintro has not complied with the Settlement Agreement; 2) Federal Rule of Civil Procedure 8, upon which Mr. Grewal relies, does not provide for the relief sought; 3) Mr. Grewal improperly asks the Court to render a substantive decision on the merits, i.e., compliance with the settlement agreement, while at the same time claiming the Court has no jurisdiction; and 4) to the extent Mr. Grewal is asserting a Rule 12(b)(6) failure to state a claim argument, the Third-Party Complaint is sufficiently pled. (Doc. 118). Tellingly, Mr. Grewal did not provide any rebuttal to Everest's arguments in his Reply. *See* Doc. 120.

In short, Everest's arguments that Mr. Grewal's motion to dismiss improperly relied on disputed facts outside the pleadings is well-founded and will not serve as a basis to dismiss an otherwise timely filed and properly pled Third-Party Complaint. Any argument that Mr. Grewal complied with the Settlement Agreement relies on facts outside of the pleadings and thus, is not proper for review on a motion to dismiss. *See Issuer Advisory Grp. LLC v. Tech. Consumer Prods.*, 2015 WL 458113, at *3 (N.D. Ohio) (refusing to consider materials outside the pleadings and applying Rule 12 standard); *see also Marsilio v. Vigluicci*, 924 F. Supp. 2d 837, 847 (N.D. Ohio 2013) (refusing to convert a Rule 12 motion to one under Rule 56, and noting that "[l]ittle or no

14

discovery had taken place to allow the parties to argue . . . whether a genuine issue of material fact exists").

To survive a challenge under Rule 12(b)(6), the complaint must contain sufficient allegations to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, claims that sound in fraud must be pled with particularity pursuant to Rule 9(b). Everest's Complaint satisfies both the general requirement of facial plausibility with respect to its allegations to pierce the corporate veil, breach of contract, and indemnification; and the more specific requirement of particularity by identifying "the who, what, when, where, and how of the alleged fraud". *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006); *see also GMAC Real Estate LLC v. Prindle Real Estate, Inc.*, 2007 WL 4570578, at *2 (S.D. Ohio) (an allegation of fraud perpetrated on specified documents meets the "where" requirement of Rule 9(b)). Thus, Everest's Complaint provides fair notice to Mr. Grewal regarding the claims for relief asserted against him and is sufficient to survive his motion to dismiss. *See Bell Atl. Corp.*, 550 U.S. at 555.

### Conclusion

For the foregoing reasons, good cause appearing, it is

ORDERED that Third-Party Defendant Inderjit Grewal's Motion to Dismiss (Doc. 112) be, and the same hereby is, DENIED; and it is

FURTHER ORDERED that Third-Party Defendant Inderjit Grewal's Motion to Stay Discovery and Motion for a Protective Order (Doc. 130) be, and hereby is, DENIED as moot.

                                                       s/ *James R. Knepp II*  
                                               UNITED STATES DISTRICT JUDGE