IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| SINMIER, LLC | ) | CASE NO.:  3:19-CV-02854 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES R. KNEPP II |
| | ) | |
| v. | ) | MOTION OF BANKERS INSURANCE, |
| | ) | LLC FOR PARTIAL SUMMARY |
| EVEREST INDEMNITY INSURANCE | ) | JUDGMENT ON ITS CROSSCLAIM |
| COMPANY, *et al*. | ) | AGAINST VINTRO HOTEL & RESORTS |
| | ) | OHIO, LLC |
| Defendants. | ) | |

Defendant Bankers Insurance, LLC ("Bankers") moves the Court, pursuant to Fed. R. Civ. P. 56, for an Order granting partial summary judgment in favor of Bankers on its Crossclaim (Doc. 94) against defendant Vintro Hotel & Resorts Ohio, LLC for fraudulent inducement (Counts Three, Four, Five, Six and Seven of the Crossclaim).

The entire process whereby Bankers procured insurance coverage for Vintro for Maui Sands was based upon a fraud.  Vintro misrepresented the closing date for its acquisition of Maui Sands, misrepresented the purchase price, misrepresented the property values, and misrepresented known loss information -- all of which Bankers relied upon to procure insurance coverage for Vintro.  Vintro's fraud vitiates any agreement by Bankers to procure insurance coverage for Vintro.

Accordingly, Bankers requests that the Court enter an Order: (1) granting partial summary judgment in favor of Bankers on its Crossclaim against Vintro for fraudulent inducement; (2) finding Vintro defrauded Bankers with regard to Bankers' procurement of

{01518822v5 }

insurance coverage for Vintro for Maui Sands; and (3) finding/declaring that any agreement by Bankers to procure insurance coverage for Vintro for Maui Sands is void.

A Brief in Support is attached.

Respectfully submitted,

NICOLA, GUDBRANSON & COOPER, LLC


/s/ R. Christopher Yingling
Richard G. Witkowski (0009839)
R. Christopher Yingling (0066551)
1400 Republic Building
25 West Prospect Avenue
Cleveland, Ohio  44115
Phone: (216) 621-7227
Fax:    (216) 621-3999
Email:  witkowski@nicola.com
        yingling@nicola.com

Attorneys for Defendant
Bankers Insurance, LLC

{01518822v5 }                        2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| SINMIER, LLC | ) | CASE NO.:  3:19-CV-02854 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES R. KNEPP II |
| | ) | |
| v. | ) | BRIEF IN SUPPORT OF MOTION OF |
| | ) | BANKERS INSURANCE, LLC FOR |
| EVEREST INDEMNITY INSURANCE | ) | PARTIAL SUMMARY JUDGMENT ON |
| COMPANY, *et al*. | ) | ITS CROSSCLAIM AGAINST VINTRO |
| | ) | HOTEL & RESORTS OHIO, LLC |
| Defendants. | ) | |

## I.  PRELIMINARY STATEMENT

This case arises out of a loan of $7 million that Sinmier, a private lender, made to Vintro to purchase and improve the hotel/water park property known as Maui Sands in Sandusky, Ohio. Sinmier made the loan, without performing an appraisal, based on Vintro's representation that it was paying $18.95 million for Maui Sands -- a representation that was false.  After Vintro defaulted on the loan, Sinmier filed a foreclosure action against Vintro and its owner (Inderjit Grewal) who had personally guaranteed the loan.  Vintro, Inderjit Grewal and Sinmier settled the foreclosure action pursuant to which Sinmier received, *inter alia*, title to Maui Sands, $1,372,625, a consent judgment against Vintro and Inderjit Grewal for $627,375, and an undisclosed portion of recovered insurance proceeds.  Sinmier accepted title to Maui Sands as "payment in full" of Vintro's debt.

After settling and releasing Vintro and Inderjit Grewal -- the obvious bad actors -- Sinmier brought this lawsuit asserting claims based on a loss occurring at Maui Sands while

{01518822v5 }

Vintro owned it.  Sinmier alleges that as a mortgagee it was entitled to receive insurance proceeds related to the loss, and that it did not receive them due to the alleged wrongful acts of the defendants.  Sinmier has asserted various claims against Bankers, including a claim that it is a third-party beneficiary to a contract between Vintro and Bankers whereby Bankers agreed to procure insurance coverage for Vintro for Maui Sands.  *See*, Second Amended Complaint (Doc. 75, PageID #: 956).  Bankers has filed a Crossclaim against Vintro alleging that Vintro fraudulently induced Bankers to procure insurance coverage for it, and therefore any agreement by Bankers to procure coverage for Vintro is void.  *See*, Crossclaim at Counts Three-Seven (Doc. 94, PageID #: 1374-79).  It is a basic tenet of law that fraud vitiates any contract and, as demonstrated herein, Vintro's fraud is unquestionable.  Vintro lied about the closing date, the purchase price, the property values, and known loss information -- all of which Bankers relied upon in procuring coverage.  Any alleged agreement by Bankers to procure coverage for Vintro therefore is void as a matter of law.

## II.  STATEMENT OF FACTS

### A.  BANKERS' PROCUREMENT OF INSURANCE FOR VINTRO.

Sinmier (owned by Pargat Grewal) is a private lender who loaned Vintro (owned by Inderjit Grewal) $7 million[1] to purchase Maui Sands.  Bankers is an independent insurance broker that procured insurance coverage for Vintro for Maui Sands from Everest National Insurance Company ("Everest") via Alternative Risk Company ("ARC"), a wholesale broker. Berkley National Insurance Company ("Berkley") is an insurer through which builder's risk coverage was bound but later was cancelled flat.

In July 2018, Vintro contacted Bankers inquiring about insurance coverage for its

---

[1] $5 million was used to purchase Maui Sands, and $2 million was held in escrow to fund capital improvements.

anticipated acquisition of Maui Sands.[2]  Bankers' contacts at Vintro were Inderjit Grewal (Vintro's sole and managing member) and Lee Friedman who provided Bankers with information to market the risk and to obtain quotes.[3]  Vintro represented to Bankers that:

1. Maui Sands consisted of the Family Suites, Maui West (formerly a Holiday Inn Express), Cabana Village (formerly a Holiday Inn Holidome), and waterpark;[4]

2. Vintro planned to purchase Maui Sands in August for $18.95 million;[5]

3. Vintro planned to spend $15 million on construction and renovation which would begin immediately upon acquisition;[6]

4. Vintro planned to demolish the Cabana Village, to demolish or to gut and remodel Maui West, and to operate Family Suites and the waterpark during the construction.[7]

Vintro provided values for the buildings and the proposed renovations, set coverage limits for the buildings and materials, and provided gross sales information for Bankers to market the risk.[8] Bankers relied on Vintro to provide accurate information and had no reason to question the information Vintro provided.[9]

Based upon Vintro's representations regarding the planned demolition, construction, and renovation, Bankers marketed the risk and obtained quotes from Berkley for builder's risk coverage[10] and from Everest (via ARC) for business personal property and commercial liability

---

[2] *See*, Deposition of Michael Barnum, Volume 1 ("Barnum Depo. 1") at p. 32, 34.  The transcripts of the depositions of Michael Barnum Volumes 1 and 2 were filed on September 20, 2022 (Doc. 326).  Excerpts of the referenced Barnum testimony and exhibits are attached as Exhibit A.

[3] Barnum Depo. 1 at p. 31; Deposition of Michael Barnum, Volume 2 ("Barnum Depo. 2") at p. 238, 262.

[4] Barnum Depo. 1 at p. 34-37, 68; Barnum Depo. 2 at p. 232, 243-44, 270 and Ex. 53, 156; Deposition of Annette Allen ("Allen Depo.") at Ex. 53.  The transcript of the deposition of Annette Allen was filed on September 20, 2022 (Doc. 325).  Excerpts of the referenced Allen testimony and exhibits are attached as Exhibit B.

[5] Barnum Depo. 2 at p. 250.

[6] Barnum Depo. 1 at p. 98; Barnum Depo. 2 at p. 248-49, 258.

[7] Barnum Depo. 1 at p. 30, 38-39; Barnum Depo. 2 at p. 260, 403.

[8] Barnum Depo. 1 at p. 80-81, 105-106 and Ex. 13; Barnum Depo. 2 at p. 285-287.

[9] Barnum Depo. 2 at p. 237, 240, 259, 262, 284.

[10] A builder's risk policy provides coverage for a property that is under construction/renovation, including the cost of the new construction.  (Barnum Depo. 1 at p. 30, 40, 66; Barnum Depo. 2 at p. 240, 402-03).

coverage.[11]  On August 20, 2018, Vintro signed Bankers' insurance proposal and the Acord applications confirming the coverage.[12]  On August 23, 2018, Vintro signed the property statement of values for the coverage and requested that Bankers obtain binders.[13]  On August 23, 2018, the Berkley builder's risk coverage and the Everest business personal property and commercial liability coverages were bound.[14]  The binders were subject to conditions including, among others:  (1) Vintro closing on its acquisition of Maui Sands; (2) for the builder's risk policy, Vintro commencing work within 15 days; and (3) for both policies, Vintro paying the premiums.[15]  Vintro had no insurable interest, and there could be no coverage, until Vintro owned the property.[16]  When coverage was being bound, Vintro notified Bankers that Sinmier wanted to be listed as a mortgagee on the property coverage, and therefore on August 23, 2018 Bankers emailed Vintro an Evidence of Property Insurance ("EOPI") identifying Sinmier as a mortgagee on the Berkley builder's risk policy.[17]  The EOPI showed the effective date for the policies as August 23, 2018 (the represented closing date).

The closing was delayed and did not occur on August 23, 2018.  Vintro told Bankers that the closing was delayed because of a title/survey issue and that it could not pay the down payment for the insurance until Vintro received funding at closing.[18]  Vintro was Bankers sole

---

[11] Barnum Depo. 1 at p. 65; Barnum Depo. 2 at p. 239-40.

[12] Barnum Depo. 2 at p. 280-282 and Ex. 58; Deposition of Lee Friedman[12] ("Friedman Depo.") at Ex. 366.  The transcript of the deposition of Lee Friedman was filed on September 20, 2022 (Doc. 329). Excerpts of the referenced Friedman testimony and exhibits are attached as Exhibit B.

[13] Barnum Depo. 1 at p. 99, 105-06; Barnum Depo. 2 at p. 294 and Ex. 13.  A binder is a temporary contract that summarizes the coverage terms until the policy is issued.  See, Declaration of R. Bryan Tilden ("Tilden Decl.") (attached as Exhibit D) at Ex. 1, p. 29.

[14] Allen Depo. at p. 119, 180-81 and Exs. 60 and 79 (which was filed under seal on 9/23/22 at Doc. 341, attachment #7); Barnum Depo. 1 at p. 68, 99, 106-07, 117-18; Barnum Depo. 2 at p. 295-96.

[15] Barnum Depo. 1 at p. 67 and Ex. 4 (which was filed under seal on 9/23/22 at Doc. 341, attachment #8); Allen Depo. at p. 177-78; Tilden Decl. at Ex. 1, p. 30.

[16] Barnum Depo. 1 at p. 135-36; Barnum Depo. 2 at p. 312; Allen Depo. at p. 52, 178-79.

[17] Declaration of Michael Barnum ("Barnum Decl.") at Ex. 3, Bankers 12251-12255 (attached as Ex. E); Barnum Depo. 1 at p. 44-45, 89-91, 101-02 and Ex. 9; Friedman Depo. at p. 15-17.

[18] Barnum Depo. 1 at p. 43-44, 126; Barnum Depo. 2 at p. 298-99.

{01518822v5 }                                               4

source of information, and Bankers relied on Vintro to notify it when the closing occurred.[19] During the first two weeks of September, Bankers (Michael Barnum) sent numerous text messages to Vintro (Inderjit Grewal and Lee Friedman) asking for updates on the closing.[20] Vintro ignored the text messages, never told Bankers that the closing had occurred, and never paid any premiums for the insurance.[21]

After weeks of silence, on September 14, 2018 Vintro notified Bankers that the deal still had not closed.[22]  Bankers asked Berkley and ARC how they wanted to proceed in light of the delayed closing, and they informed Bankers that they would flat cancel[23] and rewrite the policies once the closing occurred.[24]  During the following weeks, Bankers continued to text Vintro about the status of the closing, and Vintro continued to represent to Bankers that the closing had not occurred:

| 9/24/18 | Barnum: "Do you know if you will be closing this week?" |
| | Inderjit: "… I am hopeful." |
| 9/27/18 | Barnum: "Still chance of closing this week?" |
| | Inderjit: "We are trying like hell.  One of the condition to close is Alta Survey.  We have been assured that the survey will be in the next week."[25] |
| 10/3/18 | Barnum: "I didn't hear back from you last night. Meeting go well?  Please advise this morning.   If I don't hear back from you, I believe they will just be canceling all the policies and we will start all over again once you have this resolved" |
| | Inderjit: "We are again meeting right now. I'll call u in about 2 hours. We are almost there" |

---

[19] Barnum Depo. 2 at p. 264, 301.
[20] Barnum Depo. 2 at p. 300-01 and Ex. 164.
[21] Barnum Depo. 2 at p. 302-03.
[22] Barnum Depo. 1 at p. 112-13, 138; Barnum Decl. at Ex. 1, Bankers 1429.
[23] A flat cancellation is an agreement that the policy never existed. (Tilden Decl. at Ex. 1, p. 15; Allen Depo. at p. 182-83).
[24] Barnum Depo. 1 at p. 112-13, 123-25, 138 and Exs. 16, 21; Barnum Depo. 2 at p. 306, 367-68 and Ex. 165; Allen Depo. at p. 53 and Ex. 21.
[25] Barnum Depo. 2 at p. 307-09 and Ex. 166.

| | Barnum: "Any update?" |
|---|---|
| 10/4/18 | Barnum: "The insurance companies have decided to cancel the policies. Please let me know when you are close to closing on this and we can get this through underwriting again and rewrite.  Please update me when you can."[26] |
| 10/11/18 | Barnum: "Any update on closing on this? Or have you decided to pull the plug?"[27] |

In response to the texts, Vintro never told Bankers that it already had purchased Maui Sands, and never questioned the cancellation of coverage based on Vintro's representations that the closing had not occurred.[28]  When the insurers decided to move forward with the flat cancelation of the policies on October 4, 2018, Vintro still had made no effort to pay the premiums for the insurance.[29]  As a result of the flat cancellation, Vintro avoided having to pay any premiums for the insurance bound in August.[30]

In October 2018, Vintro informed Bankers that it was finally approaching closing but that it wanted to purchase coverage substantially different than the coverage previously bound.[31] Vintro advised Bankers that:  the closing was scheduled for October 19, 2018; the premium for the insurance quoted in August was too high (*i.e.*, it purportedly was more than double what the sellers were currently paying); and Vintro no longer needed builder's risk coverage because it would require the construction contractor to carry it.[32]  In an effort to obtain cheaper coverage, Vintro instructed Bankers to request a proposal from K & K Insurance (the sellers' insurer).[33]

---

[26] Barnum Depo. 2 at p. 319-20 and Ex. 169.
[27] Barnum Depo. 2 at p. 321-22 and Ex. 170.
[28] Barnum Depo. 2 at p. 319-20 and Ex. 169.
[29] Barnum Depo. 2 at p. 321.
[30] Barnum Depo. 2 at p. 321.
[31] Barnum Depo. 1 at p. 135.
[32] Barnum Depo. 1 at p. 141-42; Barnum Depo. 2 at p. 324-26 and Ex. 63.
[33] Barnum Depo. 2 at p. 315-17, 322-23.

Bankers' requested a proposal from K & K, but K & K declined to offer coverage.[34]  Vintro then asked Bankers to request a proposal from Everest (through ARC) for coverage.[35]  Vintro requested a proposal by October 17th due to the October 19 closing.[36] In addition to lowering limits of coverage, Vintro represented that:  it only wanted to insure the Family Suites and the waterpark; it did not want builder's risk coverage; and it did not want coverage for Cabana Village and Maui West because it intended to demolish them.[37]  Vintro's requested changes to coverage were memorialized in an October 16, 2018 email from Bankers to ARC providing in pertinent part:

> Per our conversation and my conversation with the insured, we need to make the following changes:
>
> - New effective date 10/19/18
> - Property Changes
>     - o Revise property coverage for building 1 [Family Suites] to as follows:
>         - § Building limit - $6,000,000
>         - § BPP limit - $1,244,000 (same as before)
>         - § BI EE limit - $500,000 on ¼ monthly limitation
>     - o Remove property coverage for building 2 and building 3.  They have decided on the design option to demolish and rebuild new versus remodel.
>     - o Add $1mil coverage for waterpark property/equipment
>     - o The property coverage for the waterpark equipment was previously insured under our other builders risk policy.  However, we are going to hold off on purchasing coverage for that until construction begins.
> - General Liability Changes
>     - o Due to the changed plans of demo buildings instead of remodel, the gross receipts are going to be significantly less over the next 12 months.[38]

The coverage (including the building limits set by Vintro) was confirmed by the Statement of Values and Quote Proposal signed by Vintro on October 18, 2018, and by the Acord applications signed by Vintro on October 19, 2018, showing property coverage of $6,000,000 for Family

---

[34] Barnum Depo. 2 at p. 315-17.

[35] Barnum Depo. 1 at p. 141 and Ex. 25.  Berkley no longer was being considered for coverage because Vintro was not purchasing builder's risk coverage. (Barnum Depo. 1 at p. 148).

[36] Barnum Depo. 1 at p. 145-46.

[37] Barnum Depo. 1 at p. 41, 42-43, 52, 141-42 and Ex. 25; Barnum Depo. 2 at p. 324-26, 343-44 and Ex. 25.

[38] Barnum Depo. 1 at 141; Barnum Depo. 2 at p. 343-44 and Ex. 25 (emphasis added).

Suites, inland marine coverage of $1 million for the waterpark, and no coverage for Maui West and Cabana Village.[39]

While procuring the October coverage, Bankers texted Vintro, and Vintro continued to maintain the pretense that the closing was occurring on October 19, 2018:

10/18/18    Barnum: "I didn't receive the signed docs yet, but saw you started it.  Do you have any questions?"

Barnum: "… I still need the prior documents signed that I sent to you last night and I will send you the finance agreement and other apps to sign shortly.  Please sign both ASAP so I can bind coverage.  If you want proof of coverage tomorrow, we are really short on time."

Inderjit:  "Let's do it buddy.  <u>Can you please bind it today so I have no issues tmrw</u>"

Inderjit:  "Doing it in 15 mins"[40]

10/18/18    Barnum:  "Yes I can bind, but they need the docs signed that I sent to you through Docusign before they will get me a policy # and finish issuance

Barnum:  "Thanks"

Barnum:  "Also I just confirmed they do charge a 3% credit fee ($690.47) for the down payment. Checking account is free however.  Let me know what you prefer"

Inderjit:  "I'll wire the funds"[41]

10/19/18    Barnum:  "Also, we don't have the info for the state for the water park certificate"

Inderjit:  "Ok sir"

Barnum:  "Please sign finance agreement. I need that today. Just resent to you through Docusign"

Inderjit:  "**<u>Closed</u>**. The fund gets to u on Monday.  So we are binded

---

[39] Barnum Depo. 1 at 143-49, 155, 159 and Ex. 28; Barnum Depo. 2 at p. 344-45, 350-52 and Exs. 28, 69; Allen Depo. at p. 158-59, 160-68 and Exs. 69, 70.
[40] Barnum Decl. at Ex. 2, Bankers 31 (emphasis added).
[41] Barnum Decl. at Ex. 2, Bankers 32.

right?"[42]

10/19/18    Barnum:  "Thanks for signing.  Everything close ok? Are you wiring funds today/Monday? Have a great weekend!"

Inderjit:  "Thank you for everything"

Barnum:  "Yes sir, Thanks"

Barnum:  "Thank you for your business and congrats on this property purchase ..."[43]

On October 30, 2018, ARC notified Bankers that the property application for buildings 3 and 4 was missing the applicant's signature, and on November 6, 2018 Inderjit Grewal signed that application and Bankers emailed the fully signed applications to ARC.[44]  Despite multiple Acord applications identifying Sinmier as a mortgagee, Everest failed to list Sinmier as a mortgagee on the policy, and Vintro and Sinmier failed to notify Everest (or Bankers) of the same.[45]

Unbeknownst to Bankers, the closing for Vintro's purchase of Maui Sands occurred on September 7, 2018 -- not on October 19, 2018 as represented by Vintro.[46] Vintro repeatedly lied to Bankers in September and October when it told Bankers that the closing had not occurred. Discovery has revealed that while Vintro was asking Bankers to procure insurance coverage in August, Vintro was secretly working with the sellers to have their insurance policy transferred to Vintro or, alternatively, to have Vintro named as an additional insured on their policy.[47]  On September 20, 2018 when the Ohio Department of Agriculture (which regulates waterparks)

---

[42] Barnum Decl. at Ex. 2, Bankers 33 (emphasis added).

[43] Barnum Decl. at Ex. 2, Bankers 34.

[44] Barnum Depo. 2 at p. 347-49 and Ex. 72.

[45] Barnum Depo. 1 at p. 148 and Ex. 31; Barnum Depo. 2 at Ex. 70, Bankers 2356, 2359; Barnum Decl. at ¶5; Deposition of Pargat Grewal Vol. 2 ("P. Grewal Depo. 2") at p. 394-96). The transcripts of the deposition of Pargat Grewal Volumes 1-4 were filed on September 20, 2022 (Doc. 335).  Excerpts of the referenced Pargat Grewal testimony and exhibits are attached as Exhibit F.

[46] *See*, Deposition of Inderjit Grewal[46] ("I. Grewal Depo.") at p. 30.  The transcript of the deposition of Inderjit Grewal was filed on September 20, 2022 (Doc. 336).  Excerpts of the referenced Inderjit Grewal testimony and exhibits are attached as Ex. G.

[47] Barnum Depo. 2 at p. 315-16 and Ex. 168.

requested that Vintro provide proof of insurance, Vintro provided a Certificate of Insurance ("COI") showing Vintro was an additional insured on the sellers' insurance policy (Vintro did not provide the COI for the Everest commercial liability policy bound on August 23, 2018).[48] Bankers knew none of this.  Vintro never told Bankers that:  Vintro was trying to have the sellers' insurance transferred to Vintro; Vintro was trying to be named as an additional insured on the sellers' policy; and Vintro was successful in being named as an additional insured on the sellers' policy.[49]  Instead, Vintro fabricated a story that the closing had not occurred, causing Berkley and Everest to cancel the insurance flat and relieving Vintro of its obligation to pay the premiums.

Vintro's representation that the closing was occurring on October 19, 2018 was an absolute lie.  There was no October 19 closing.  Vintro needed insurance in October because the sellers notified Vintro that their insurance was being cancelled.  On October 11, 2018, the sellers sent an email to Vintro and its attorneys (Michael Scheibli and Hank Griffin) stating:

> Friends - As it stands, our insurance company has informed us that we are no longer insured.  They cannot continue or keep our insurance as we do not own the property or business nor are we involved in any operations from the date of sale.[50]

The next day, the sellers' attorney (Kirk Halpin) sent an email to Vintro (Inderjit Grewal and Lee Friedman) stating in pertinent part:

> As you know, Vintro has still not obtained building insurance on the Property following the closing on 9/6/2018. As such, our insurance company that has been providing our liquor liability insurance has notified us that as of the end of the day on Friday, October 12, 2018 they are no longer able to maintain any insurance for Sun Development, Inc. ("SDI") and any of its related or affiliated entities.
>
> SDI signed a Liquor License Agreement ("Agreement") with Vintro Hotels & Resorts Ohio LLC ("Vintro") and Sinmier, LLC ("Sinmier") which provided that Vintro and SDI would cooperate with Sinmier in keeping the Alcohol Hospitality Services of the Hotel

---

[48] Barnum Depo. 2 at p. 312-14 and Ex. 167.
[49] Barnum Depo. 2 at p. 315-318.
[50] Barnum Depo. 2 at p. 337-38 and Ex. 173.

open between the closing and when the transfer or re-issuance of the License becomes effective.  In addition, the Agreement required that Vintro and SDI shall maintain commercial liability and other insurance which a reasonably prudent liquor establishment would maintain.

* * *

Due to Vintro's failure to obtain building insurance on the Property, SDI is no longer able to maintain any insurance after the end of the day today.

I believe that Sinmier needs to be notified immediately of this situation. If you would like for us to notify your lender of this situation, then please provide me with the appropriate name and contact information as the Agreement did not have this information otherwise I will presume that you will take care of immediately notifying your lender of this situation.[51] (emphasis added)

Vintro never shared these emails or the information in them with Bankers.[52]  Instead, Vintro told Bankers that the deal had not closed, and fabricated a closing date of October 19.[53]

Discovery also has revealed that Vintro's lies were not limited to the closing. When Bankers asked Vintro for information to market the risk, Vintro told Bankers that it was paying $18.95 million to purchase Maui Sands when, in fact, Vintro was only paying $4.85 million -- a difference of more than $14 million.[54]  The purchase agreement listed the purchase price as $5.95 million, but the sellers agreed to give Vintro a closing credit of $1.1 million ($1 million for pre-existing water damage to the Cabana Village and $100,000 for repairs to the waterpark) resulting in a net purchase price of $4.85 million. After the closing, the sellers and Vintro executed an addendum to the purchase agreement increasing the purchase price from $5.95 million to $7 million and giving Vintro a closing credit of $2.15 million (for pre-existing water damage to the Cabana Village and necessary repairs for the waterpark); the net purchase price of

---

[51] Vintro's Response to Everest's Request for Admission No. 27 (attached Ex. H) and Barnum Depo. 2 at p. 340-43 and Ex. 174.
[52] Barnum Depo. 2 at p. 337-43.
[53] Barnum Depo. 2 at p. 337-43.
[54] Barnum Depo. 2 at p. 250; I. Grewal Depo. at p. 86.

$4.85 million remained unchanged.[55]

Vintro also misrepresented and failed to disclose known information about prior losses and claims. Bankers asked Vintro for information about prior losses, and Vintro responded that it had no information.[56] Vintro however knew that: the Cabana Villages sustained a multimillion-dollar water loss in January 2018 resulting in the majority of the hotel rooms being condemned, destroyed, and unusable; the Cabana Village had no certificate of occupancy; and Vintro was receiving a closing credit of $2.15 million largely because of the pre-existing and unremediated damage to the Cabana Village.[57] Vintro failed to disclose this information to Bankers and failed to disclose it on the applications.[58]

Vintro provided information for Bankers to market the risk, and Bankers relied on the information to be true.[59] Instead of being truthful, Vintro misrepresented the closing date, the purchase price, the property values, and known loss information -- all of which Bankers relied upon in procuring coverage.[60] Vintro fraudulently induced Bankers to procure coverage for Vintro, and Vintro's fraud vitiates any agreement between Bankers and Vintro regarding the same.

### III. ARGUMENT

### VINTRO'S FRAUD VOIDS ANY AGREEMENT BY BANKERS TO PROCURE INSURANCE COVERAGE FOR VINTRO FOR MAUI SANDS.

[T]here is a common law duty to refrain from making fraudulent representations to induce a party to enter a contract." *Hodell-Natco Industries, Inc. v. SAP America, Inc.*, 13 F.Supp.3d 786, 795 (N.D. Ohio 2014), citing *Onyx Environmental Services, LLC v. Maison*, 407

---

[55] Vintro's Responses to Everest's Requests for Admission Nos. 10-11, 24-25, and Exs. E and I (attached Ex. H).
[56] Barnum Depo. 2 at p. 236, 247-48.
[57] Barnum Depo. 2 at p. 271-73 and Ex. 162 and 163; Friedman Depo. at p. 148, 152-53, 158-59 and Ex. 158; I. Grewal Depo. at p. 75-76, 82-86.
[58] Barnum Depo. 2 at p. 271, 274-75, 289-91, 349.
[59] Barnum Depo. 1 at p. 136; Barnum Depo. 2 at p. 259, 262.
[60] Barnum Depo. 1 at p. 136, 163-64; Barnum Depo. 2 at p. 237, 240, 250, 277-78, 308.

F.Supp.2d 874, 879 (N.D. Ohio 2005). The defense of fraud in the inducement arises from the "general duty to avoid wrongful conduct that induces a party to enter into a contract." *Onyx*, 407 F.Supp.2d at 879. Fraud in the inducement occurs "when a party is induced to enter into an agreement through fraud or misrepresentation." *ABM Farms, Inc. v. Woods*, 81 Ohio St.3d 498, 502, 692 N.E.2d 574, 578 (1998). Fraud in the inducement "often involves 'a misrepresentation of facts outside the contract or other wrongful conduct [inducing] a party to enter into the contract.'" *Hodell-Natco*, 13 F.Supp.3d at 795, quoting *ABM Farms*, 81 Ohio St.3d at 503, 692 N.E.2d at 578. "'The fraud relates not to the nature or purport of the [contract], but to the facts inducing its execution.'" *ABM Farms*, 81 Ohio St.3d at 502, 692 N.E.2d at 578, quoting *Haller v. Borror Corp.*, 50 Ohio St.3d 10, 14, 552 N.E.2d 207, 210 (1990).

To establish fraud in the inducement, a party must demonstrate a knowing, material misrepresentation with the intent of inducing the party's reliance, and that the party relied upon that misrepresentation to its detriment." *Id*. Fraudulent inducement is a valid basis for finding a contract void ab initio, and for ordering rescission. *Ferro Corp. v. Garrison Indus., Inc.*, 927 F. Supp. 234, 241 (N.D. Ohio 1996), *rev'd* on other grounds, 142 F.3d 926 (6th Cir. 1998). *See also*, *Haller*, 50 Ohio St.3d at 13, 552 N.E.2d at 210 (a contract obtained by fraud in the inducement is "voidable upon proof of fraud"); *Micrel, Inc. v. TRW, Inc.*, 486 F.3d 866, 873 (6th Cir. 2007) ("a contract procured by fraudulent inducement may be rescinded").

Here, the evidence of Vintro's fraud is overwhelming. The purchase price, the property values, prior losses/claims, and the closing date were material to Bankers' marketing the risk and procuring coverage, and Vintro knowingly and intentionally lied about all of them. Vintro knew that it was paying $4.85 million for Maui Sands, not $18.95 million. Vintro knew the property values and coverage limits that it set were not supported by the $4.85 million purchase price.

Vintro knew that there was a huge pre-existing water loss in the Cabana Village that had not been remediated.  Vintro knew that it was not purchasing Maui Sands on August 23rd when it asked Bankers to bind coverage and provide it with Evidence of Property Insurance.  Vintro knew in September and October 2018 when it told Bankers that it had not closed on purchasing Maui Sands that it already owned Maui Sands as the sale had closed on September 7, 2018.  Vintro knew that there was no closing occurring on October 19, 2018, but rather Vintro simply needed insurance because the sellers' insurance was being cancelled.  Vintro knew that Everest and Berkley were going to flat cancel, and then did flat cancel, the policies based upon Vintro's misrepresentations that the closing had not occurred.  And Vintro knew that if it told the truth about the closing, it would be liable for the premiums for the insurance bound in August.

Bankers justifiably relied on Vintro's misrepresentations when it procured the original coverage bound on August 23, 2018, when it notified the insurers that the closing had not occurred causing them to flat cancel the coverage bound on August 23, 2018, and when it procured different coverage on October 19, 2018.  But for Vintro's lies and misrepresentations: Bankers would not have procured the insurance bound on August 23rd; the insurance bound on August 23rd would not have been cancelled flat; and Bankers would not have procured different insurance on October 19th.  Indeed, there is no evidence demonstrating what type of coverage or what amount of coverage Bankers (or any other broker) would have been able to procure if Vintro had been truthful.

The entire insurance procurement process was based on a fraud that Vintro perpetrated upon Bankers.  It is a basic tenet of Ohio law that fraud vitiates any contract and everything it touches.  *See*, *Computer Leasco, Inc. v. NTP, Inc.*, 194 Fed. Appx. 328, 329 (6th Cir. 2006) ("fraud vitiates everything"); *Perry v. M. O'Neil & Co.*, 78 Ohio St. 200, 218 (1908) ("[f]raud

vitiates everything it touches"); *State ex rel. Pucel v. Green*, 101 Ohio App. 531, 534, 133 N.E.2d 170, *aff'd*, 165 Ohio St. 175, 134 N.E.2d 154 (1956) ("It is the unquestioned law of Ohio that fraud vitiates everything that its use creates"). Vintro's fraud vitiates any contract between Vintro and Bankers with regard to the procurement of coverage. Any agreement by Bankers to procure insurance coverage for Vintro for Maui Sands is void as a matter of law.

## IV. CONCLUSION

There is no genuine issue of material fact that Vintro defrauded Bankers. It is not even a close call. Accordingly, Bankers requests that the Court enter an Order: (1) granting partial summary judgment in favor of Bankers on its Crossclaim against Vintro for fraudulent inducement; (2) finding Vintro defrauded Bankers with regard to Bankers' procurement of insurance coverage for Vintro for Maui Sands; and (3) finding/declaring that any agreement by Bankers to procure insurance coverage for Vintro for Maui Sands is void.

Respectfully submitted,

NICOLA, GUDBRANSON & COOPER, LLC


/s/ R. Christopher Yingling
Richard G. Witkowski (0009839)
R. Christopher Yingling (0066551)
1400 Republic Building
25 West Prospect Avenue
Cleveland, Ohio 44115
Phone: (216) 621-7227
Fax: (216) 621-3999
Email: witkowski@nicola.com
yingling@nicola.com

Attorneys for Defendant
Bankers Insurance, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on November 4, 2022 the foregoing was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ R. Christopher Yingling
One of the Attorneys for Defendant
Bankers Insurance, LLC

## CERTIFICATION AS TO TRACK ASSIGNMENT AND PAGE LIMITATIONS

I hereby certify that this case has been assigned to the complex track and that this filing adheres with the page limitations set forth in L.R. 7.1(F).

/s/ R. Christopher Yingling
One of the Attorneys for Defendant
Bankers Insurance, LLC

{01518822v5 }                              16