IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| SINMIER, LLC | ) | CASE NO.:  3:19-CV-02854 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE JAMES R. KNEPP II |
| v. | ) | |
| | ) | |
| EVEREST INDEMNITY INSURANCE | ) | MOTION OF DEFENDANT BANKERS |
| COMPANY, *et al*. | ) | INSURANCE, LLC FOR SUMMARY |
| | ) | <u>JUDGMENT</u> |
| Defendants. | ) | |

Defendant Bankers Insurance, LLC ("Bankers") moves the Court, pursuant to Fed. R.

Civ. P. 56, for summary judgment on plaintiff Sinmier LLC's ("Sinmier") claims for breach of

contract/third-party beneficiary, negligence, negligence per se, and misrepresentation/fraud.

A Brief in Support is attached.

Respectfully submitted,

NICOLA, GUDBRANSON & COOPER, LLC

/s/ R. Christopher Yingling
Richard G. Witkowski (0009839)
R. Christopher Yingling (0066551)
1400 Republic Building
25 West Prospect Avenue
Cleveland, Ohio  44115
Phone: (216) 621-7227
Fax:    (216) 621-3999
Email:  witkowski@nicola.com
        yingling@nicola.com

Attorneys for Defendant
Bankers Insurance, LLC

{01504402v8 }

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| SINMIER, LLC | ) | CASE NO.:  3:19-CV-02854 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES R. KNEPP II |
| | ) | |
| v. | ) | |
| | ) | |
| EVEREST INDEMNITY INSURANCE | ) | |
| COMPANY, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

BRIEF IN SUPPORT OF MOTION OF DEFENDANT
BANKERS INSURANCE, LLC FOR SUMMARY JUDGMENT

{01504402v8 }

TABLE OF CONTENTS

I.  ISSUES TO BE DECIDED .................................................................................. 1

II.  SUMMARY OF ARGUMENT ........................................................................... 2

III.  STATEMENT OF FACTS ................................................................................. 3

 A.  BANKERS' PROCUREMENT OF INSURANCE FOR VINTRO ............................. 3

 B.  THE EVIDENCE OF PROPERTY INSURANCE ......................................... 13

 C.  BANKERS AND SINMIER HAD NO COMMUNICATIONS UNTIL
   AFTER THE LOSS .................................................................................. 15

 D.  VINTRO'S DEMOLITION OF THE CABANA VILLAGE AND MAUI WEST ..... 17

 E.  THE LOSS OF MAUI SANDS ................................................................. 17

 F.  THE FORECLOSURE ACTION ............................................................... 18

 G.  THE CURRENT ACTION ....................................................................... 19

IV.  ARGUMENT .................................................................................................. 20

 A.  BANKERS IS ENTITLED TO SUMMARY JUDGMENT AGAINST
   ALL OF SINMIER'S CLAIMS BECAUSE THE DEBT SECURED BY THE
   MORTGAGE HAS BEEN FULLY EXTINGUISHED ............................................. 20

 B.  BANKERS IS ENTITLED TO SUMMARY JUDGMENT AGAINST SINMIER'S
   CLAIM FOR BREACH OF CONTRACT/THIRD-PARTY BENEFICIARY
   BECAUSE SINMIER CANNOT PROVE THE ELEMENTS OF THE CLAIM ....... 21

  1.  There Is No Enforceable Contract Between Bankers and Vintro
    Necessary to Support Sinmier's Third-Party Beneficiary Claim ......................... 21

  2.  Any Agreement by Bankers to Procure Insurance for Vintro Is Void .................. 22

 C.  SINMIER CANNOT MAINTAIN A CLAIM FOR NEGLIGENCE ........................ 23

  1.  Sinmier's Claims for Negligence and Negligence *Per Se* Are Barred
    by the Economic Loss Doctrine ......................................................................... 23

D.  BANKERS IS ENTITLED TO SUMMARY JUDGMENT AGAINST SINMIER'S CLAIM FOR FRAUD BECAUSE SINMIER CANNOT PROVE THE ELEMENTS OF THE CLAIM......................................................................... 24

    1.  Elements of a Claim for Fraud................................................................. 24

    2.  Sinmier Cannot Maintain a Fraud Claim Based upon EOPIs that Bankers Prepared on August 23, 2018 and August 27, 2018 ............................... 25

    3.  Sinmier Cannot Maintain a Fraud Claim Based upon EOPIs That Bankers Provided After the Loss on February 11, 2019 and March 27, 2019..................... 28

E.  BANKERS IS ENTITLED TO SUMMARY JUDGMENT BECAUSE NO ACT OF BANKERS WAS THE PROXIMATE CAUSE OF SINMIER'S LOSS ... 29

    1.  Vintro's Misrepresentation of the Purchase Price Was the Proximate Cause of Sinmier's Alleged Loss ........................................................ 29

    2.  Alternatively, Sinmier's Failure to Read the Policy Was the Proximate Cause of Its Loss................................................................................... 30

V.  CONCLUSION..................................................................................................... 30

CERTIFICATE OF SERVICE ....................................................................................... 31

CERTIFICATION AS TO TRACK ASSIGNMENT AND PAGE LIMITATIONS................. 32

## TABLE OF AUTHORITIES

**Cases**                                                                                      **Page**

*All Erection & Crane Rental Corp. v. Acordia Northwest, Inc.*, 162 Fed.Appx. 554
   (6th Cir. 2006)................................................................................................... 23, 24

*Amerifirst Savings Bank of Xenia v. Krug*, 136 Ohio App.3d 468, 737 N.E.2d 68 (2nd Dist. 1999)
   ................................................................................................................................ 26

*Barwick v. State Farm Fire & Cas. Ins. Co.*, 2011-Ohio-5689 (2nd Dist.) ................................... 20

*Bender v. Logan*, 2016-Ohio-5317, 76 N.E.3d 336 (4th Dist.)........................................................ 26

*Brown v. Woodmen Acc. & Life Co.*, 84 Ohio App.3d 52, 616 N.E.2d 278 (12th Dist. 1992) ..... 27

*Burke v. Time Ins. Co.*, 2011 WL 2600673, report and recommendation adopted,
   2011 WL 2580325 (S.D. Ohio 2011).................................................................................... 24

*Castelli v. Patmon*, 2008-Ohio-6468 (8th Dist.)............................................................................. 22

*Certain Underwriters At Lloyd's of London v. NFC Mining, Inc.*, 427 Fed.Appx. 404
   (6th Cir. 2011).......................................................................................................................... 28

*Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 42 Ohio St.3d 40, 537 N.E.2d 624
   (1989)......................................................................................................................................... 23

*Clem v. Steiner*, 2003-Ohio-4865 (11th Dist.)............................................................................... 21

*Cleveland Builders Supply Co. v. Farmers Ins. Group of Cos.*, 102 Ohio App. 3d 708,
   657 N.E.2d 851 (8th Dist. 1995).......................................................................................... 21

*Craggett v. Adell Ins. Agency*, 92 Ohio App.3d 443, 635 N.E.2d 1326 (8th Dist. 1993)............. 30

*Eisenhuth v. Moneyhon*, 161 Ohio St. 367, 119 N.E.2d 440 (1954)............................................ 24

*Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations*, 61 Ohio St.3d 366,
   575 N.E.2d 134 (1991)........................................................................................................... 21

*Gaines v. Preterm-Cleveland, Inc.*, 33 Ohio St.3d 54 514 N.E.2d 709 (1987) ........................... 25

*Geeta Hosp. Inc. v. Dependable Quality Construction, LLC*, 2021 WL 1599188
    (S.D. Ohio 2021)..................................................................................................................... 28

*Gibney v. State Farm Fire & Cas. Co.*, 897 F.Supp.2d 618 (S.D. Ohio 2012) .......................... 20

*Howick v. Lakewood Village Ltd. Partnership*, 2007-Ohio-4370 (3rd Dist.)................................ 25

*J.F. Meskill Enterprises, LLC v. Acuity*, 2006 WL 903207 (N.D. Ohio 2006) ...................... 23, 24

*Kincaid v. Erie Ins. Co.*, 128 Ohio St.3d 322, 2010-Ohio-6036, 944 N.E.2d 207 ...................... 30

*Lee v. Royal Indem. Co.*, 108 F.3d 651 (6th Cir.1997)...................................................... 20

*Lepera v. Fuson*, 83 Ohio App.3d 17, 613 N.E.2d 1060 (1st Dist. 1992) ..................................... 26

*Long v. Time Ins. Co.*, 572 F.Supp.2d 907 (S.D. Ohio 2008)........................................................ 23

*Lu-An-Do, Inc. v. Kloots*, 131 Ohio App.3d 71, 721 N.E.2d 507 (5th Dist. 1999) ...................... 27

*Lucarell v. Nationwide Mut. Ins. Co.*, 152 Ohio St.3d 453, 2018-Ohio-15,
   97 N.E.3d 458, ¶41. ........................................................................................................ 21

*Mafcote, Inc. v. Genatt Assoc., Inc.*, 2007 WL 527870 (S.D. Ohio 2007) ................................... 24

*McDonald v. Black's Adm'r*, 20 Ohio 185 (1851) .......................................................................... 20

*Morgan v. Cohen*, 2019-Ohio-3662 (8th Dist.) ............................................................................. 26

*Moses v. Sterling Commerce America, Inc.*, 2002-Ohio-4327 (10th Dist.)................................... 25

*Newman v. Total Quality Logistics, LLC*, 2021 WL 1192669 (S.D. Ohio 2021)........................ 23

*Northern Assur. Co. v. Natl. Guarantee & Fin. Co.*, 21 Ohio Law Abs. 641 (2nd Dist. 1936) .... 20

*Potts v. Safeco Ins. Co.*, 2010-Ohio-2042 (5th Dist.) ........................................................... 23, 24

*Queen City Terminals, Inc. v. Gen. Am. Transp. Corp.*, 73 Ohio St.3d 609, 653 N.E.2d 661
   (1995)............................................................................................................................. 23

*Rose v. Landon*, 2005-Ohio-1623 (12th Dist.)............................................................................... 30

*Rulli v. Fan Co.*, 79 Ohio St.3d 374, 683 N.E.2d 337, 339 (1997) ............................................. 21

*S.L. & M.B., L.L.C. v. United Agencies, Inc.*, 2021-Ohio-2780 (8th Dist.).................................. 24

*Salyers v. Brennan Builders, Inc.*, 2015 WL 1286011 (S.D. Ohio 2015), *aff'd*,
   628 Fed.Appx. 427 (6th Cir. 2015)............................................................................. 26

*Sinmier, LLC v. Vintro Hotels & Resorts, Ohio LLC, et al.*, Case No. 3:19-cv-00705 ................ 18

*Wells v.. Cook*, 16 Ohio St. 67 (1865) .......................................................................................... 25

**Statutes**

R.C. 3938.04 .................................................................................................................................. 24

**Other Authorities**

1 Corbin on Contracts (Rev. Ed.1993) 525, Section 4.1................................................................. 21

## I.  ISSUES TO BE DECIDED

Whether all of Sinmier's claims fail because a mortgagee's insurable interest is limited to the amount of debt secured by the mortgage, and the debt secured by the mortgage has been fully extinguished.

Whether Sinmier's claim for breach of contract/third-party beneficiary fails because there is no enforceable underlying contract between Bankers and Vintro Hotel & Resorts Ohio, LLC ("Vintro") necessary to support Sinmier's third-party beneficiary claim, and because any agreement by Bankers to procure insurance for Vintro is void due to Vintro's fraud.

Whether Sinmier's claims for negligence and negligence *per se* are barred by the economic loss rule.

Whether Sinmier's claim for misrepresentation/fraud fails where, as here:  Bankers had no communications with, and made no false representations about coverage to, Sinmier before the loss; there is no evidence that Bankers intended to mislead Sinmier; and Sinmier's alleged reliance on the Evidence of Property Insurance was not justifiable as a matter of law.

Whether all of Sinmier's claims fail because Vintro's misrepresentation that it was paying $18.95 million to purchase the property (when in fact Vintro was paying less than $5 million) is the proximate cause of Sinmier's alleged loss where, as here, Sinmier admits that it would not have made the loan if it had known the true purchase price.

Whether all of Sinmier's claims fail because Sinmier's failure to request and to read the insurance policies (which would have confirmed that Vintro had not purchased the Berkley policy and that Sinmier was not listed as a mortgagee on the Everest policy) was the proximate cause of Sinmier's loss.

1

## II.  SUMMARY OF ARGUMENT

This case arises out of a loan of $7 million that Sinmier, a private lender, made to Vintro to purchase and improve the hotel/water park property known as Maui Sands in Sandusky, Ohio. After Vintro defaulted on the loan, Sinmier filed a foreclosure action against Vintro and its owner (Inderjit Grewal) who had personally guaranteed the loan.  Vintro, Inderjit Grewal and Sinmier settled the foreclosure action pursuant to which Sinmier received, *inter alia*, title to Maui Sands, $1,372,625, a consent judgment against Vintro and Inderjit Grewal for $627,375, and an undisclosed portion of recovered insurance proceeds.  Sinmier accepted title to Maui Sands as "payment in full" of Vintro's debt.

After settling and releasing Vintro and Inderjit Grewal -- the obvious bad actors -- Sinmier brought this lawsuit asserting claims based on a loss occurring at Maui Sands while Vintro owned it.  Sinmier alleges that as a mortgagee it was entitled to receive insurance proceeds related to the loss, and that it did not receive them due to the alleged wrongful acts of the defendants.  The fatal flaw of all of the claims however is that any right that Sinmier had as a mortgagee was extinguished when the debt secured by the mortgage was extinguished.

Sinmier is suing Bankers, an independent insurance broker that procured insurance coverage for Vintro for Maui Sands, for breach of contract/third-party beneficiary, negligence, negligence *per se*, and misrepresentation/fraud.  As demonstrated herein, Sinmier plainly cannot satisfy the elements of those claims.  Sinmier cannot maintain a claim for breach of contract/third-party beneficiary because there is no such contract and because Vintro defrauded Bankers with regard to the procurement of insurance.  Vintro lied about the closing date, the purchase price, the property values, and known loss information -- all of which Bankers relied upon in procuring coverage.  Any alleged agreement by Bankers to procure coverage for Vintro

(and for which Sinmier claims it is a third-party beneficiary) is void as a matter of law.  Further, Sinmier cannot maintain the negligence claims because they are barred by the economic loss rule, and cannot maintain a misrepresentation/fraud claim because Bankers made no intentionally false representations upon which Sinmier justifiably relied.  Sinmier's alleged loss was proximately caused by Vintro's misrepresentations of the purchase price, and Sinmier's failure to request and to read the insurance policies -- not by any wrongdoing of Bankers.  Accordingly, Bankers is entitled to summary judgment against all of Sinmier's claims.

### III. STATEMENT OF FACTS

#### A. BANKERS' PROCUREMENT OF INSURANCE FOR VINTRO.

Sinmier (owned by Pargat Grewal) is a private lender who loaned Vintro (owned by Inderjit Grewal) $7 million[1] to purchase Maui Sands.  Bankers is an independent insurance broker that procured insurance coverage for Vintro for Maui Sands from Everest National Insurance Company ("Everest") via Alternative Risk Company ("ARC"), a wholesale broker. Berkley National Insurance Company ("Berkley") is an insurer through which builder's risk coverage was bound but later was cancelled flat.

In July 2018, Vintro contacted Bankers inquiring about insurance coverage for its anticipated acquisition of Maui Sands in August.[2]  Bankers' contacts at Vintro were Inderjit Grewal (Vintro's sole and managing member) and Lee Friedman who provided Bankers with information to market the risk and to obtain quotes.[3]  Vintro represented to Bankers that:

---

[1] $5 million was used to purchase Maui Sands, and $2 million was held in escrow to fund capital improvements.

[2] *See*, Deposition of Michael Barnum, Volume 1 ("Barnum Depo. 1") at p. 32, 34.  The transcripts of the depositions of Michael Barnum Volumes 1 and 2 were filed on September 20, 2022 (Doc. 326).  Excerpts of the referenced Barnum testimony and exhibits are attached as Exhibit A.

[3] Barnum Depo. 1 at p. 31; Deposition of Michael Barnum, Volume 2 ("Barnum Depo. 2") at p. 238, 262.

1. Maui Sands consisted of the Family Suites, Maui West (formerly a Holiday Inn Express), Cabana Village (formerly a Holiday Inn Holidome), and waterpark;[4]

2. Vintro planned to purchase Maui Sands in August for $18.95 million;[5]

3. Vintro planned to spend $15 million on construction and renovation which would begin immediately upon acquisition;[6]

4. Vintro planned to demolish the Cabana Village, to demolish or to gut and remodel Maui West, and to operate Family Suites and the waterpark during the construction.[7]

Vintro provided values for the buildings and the proposed renovations, set coverage limits for the buildings and materials, and provided gross sales information for Bankers to market the risk.[8] Bankers relied on Vintro to provide accurate information and had no reason to question the information Vintro provided.[9]

Based upon Vintro's representations regarding the planned demolition, construction, and renovation, Bankers marketed the risk and obtained quotes from Berkley for builder's risk coverage[10] and from Everest (via ARC) for business personal property and commercial liability coverage.[11]   On August 20, 2018, Vintro signed Bankers' insurance proposal and the Acord applications confirming the coverage requested by Vintro.[12]   On August 23, 2018, Vintro signed

---

[4] Barnum Depo. 1 at p. 34-37, 68; Barnum Depo. 2 at p. 232, 243-44, 270 and Ex. 156 and Deposition of Annette Allen ("Allen Depo.") at Ex. 53.  The transcript of the deposition of Annette Allen was filed on September 20, 2022 (Doc. 325).  Excerpts of the referenced Allen testimony and exhibits are attached as Exhibit B.

[5] Barnum Depo. 2 at p. 250.

[6] Barnum Depo. 1 at p. 98; Barnum Depo. 2 at p. 248-49, 258.

[7] Barnum Depo. 1 at p. 30, 38-39; Barnum Depo. 2 at p. 260, 403.

[8] Barnum Depo. 1 at p. 80-81, 105-106 and Ex. 13; Barnum Depo. 2 at p. 285-287.

[9] Barnum Depo. 2 at p. 237, 240, 259, 262, 284.

[10] A builder's risk policy provides coverage for a property that is under construction/renovation, including the cost of the new construction. (Barnum Depo. 1 at p. 30, 40, 66; Barnum Depo. 2 at p. 240, 402-03).

[11] Barnum Depo. 1 at p. 65; Barnum Depo. 2 at p. 239-40.

[12] Barnum Depo. 2 at p. 280-282 and Ex. 58; Deposition of Lee Friedman[12] ("Friedman Depo.") at Ex. 366.  The transcript of the deposition of Lee Friedman was filed on September 20, 2022 (Doc. 329).  Excerpts of the referenced Friedman testimony and exhibits are attached as Exhibit C.

{01504402v8 }                                                    4

the property statement of values for the coverage and requested that Bankers obtain binders.[13] On August 23, 2018, the Berkley builder's risk coverage and the Everest business personal property and commercial liability coverages were bound.[14] The binders were subject to conditions including, among others: (1) Vintro closing on its acquisition of Maui Sands; (2) for the builder's risk policy, Vintro commencing work within 15 days; and (3) for both policies, Vintro paying the premiums.[15] Vintro had no insurable interest, and there could be no coverage, until Vintro owned the property.[16]

The closing was delayed and did not occur on August 23, 2018. Vintro told Bankers that the closing was delayed because of a title/survey issue and that it could not pay the down payment for the insurance until Vintro received funding at closing.[17] Vintro was Bankers sole source of information, and Bankers relied on Vintro to notify it when the closing occurred.[18] During the first two weeks of September, Bankers (Michael Barnum) sent numerous text messages to Vintro (Inderjit Grewal and Lee Friedman) asking for updates on the closing.[19] Vintro ignored the text messages, never told Bankers that the closing had occurred, and never paid any premiums for the insurance.[20]

After weeks of silence, on September 14, 2018 Vintro notified Bankers that the deal still had not closed.[21] Bankers asked Berkley and ARC how they wanted to proceed in light of the

---

[13] Barnum Depo. 1 at p. 99, 105-06; Barnum Depo. 2 at p. 294 and Ex. 13. A binder is a temporary contract that summarizes the coverage terms until the policy is issued. *See*, Declaration of R. Bryan Tilden ("Tilden Decl.") (attached as Exhibit D) at Ex. 1, p. 29.

[14] Allen Depo. at p. 119, 180-81 and Exs. 60 and 79 (which was filed under seal on 9/23/22 at Doc. 341, attachment #7); Barnum Depo. 1 at p. 68, 99, 106-07, 117-18; Barnum Depo. 2 at p. 295-96.

[15] Barnum Depo. 1 at p. 67 and Ex. 4 (which was filed under seal on 9/23/22 at Doc. 341, attachment #8); Allen Depo. at p. 177-78; Tilden Decl. at Ex. 1, p. 30.

[16] Barnum Depo. 1 at p. 135-36; Barnum Depo. 2 at p. 312; Allen Depo. at p. 52, 178-79.

[17] Barnum Depo. 1 at p. 43-44, 126; Barnum Depo. 2 at p. 298-99.

[18] Barnum Depo. 2 at p. 264, 301.

[19] Barnum Depo. 2 at p. 300-01 and Ex. 164.

[20] Barnum Depo. 2 at p. 302-03.

[21] Barnum Depo. 1 at p. 112-13, 138; Declaration of Michael Barnum ("Barnum Decl.") at Ex. 1 (attached as Exhibit E).

delayed closing, and they informed Bankers that they would flat cancel[22] and rewrite the policies

once the closing occurred.[23]  During the following weeks, Bankers texted Vintro about the status

of the closing, and Vintro continued to represent to Bankers that the closing had not occurred:

9/24/18     Barnum:  "Do you know if you will be closing this week?"

            Inderjit:  "…  I am hopeful."

9/27/18     Barnum:  "Still chance of closing this week?"

            Inderjit:  "We are trying like hell.  One of the condition to close is Alta Survey.  We have been assured that the survey will be in the next week."[24]

10/3/18     Barnum:  "I didn't hear back from you last night. Meeting go well?  Please advise this morning.   If I don't hear back from you, I believe they will just be canceling all the policies and we will start all over again once you have this resolved"

            Inderjit:  "We are again meeting right now. I'll call u in about 2 hours. We are almost there"

            Barnum:  "Any update?"

10/4/18     Barnum:  "The insurance companies have decided to cancel the policies. Please let me know when you are close to closing on this and we can get this through underwriting again and rewrite.  Please update me when you can."[25]

10/11/18    Barnum:  "Any update on closing on this? Or have you decided to pull the plug?"[26]

In response to the texts, Vintro never told Bankers that it already had purchased Maui Sands, and

never questioned the cancellation of coverage based on Vintro's representations that the closing

had not occurred.[27]  When the insurers decided to move forward with the flat cancelation of the

---

[22] A flat cancellation is an agreement that the policy never existed. (Tilden Decl. at Ex. 1, p. 15; Allen Depo. at p. 182-83).

[23] Barnum Depo. 1 at p. 112-13, 123-25, 138 and Exs. 16, 21; Barnum Depo. 2 at p. 306, 367-68 and Ex. 53 and Ex. 165; Allen Depo. at p. 53 and Ex. 21.

[24] Barnum Depo. 2 at p. 307-09 and Ex. 166.

[25] Barnum Depo. 2 at p. 319-20 and Ex. 169.

[26] Barnum Depo. 2 at p. 321-22 and Ex. 170.

[27] Barnum Depo. 2 at p. 319-20 and Ex. 169.

policies on October 4, 2018, Vintro still had made no effort to pay the premiums for the insurance.[28]  As a result of the flat cancellation, Vintro avoided having to pay any premium for the insurance bound in August.[29]

In October 2018, Vintro informed Bankers that it was finally approaching closing but that it wanted to purchase coverage substantially different than the coverage previously bound.[30]  Vintro advised Bankers that:  the closing was scheduled for October 19, 2018; the premium for the insurance quoted in August was too high (*i.e.*, it purportedly was more than double what the sellers were currently paying); and Vintro no longer needed builder's risk coverage because it would require the construction contractor to carry it.[31]  In an effort to obtain cheaper coverage, Vintro instructed Bankers to request a proposal from K & K Insurance (the sellers' insurer).[32]  Bankers' requested a proposal from K & K, but K & K declined to offer coverage.[33]  Vintro then asked Bankers to request a proposal from Everest (through ARC) for coverage.[34]  Vintro requested a proposal by October 17th due to the October 19 closing.[35] In addition to lowering limits of coverage, Vintro represented that:  it only wanted to insure the Family Suites and the waterpark; it did not want builder's risk coverage; and it did not want coverage for Cabana Village and Maui West because it intended to demolish them.[36]  Vintro's requested changes to coverage were memorialized in an October 16, 2018 email from Bankers to ARC providing in pertinent part:

---

[28] Barnum Depo. 2 at p. 321.
[29] Barnum Depo. 2 at p. 321.
[30] Barnum Depo. 1 at p. 135.
[31] Barnum Depo. 1 at p. 141-42; Barnum Depo. 2 at p. 324-26 and Ex. 63.
[32] Barnum Depo. 2 at p. 315-17, 322-23.
[33] Barnum Depo. 2 at p. 315-17.
[34] Barnum Depo. 1 at p. 141  and Ex. 25.  Berkley no longer was being considered for coverage because Vintro was not purchasing builder's risk coverage. (Barnum Depo. 1 at p. 148).
[35] Barnum Depo. 1 at p. 145-46.
[36] Barnum Depo. 1 at p. 41, 42-43, 52, 141-42 and Ex. 25; Barnum Depo. 2 at p. 324-26, 343-44 and Ex. 25.

Per our conversation and my conversation with the insured, we need to make the following changes:

- New effective date 10/19/18
- Property Changes
  - Revise property coverage for building 1 [Family Suites] to as follows:
    - Building limit - $6,000,000
    - BPP limit - $1,244,000 (same as before)
    - BI EE limit - $500,000 on ¼ monthly limitation
  - Remove property coverage for building 2 and building 3.  They have decided on the design option to demolish and rebuild new versus remodel.
  - Add $1mil coverage for waterpark property/equipment
  - The property coverage for the waterpark equipment was previously insured under our other builders risk policy.  However, we are going to hold off on purchasing coverage for that until construction begins.
- General Liability Changes
  - Due to the changed plans of demo buildings instead of remodel, the gross receipts are going to be significantly less over the next 12 months.[37]

The coverage (including the building limits set by Vintro) was confirmed by the Statement of Values and Quote Proposal signed by Vintro on October 18, 2018, and by the Acord applications signed by Vintro on October 19, 2018, showing property coverage of $6,000,000 for Family Suites, inland marine coverage of $1 million for the waterpark, and no coverage for Maui West and Cabana Village.[38]

While procuring the October coverage, Bankers texted Vintro, and Vintro continued to maintain the pretense that the closing was occurring on October 19, 2018:

10/18/18    Barnum: "I didn't receive the signed docs yet, but saw you started it.  Do you have any questions?"

Barnum:  "… I still need the prior documents signed that I sent to you last night and I will send you the finance agreement and other apps to sign shortly.  Please sign both ASAP so I can bind coverage.  If you want proof of coverage tomorrow, we are really short on time."

Inderjit:  "Let's do it buddy.  Can you please bind it today so I have no issues tmrw"

---

[37] Barnum Depo. 1 at 141; Barnum Depo. 2 at p. 343-44 and Ex. 25 (emphasis added).
[38] Barnum Depo. 1 at 143-49, 155, 159 and Ex. 28; Barnum Depo. 2 at p. 344-45, 350-52 and Exs. 28, 69; Allen Depo. at p. 158-59, 160-68 and Exs. 69, 70.

|  | Inderjit: "Doing it in 15 mins"[39] |
|---|---|
| 10/18/18 | Barnum: "Yes I can bind, but they need the docs signed that I sent to you through Docusign before they will get me a policy # and finish issuance |
|  | Barnum: "Thanks" |
|  | Barnum: "Also I just confirmed they do charge a 3% credit fee ($690.47) for the down payment. Checking account is free however.  Let me know what you prefer" |
|  | Inderjit: "I'll wire the funds"[40] |
| 10/19/18 | Barnum: "Also, we don't have the info for the state for the water park certificate" |
|  | Inderjit: "Ok sir" |
|  | Barnum: "Please sign finance agreement. I need that today. Just resent to you through Docusign" |
|  | Inderjit: "**Closed**. The fund gets to u on Monday.  So we are binded right?"[41] |
| 10/19/18 | Barnum: "Thanks for signing.  Everything close ok? Are you wiring funds today/Monday? Have a great weekend!" |
|  | Inderjit: "Thank you for everything" |
|  | Barnum: "Yes sir, Thanks" |
|  | Barnum: "Thank you for your business and congrats on this property purchase ..."[42] |

On October 30, 2018, ARC notified Bankers that the property application for buildings 3 and 4 was missing the applicant's signature, and on November 6, 2018 Inderjit Grewal signed that application and Bankers emailed the fully signed applications to ARC.[43]  Despite multiple Acord

---

[39] Barnum Decl. at Ex. 2, Bankers 31 (emphasis added).
[40] Barnum Decl. at Ex. 2, Bankers 32.
[41] Barnum Decl. at Ex. 2, Bankers 33 (emphasis added).
[42] Barnum Decl. at Ex. 2, Bankers 34.
[43] Barnum Depo. 2 at p. 347-49 and Ex. 72 (Ex. 72 is Allen Depo. at Ex. 72).

applications identifying Sinmier as a mortgagee, Everest failed to list Sinmier as a mortgagee on the policy, and Vintro and Sinmier failed to notify Everest (or Bankers) of the same.[44]

Unbeknownst to Bankers, the closing for Vintro's purchase of Maui Sands occurred on September 7, 2018 -- not on October 19, 2018 as represented by Vintro.[45] Vintro repeatedly lied to Bankers in September and October when it told Bankers that the closing had not occurred. Discovery revealed that while Vintro was asking Bankers to procure insurance coverage in August, Vintro was secretly working with the sellers to have their insurance transferred to Vintro or, alternatively, to have Vintro named as an additional insured on their policy.[46]  On September 20, 2018 when the Ohio Department of Agriculture (which regulates waterparks) requested that Vintro provide proof of insurance, Vintro provided a Certificate of Insurance ("COI") showing Vintro was an additional insured on the sellers' insurance policy (Vintro did not provide the COI for the Everest commercial liability policy bound on August 23, 2018).[47]  Bankers knew none of this.  Vintro never told Bankers that:  Vintro was trying to have the sellers' insurance transferred to Vintro; Vintro was trying to be named as an additional insured on the sellers' policy; and Vintro was successful in being named as an additional insured on the sellers' policy.[48]  Instead, Vintro fabricated a story that the closing had not occurred, causing Berkley and Everest to cancel the insurance flat and relieving Vintro of its obligation to pay the premiums.

Vintro's representation that the closing was occurring on October 19, 2018 was an absolute lie.  There was no October 19 closing.  Vintro needed insurance in October because the

---

[44] Barnum Depo. 1 at p. 148 and Ex. 31; Barnum Depo. 2 at Ex. 70 at Bankers 2356, 2359; Barnum Decl. at ¶5; Deposition of Pargat Grewal Vol. 2 ("P. Grewal Depo. 2") at p. 394-96). The transcripts of the deposition of Pargat Grewal Volumes 1-4 were filed on September 20, 2022 (Doc. 335).  Excerpts of the referenced Pargat Grewal testimony and exhibits are attached as Exhibit F.

[45] *See*, Deposition of Inderjit Grewal[45] ("I. Grewal Depo.") at p. 30.  The transcript of the deposition of Inderjit Grewal was filed on September 20, 2022 (Doc. 336).  Excerpts of the referenced Inderjit Grewal testimony and exhibits are attached as Exhibit G.

[46] Barnum Depo. 2 at p. 315-16 and Ex. 168.

[47] Barnum Depo. 2 at p. 312-14 and Ex. 167.

[48] Barnum Depo. 2 at p. 315-318.

sellers notified Vintro that their insurance was being cancelled.  On October 11, 2018, the sellers

sent an email to Vintro and its attorneys (Michael Scheibli and Hank Griffin) stating:

> Friends - As it stands, our insurance company has informed us that we are no longer insured.  They cannot continue or keep our insurance as we do not own the property or business nor are we involved in any operations from the date of sale.[49]

The next day, the sellers' attorney (Kirk Halpin) sent an email to Vintro (Inderjit Grewal and Lee

Friedman) stating in pertinent part:

> As you know, Vintro has still not obtained building insurance on the Property following the closing on 9/6/2018. As such, our insurance company that has been providing our liquor liability insurance has notified us that as of the end of the day on Friday, October 12, 2018 they are no longer able to maintain any insurance for Sun Development, Inc. ("SDI") and any of its related or affiliated entities.
>
> SDI signed a Liquor License Agreement ("Agreement") with Vintro Hotels & Resorts Ohio LLC ("Vintro") and Sinmier, LLC ("Sinmier") which provided that Vintro and SDI would cooperate with Sinmier in keeping the Alcohol Hospitality Services of the Hotel open between the closing and when the transfer or re-issuance of the License becomes effective.  In addition, the Agreement required that Vintro and SDI shall maintain commercial liability and other insurance which a reasonably prudent liquor establishment would maintain.
>
> &ast; &ast; &ast;
>
> Due to Vintro's failure to obtain building insurance on the Property, SDI is no longer able to maintain any insurance after the end of the day today.
>
> I believe that Sinmier needs to be notified immediately of this situation. If you would like for us to notify your lender of this situation, then please provide me with the appropriate name and contact information as the Agreement did not have this information otherwise I will presume that you will take care of immediately notifying your lender of this situation.[50] (emphasis added)

Vintro never shared these emails or the information in them with Bankers.[51]  Instead, Vintro told

Bankers that the deal had not closed, and fabricated a closing date of October 19.[52]

Discovery also revealed that Vintro's lies were not limited to the closing. When Bankers

---

[49] Barnum Depo. 2 at p. 337-38 and Ex. 173.
[50] Vintro's Response to Everest's Request for Admission No. 27 (attached Exhibit H) and Barnum Depo. 2 at p. 340-43 and Ex. 174.
[51] Barnum Depo. 2 at p. 337-43.
[52] Barnum Depo. 2 at p. 337-43.

asked Vintro for information to market the risk, Vintro told Bankers that it was paying $18.95 million to purchase Maui Sands when, in fact, Vintro was only paying $4.85 million -- a difference of more than $14 million.[53] The purchase agreement listed the purchase price as $5.95 million, but the sellers agreed to give Vintro a closing credit of $1.1 million ($1 million for pre-existing water damage to the Cabana Village and $100,000 for repairs to the waterpark) resulting in a net purchase price of $4.85 million. After the closing, the sellers and Vintro executed an addendum to the purchase agreement increasing the purchase price from $5.95 million to $7 million and giving Vintro a closing credit of $2.15 million (for pre-existing water damage to the Cabana Village and necessary repairs for the waterpark); the net purchase price of $4.85 million remained unchanged.[54]

Vintro also misrepresented and failed to disclose known information about prior losses and claims. Bankers asked Vintro for information about prior losses, and Vintro responded that it had no information.[55] Vintro however knew that: the Cabana Villages sustained a multimillion-dollar water loss in January 2018 resulting in the majority of the hotel rooms being condemned, destroyed, and unusable; the Cabana Village had no certificate of occupancy; and Vintro was receiving a closing credit of $2.15 million largely because of the pre-existing and unremediated damage to the Cabana Village.[56] Vintro failed to disclose this information to Bankers and failed to disclose it on the applications.[57]

Vintro provided information for Bankers to market the risk, and Bankers relied on the information to be true.[58] Instead of being truthful, Vintro misrepresented the closing date, the

---

[53] Barnum Depo. 2 at p. 250; I. Grewal Depo. at p. 86.
[54] Vintro's Responses to Everest's Requests for Admission Nos. 10-11, 24-25, and Exs. E and I (attached Ex. H).
[55] Barnum Depo. 2 at p. 236, 247-48.
[56] Barnum Depo. 2 at p. 271-73 and Ex. 162 and 163; Friedman Depo. at p. 148, 152-53, 158-59; I. Grewal Depo. at p. 75-76, 82-86.
[57] Barnum Depo. 2 at p. 271, 274-75, 289-91, 349.
[58] Barnum Depo. 1 at p. 136; Barnum Depo. 2 at p. 259, 262.

{01504402v8 }                                          12

purchase price, the property values, and known loss information -- all of which Bankers relied upon in procuring coverage.[59]

B. **THE EVIDENCE OF PROPERTY INSURANCE**

When coverage was being bound in August, Vintro notified Bankers that Sinmier wanted to be listed as a mortgagee on the property coverage, and therefore on August 23, 2018 Bankers emailed Vintro an Evidence of Property Insurance ("EOPI") identifying Sinmier as a mortgagee on the Berkley builder's risk policy.[60] The EOPI showed the effective date for the policies as August 23, 2018 (the represented closing date). *Id*. After Vintro provided the EOPI to Sinmier, Sinmier notified Vintro that the address for Sinmier on the EOPI needed to be changed from West Bloomfield, Michigan to Farmington Hills, Michigan.[61] Vintro asked Bankers to revise the EOPI, and on August 27, 2018 Bankers provided Vintro with an updated EOPI with the correct address for Sinmier.[62] Bankers did not provide the August 23, 2018 EOPI or the August 27, 2018 EOPI to Sinmier. Sinmier had no communications -- none -- with Bankers before the January 26, 2019 loss.[63] Vintro was Sinmier's sole source of information regarding insurance coverage, and Sinmier admittingly relied on Vintro's representations regarding the coverage that it was purchasing. *Id*.

Each EOPI prepared by Bankers was on a standard Acord form which plainly states that the EOPI confers no rights on the mortgagee and that coverage is dictated by the terms of the policy. The EOPI specifically states in all caps and bold-face language:

> **THIS EVIDENCE OF PROPERTY INSURANCE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE ADDITIONAL INTEREST NAMED BELOW. THIS EVIDENCE DOES NOT**

---

[59] Barnum Depo. 1 at p. 136, 163-64; Barnum Depo. 2 at p. 237, 240, 250, 277-78, 308.
[60] Barnum Decl. at Ex. 3; Barnum Depo. 1 at p. 44-45, 89-91, 101-02 and Ex. 9; Friedman Depo. at p. 15-17.
[61] Barnum Depo. 1 at p. 110-11 and Ex. 15; Pargat Depo. 2 at p. 414-15, 428.
[62] Barnum Depo. 1 at p. 118-20 and Ex. 19.
[63] P. Grewal Depo. 1 at p. 131; P. Grewal Depo. 2 at 390-91, 414-416, 428, and P. Grewal Depo. 3 at 475.

{01504402v8 }                                      13

**AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR <u>ALTER THE COVERAGE AFFORDED BY THE POLICIES</u> BELOW.  THIS EVIDENCE OF INSURANCE <u>DOES NOT CONSTITUTE A CONTRACT BETWEEN</u> ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR <u>PRODUCER, AND THE ADDITIONAL INTEREST</u>.** (underlined emphasis added)[64]

The EOPI also states that "THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES."  *Id.*  Sinmier acknowledges that the EOPI states that it confers no rights upon Sinmier, but Sinmier did not review that language when it received the EOPI.[65]

After the closing did not occur in August, Sinmier never notified Bankers about the September 7, 2018 closing and never requested an updated EOPI for the new closing.[66] The only EOPI that Sinmier had was the one that Vintro had provided to Sinmier for the anticipated August closing.[67]  When the closing occurred in September, Sinmier never asked Vintro whether it had purchased the builder's risk coverage bound in August, never asked Vintro whether it had paid the premiums for the coverage, and never did anything else to confirm whether Vintro had purchased the coverage and paid the premiums.[68] Despite the explicit warnings on the EOPI, and despite not knowing the terms, exclusions or conditions of coverage, Sinmier never requested a copy of the insurance policy for the September 7, 2018 closing.[69]  Sinmier admits that it needed the policy to know its terms, but Sinmier never requested the policy.[70]  Sinmier did not know what the terms and conditions were to commence coverage under the Berkley policy, and Sinmier did nothing to determine whether Vintro satisfied them.[71] According to Sinmier, it was

---

[64] Barnum Depo. 1 at Ex. 19; P. Grewal Depo. 2 at p. 415-16 and Ex. 355; P. Grewal Depo. 3 at p. 566-67 and Ex. 459.
[65] P. Grewal Depo. 3 at p. 569-70.
[66] P. Grewal Depo. 2 at p. 391, 393.
[67] P. Grewal Depo. 2 at p. 392-93.
[68] P. Grewal Depo. 2 at p. 421, 428, 449-50.
[69] P. Grewal Depo. 2 at p. 394, 428, 430-31; P. Grewal Depo. 3 at p. 571-73.
[70] P. Grewal Depo. 3 at p. 569-71.
[71] P. Grewal Depo. 2 at p. 431, 448.

{01504402v8 }                                    14

Vintro's responsibility to satisfy the insurance, and Sinmier relied on Vintro to do the same.[72]

Sinmier also relied on its counsel to determine whether there was sufficient evidence of

insurance and whether the insurance complied with the loan agreement.[73]  Sinmier's attorneys

told Vintro to ensure that Sinmier was listed as a mortgagee and relied upon Vintro to do so.[74]

In addition to never requesting a copy of any policy for the closing, Sinmier also never

requested a copy of any policy before the January 2019 loss.[75]  The first time Sinmier requested a

copy of the insurance policies was after it took title to Maui Sands in October 2019.[76]  Tellingly,

if Sinmier had requested an updated EOPI or the policies for the closing, Bankers would have

learned that the closing was occurring on September 7, 2018, Sinmier would have learned that

Vintro had not purchased the Berkley policy, and Vintro's fraud would have been foiled.

## C. BANKERS AND SINMIER HAD NO COMMUNICATIONS UNTIL AFTER THE LOSS.

The first time that Sinmier ever communicated with Bankers was on February 8, 2019 --

after the loss already had occurred.[77]  Sinmier reached out to Bankers because Vintro had

defaulted on its loan, and Sinmier was getting ready to file suit against Vintro.[78]  In response to

Sinmier's inquiries, on February 8, 2019 Bankers emailed Sinmier a COI for the commercial

liability coverage.[79] Five minutes later, Sinmier emailed Bankers inquiring if there was also

property coverage.[80]  Before Bankers could respond, Sinmier emailed Bankers an EOPI stating:

"Can you confirm the that attached certificate and coverages are still in effect? We have not

---

[72] P. Grewal Depo. 2 at p. 448.

[73] P. Grewal Depo. 1 at p. 129; P. Grewal Depo. 2 at p. 430, P. Grewal Depo. 3 at p. 571.

[74] P. Grewal Depo. 2 at p. 448; P. Grewal Depo. 3 at p. 579.

[75] P. Grewal Depo. 1 at p. 129-30 and P. Grewal Depo. 2 at 394.

[76] P. Grewal Depo. 1 at p. 129.

[77] P. Grewal Depo. 2 at p. 391, 458.

[78] P. Grewal Depo. 2 at p. 458-59.

[79] P. Grewal Depo. 3 at p. 472 and Ex. 441. Bankers' records confirm no request by Sinmier for an EOPI or COI before February 8, 2019, and show no EOPI or COI sent by Bankers to Sinmier before February 8, 2019.  See, Declaration of Holly Bickford (attached as Exhibit I).

[80] P. Grewal Depo. 3 at p. 472 and Ex. 442.

received any notices from your company since this certificate was issued."[81] The attached EOPI was the original August 23, 2018 EOPI for the Berkley policy that had been changed to correct the address for Sinmier.[82] On February 8, 2019, Bankers sent an email to Sinmier with an attached EOPI for the Berkely policy.[83] The EOPI showed an effective date and an expiration date of 8/23/18, demonstrating the flat cancellation of the Berkley policy.[84] Sinmier questioned whether the EOPI was correct (because it had the same effective and expiration dates), and on February 11, 2018 Bankers erroneously responded that the dates were wrong (when in fact they were correct).[85] After receiving nothing further from Bankers, on March 27, 2019 Sinmier emailed Bankers requesting a corrected certificate for Maui Sands, and Bankers responded by emailing Sinmier an EOPI for the cancelled Berkley policy showing an effective date of 8/23/18 and an expiration date of 8/23/19.[86] While Bankers acknowledges that it errored in sending this EOPI, the error was obvious to Sinmier. The EOPI had the wrong name for the insured (Doubletree Sandusky Ohio instead of Vintro Hotel & Resorts Ohio, LLC), the wrong address for Sinmier (West Bloomfield, Michigan instead of Farmington Hills, Michigan), and the wrong effective date (the anticipated closing date of 8/23/18 instead of the actual closing date of 9/7/18).[87] Sinmier knew when it received this EOPI that: on 8/23/18 Vintro did not own Maui Sands and had nothing to insure; the address for Sinmier previously was corrected in August; and Vintro was the entity that owned Maui Sands and to which Sinmier made the loan.[88] Tellingly, when Sinmier received this EOPI, Sinmier did not request a copy of the Berkley

---

[81] P. Grewal Depo. 3 at p. 473-75 and Ex. 443 (emphasis added).
[82] P. Grewal Depo. 3 at p. 477.
[83] P. Grewal Depo. 3 at p. 477 and Ex. 444.
[84] Deposition of Leah-Ann Combs at p. 60, 71. Excerpts of the referenced Combs' testimony and exhibits are attached as Exhibit J.
[85] P. Grewal Depo. 3 at p. 485-86 and Ex. 445.
[86] P. Grewal Depo. 3 at p. 485-86 and Ex. 445.
[87] P. Grewal Depo. 3 at Ex. 445.
[88] P. Grewal Depo. 3 at p. 488-89.

policy or a revised EOPI to correct the errors; Sinmier simply put it in its file.[89]  Nonetheless, Sinmier was not harmed because the loss already had occurred when Sinmier received the EOPI and Sinmier could not have procured insurance retroactively to cover the loss.[90]

### D. VINTRO'S DEMOLITION OF THE CABANA VILLAGE AND MAUI WEST.

In the fall of 2018, Vintro started the process of demolishing the Cabana Village and Maui West.  Vintro removed furniture, removed copper piping from the walls of the Cabana Village, tested the buildings for asbestos, and accepted a proposal to demolish the buildings.[91] On December 6, 2018, Vintro sent an email to Sinmier and its attorneys providing them with the accepted proposal for demolition, stating the demolition was starting the following week, and asking Sinmier to release monies from escrow for the demolition.[92]  The next week, Vintro sent another email to Sinmier and its attorneys asking Sinmier to release funds for the demolition.[93] Sinmier was fully aware before the January 2019 loss that Vintro was demolishing Cabana Village and Maui West.[94]

### E. THE LOSS AT MAUI SANDS

In January 2019, Vintro submitted a claim for a wind and water loss occurring at Maui Sands on January 26, 2019.[95]  The reported loss consisted of a broken water pipe in Maui West, broken electrical signs in the parking lot, and damage to the waterpark's rooftop HVAC units.[96]

---

[89] P. Grewal Depo. 3 at p. 488-89.
[90] P. Grewal Depo. 3 at p. 490.
[91] Deposition of Brian Lake ("Lake Depo") at p. 70-72 and Ex. 434 (A.V. Lake 0071-118); Deposition of David Myers ("Myers Depo.") at p. 13, 50-51, 68-69, 86; I. Grewal Depo. at p. 82-83 and Exs. 205, 207 and 208.  The transcripts of the depositions of Brian Lake and David Myers were filed on September 20, 2022 as Doc. 330 and Doc. 334, respectively.  Excerpts of the referenced Lake testimony and exhibits and Myers' testimony and exhibits are attached as Exhibits K and L, respectively.
[92] P. Grewal Depo. 2 at p. 451-52 and Ex. 363.
[93] P. Grewal Depo. 2 at p. 453-454 and Ex. 364.
[94] P. Grewal Depo. 2 at p. 454-56.
[95] Barnum Depo. 1 at Ex. 38.
[96] Barnum Depo. 1 at Ex. 38.

{01504402v8 }                    17

A second water pipe break occurred in Cabana Village on February 3, 2019.[97]  Maui Sands had minimal customers when the Loss occurred and closed its doors shortly thereafter.[98] After Vintro failed to pay the electric bills, Ohio Edison shut off power to Maui Sands on March 20, 2019.[99] The lack of power to run the sump pumps thereafter caused the basement to flood.[100]

In response to the claim, Everest made three advances totaling $350,000:  two advances to Vintro for $200,000 and $50,000, and one advance to East Coast Environmental Restoration (the remediation company hired by Vintro) for $100,000.[101]  For each advance, Vintro executed a Sworn Statement on Proof of Loss falsely attesting that no other entity had an interest in or encumbrance on the property.[102]  On June 29, 2019, Vintro and Everest settled the claims whereby Everest agreed to pay Vintro $1,125,000 less the $350,000 previously advanced.[103]  In the Settlement Agreement, Vintro falsely warranted that no other entity had any interest in the claim and that Vintro had the sole right to receive the settlement proceeds. [104]

## F.  THE FORECLOSURE ACTION

On March 29, 2019, about three months after Vintro defaulted on the loan, Sinmier instituted a foreclosure and receivership action against Vintro and Inderjit Grewal with regard to Maui Sands.[105]  Vintro opposed the foreclosure and claimed the value of Maui Sands was more

---

[97] *See*, Deposition of Brian Barron ("Baron Depo.") at Ex. 255.  The transcript of the deposition of Brian Barron was filed on September 20, 2022 (Doc. 327).  The January 26, 2019 loss and the February 3, 2019 loss are collectively referred to herein as the "Loss."  Excerpts of the referenced Baron testimony and exhibits are attached as Exhibit M.
[98] Deposition of Angela Holcomb ("Holcomb Depo.") at p. 19, 33, 50, 64.  The transcript of the deposition of Angela Holcomb (Doc. 333) was filed on September 21, 2022.  Excerpts of the referenced Holcomb testimony is attached as Exhibit N.
[99] Myers Depo. at p. 26-27.
[100] Myers Depo. at p. 27-29, 81.
[101] Barron Depo. at p. 55, 126, 156, 185, 199.
[102] Barron Depo. at Exs. 260, 272; Inderjit Grewal's Responses to Everest's Requests for Admission at Request Nos. 2 and 6 (attached Exhibit O).  Exhibit C to the Requests for Admissions was marked confidential and is not being attached hereto.
[103] Barron Depo. at p. 103, 158 and Ex. 282 (which was filed under seal on 9/23/22 at Doc. 341, attachment #9).
[104] Barron Depo. at Ex. 282, ¶7.
[105] *See*, *Sinmier, LLC v. Vintro Hotels & Resorts, Ohio LLC, et al.*, Case No. 3:19-cv-00705 in the United States District Court for the Northern District of Ohio, Western Division.

than sufficient to satisfy the mortgage debt.[106]

On October 3, 2019, Vintro, Inderjit Grewal and Sinmier settled the foreclosure action. Pursuant to the settlement agreement, Sinmier received (i) title to Maui Sands via a Deed in Lieu of Foreclosure, (ii) cash in the amount of $1,372,625 that was being held in escrow, (iii) a consent judgment against Vintro and Inderjit Grewal in the amount of $627,375, and (iv) an undisclosed portion of recovered insurance proceeds.[107]  Importantly, paragraph 10 of the Settlement Agreement states in pertinent part:

> Upon receipt of the Deed in Lieu of Foreclosure, <u>Sinmier shall fully release Vintro from any liability or responsibility it may have to pay any deficiency amount</u> following the sale of Maui Sands, whether by foreclosure sale or otherwise.  Sinmier shall be entitled to retain all proceeds from the sale of Maui Sands, whether by foreclosure or otherwise.  <u>The Deed in Lieu shall be considered payment in full of Vintro's monetary obligations under the Note or Mortgage</u>.  (emphasis added).

While the Deed in Lieu of Foreclosure gratuitously states that "[t]he value of the Property is not in excess of the amount of the obligations due under the Note and Mortgage," Sinmier has "no idea" what was the basis for that statement.[108]  Sinmier has never had Maui Sands appraised and does not know if, when it accepted the Deed in Lieu of Foreclosure, Maui Sands was worth more or less than the outstanding amount owed by Vintro on the loan.[109]

## G.  THE CURRENT ACTION

After Sinmier settled with and released Vintro and Inderjit Grewal, the obvious bad actors, Sinmier filed suit against Everest, Berkley, Bankers, and ARC seeking to recover damages allegedly arising out of the Loss.  Sinmier asserts claims against Bankers for breach of contract/third-party beneficiary, negligence, negligence per, and misrepresentation/fraud.  (Doc.

---

[106] *Id*. at Doc. 11-1, PageID#: 170.
[107] P. Grewal Depo. 3 at Ex. 447 (Settlement Agreement) and Ex. 448 (Deed in Lieu of Foreclosure which was filed under seal on 9/23/22 at Doc. 341, attachment #10).
[108] P. Grewal Depo. 3 at p. 496.
[109] P. Grewal Depo. 1 at p. 23, P. Grewal Depo. 3 at 494-95.

{01504402v8 }                              19

75).  Bankers has filed a Crossclaim against Vintro alleging that Vintro fraudulently induced Bankers to procure insurance coverage for it, and therefore any agreement by Bankers to procure coverage for Vintro is void.  *See*, Crossclaim at Counts Three-Seven (Doc. 94, PageID #: 1374-79).  Bankers has filed a Motion for Default Judgment with regard to its Crossclaim against Vintro (Doc. 285), and also has filed a Motion for Partial Summary Judgment on its Crossclaim for fraudulent inducement (Doc. 371).  Both of those Motions are currently pending.

### IV.    ARGUMENT

**A. BANKERS IS ENTITLED TO SUMMARY JUDGMENT AGAINST ALL OF SINMIER'S CLAIMS BECAUSE THE DEBT SECURED BY THE MORTGAGE HAS BEEN FULLY EXTINGUISHED.**

A mortgagee's insurable interest is limited to the amount of debt secured by the mortgage on the property.  *Northern Assur. Co. v. Natl. Guarantee & Fin. Co.*, 21 Ohio Law Abs. 641, 643 (2nd Dist. 1936); *McDonald v. Black's Adm'r*, 20 Ohio 185, 193 (1851).  The subsequent partial or full extinguishment of the debt giving rise to the insurable interest reduces the mortgagee's interest in the insurance proceeds to the extent that the debt is satisfied. *Barwick v. State Farm Fire & Cas. Ins. Co.*, 2011-Ohio-5689, ¶35-36 (2nd Dist.); *Gibney v. State Farm Fire & Cas. Co.*, 897 F.Supp.2d 618, 632-33 (S.D. Ohio 2012), on reconsideration in part, 2012 WL 6015961, and rev'd in part, 549 Fed.Appx. 488 (6th Cir. 2013); and *Lee v. Royal Indem. Co.*, 108 F.3d 651, 653 (6th Cir. 1997).  "The mortgagee's interest in the insurance proceeds is recognized as security for the payment of the debt."  *Id*. quoting *Lee*, 108 F.3d at 654.  "The insurance is an alternative source of payment and once the debt is paid by some other means, any right to the insurance is thereby extinguished."  *Id*. quoting *Lee*, 108 F.3d at 654.

When Sinmier settled the foreclosure action against Vintro and Inderjit Grewal, Sinmier accepted title to Maui Sands as "payment in full of Vintro's monetary obligations under the Note

or Mortgage," and fully released Vintro from any deficiency amount.[110]  Vintro's debt secured by the mortgage has been fully extinguished.  Sinmier's insurable interest and right to receive any insurance proceeds, therefore, also have been extinguished.  Accordingly, Bankers is entitled to summary judgment against all of Sinmier's claims.

**B. BANKERS IS ENTITLED TO SUMMARY JUDGMENT AGAINST SINMIER'S CLAIM FOR BREACH OF CONTRACT/THIRD-PARTY BENEFICIARY BECAUSE SINMIER CANNOT PROVE THE ELEMENTS OF THE CLAIM.**

**1. There Is No Enforceable Contract Between Bankers and Vintro Necessary to Support Sinmier's Third-Party Beneficiary Claim.**

"A cause of action for breach of contract requires the claimant to establish the existence of a contract, the failure without legal excuse of the other party to perform when performance is due, and damages or loss resulting from the breach." *Lucarell v. Nationwide Mut. Ins. Co.*, 152 Ohio St.3d 453, 2018-Ohio-15, 97 N.E.3d 458, ¶41.  "[T]o declare the existence of a contract, both parties to the contract must consent to its terms; there must be a meeting of the minds of both parties; and the contract must be definite and certain." *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations*, 61 Ohio St.3d 366, 369, 575 N.E.2d 134, 137 (1991).  *Accord*, *Cleveland Builders Supply Co. v. Farmers Ins. Group of Cos.*, 102 Ohio App. 3d 708, 712, 657 N.E.2d 851, 853 (8th Dist. 1995).  "'Vagueness of expression, indefiniteness and uncertainty as to any of the essential terms of an agreement, have often been held to prevent the creation of an enforceable contract." *Rulli v. Fan Co.*, 79 Ohio St.3d 374, 376, 683 N.E.2d 337, 339 (1997), citing 1 Corbin on Contracts (Rev. Ed.1993) 525, Section 4.1.  Only a party to a contract or an intended third-party beneficiary of a contract may bring an action on a contract. *Clem v. Steiner*, 2003-Ohio-4865, ¶19 (11th Dist.).  "[T]o enforce rights as an intended third-party beneficiary, the

---

[110] P. Grewal Depo. 3 at Ex. 447 (Settlement Agreement) at ¶10.

claimant must establish an underlying enforceable contract." *Castelli v. Patmon*, 2008-Ohio-6468, ¶18 (8th Dist.).

Sinmier alleges that it is a third-party beneficiary to a contract between Bankers and Vintro whereby Bankers agreed to procure property insurance for Vintro listing Sinmier as a mortgagee, and that Bankers breached the contract because Sinmier was not listed as a mortgagee on the Everest policy.[111]  Sinmier cannot maintain this claim, as a matter of law, because Bankers and Vintro never entered into any such contract.

Bankers denies the existence of the alleged contract,[112] and there is no evidence refuting Bankers' denial.  There is no written contract between Bankers and Vintro, and there also is no evidence of an oral contract.  There is no evidence demonstrating:  when and how Bankers and Vintro entered into the alleged contract, the terms of the alleged contract, Bankers' and Vintro's consent to the terms, the required performance of Vintro, the required performance of Bankers, or the consideration.  Simply saying there was a contract does not make it true.

To avoid summary judgment, Sinmier must present evidence demonstrating the existence of the contract, that Sinmier was an intended third-party beneficiary of the contract, performance by Vintro, failure to perform by Bankers, and damages proximately caused by Bankers' breach. Sinmier cannot satisfy this burden.  Bankers, therefore, is entitled to summary judgment against Sinmier's claim for breach of contract (Count 3 of the Second Amended Complaint).

## 2. Any Agreement by Bankers to Procure Insurance for Vintro Is Void.

On November 4, 2022, Bankers filed a Motion for Partial Summary Judgment on its Crossclaim for fraudulent inducement against Vintro (Doc. 371).  As demonstrated therein, Vintro plainly defrauded Bankers with regard to Bankers' procurement of insurance coverage for

---

[111] *See*, Count 3 of the Second Amended Complaint (Doc. 75, Page ID#: 957).
[112] *See*, Bankers Answer to the Amended Complaint (Doc. 94, PageID#: 1357).

Vintro, and therefore any agreement by Bankers to procure insurance coverage for Vintro is void. Accordingly, assuming *arguendo* that Bankers entered into a contract to procure insurance coverage for Vintro, Sinmier's third-party beneficiary claim fails as a matter of law because the underlying contract is void. Bankers, therefore, is entitled to summary judgment against Sinmier's claim for breach of contract/third-party beneficiary (Count 3 of the Second Amended Complaint).

### C. SINMIER CANNOT MAINTAIN A CLAIM FOR NEGLIGENCE.

#### 1. Sinmier's Claims for Negligence and Negligence *Per Se* Are Barred by the Economic Loss Doctrine.

The economic loss doctrine applies to claims of negligence and negligence per se. *Newman v. Total Quality Logistics, LLC*, 2021 WL 1192669, *6-7 (S.D. Ohio 2021). "The economic loss doctrine holds that absent tangible physical harm to persons or tangible things there is generally no duty to exercise reasonable care to avoid economic losses to others." *J.F. Meskill Enterprises, LLC v. Acuity*, 2006 WL 903207, *2 (N.D. Ohio 2006), citing *Queen City Terminals, Inc. v. Gen. Am. Transp. Corp.*, 73 Ohio St.3d 609, 615, 653 N.E.2d 661, 667-68 (1995). "These economic losses may be recovered in contract only." *Id*. "'[A] plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable.'" *All Erection & Crane Rental Corp. v. Acordia Northwest, Inc.*, 162 Fed.Appx. 554, 559-60 (6th Cir. 2006), quoting *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 42 Ohio St.3d 40, 44, 537 N.E.2d 624, 630 (1989). The "inability to recover under an insurance policy for injury or damage is an economic loss." *Potts v. Safeco Ins. Co.*, 2010-Ohio-2042, ¶20 (5th Dist.), citing *Long v. Time Ins. Co.*, 572 F.Supp.2d 907 (S.D. Ohio 2008).

All of Sinmier's damages are economic losses. Sinmier's negligence and negligence per se claims, therefore, are barred by the economic loss rule. *See*, *J.F. Meskill Enterprises*, 2006

WL 903207, *2 (granting judgment on the pleadings and holding that insured's negligence claim against insurance broker was barred by the economic loss doctrine); *All Erection & Crane*, 162 Fed.Appx. at 559-60 (holding that insured's negligence claim against insurance brokers were barred by the economic loss rule; in cases involving commercial parties, the economic loss rule applies regardless of whether privity exists, and the commercial party's remedies are "properly restricted either to a traditional breach of contract claim or, if available, to the remedies provided by the Uniform Commercial Code").  *Accord*, *Burke v. Time Ins. Co.*, 2011 WL 2600673, *2-3, report and recommendation adopted, 2011 WL 2580325 (S.D. Ohio 2011) (holding that plaintiff's negligence claim against insurance agent was barred by the economic loss rule); *Mafcote, Inc. v. Genatt Assoc., Inc.*, 2007 WL 527870, *6 (S.D. Ohio 2007) (granting summary judgment against insured's negligence claim against insurance broker based on economic loss rule); *Potts*, 2010-Ohio-2042, ¶28 (affirming summary judgment on insured's negligence claim against insurance broker because the claim was barred by the economic loss rule).  Accordingly, Bankers is entitled to summary judgment against Sinmier's claims for negligence[113] and negligence *per se*[114] (Counts five and seven of the Second Amended Complaint).

### D. BANKERS IS ENTITLED TO SUMMARY JUDGMENT AGAINST SINMIER'S CLAIM FOR FRAUD BECAUSE SINMIER CANNOT PROVE THE ELEMENTS OF THE CLAIM.

#### 1. Elements of a Claim for Fraud.

To maintain a cause of action for fraud, a plaintiff must present affirmative evidence supporting each of the following elements:

---

[113] At paragraph 111 of the Second Amended Complaint (Doc. 75, PageID#: 959), Sinmier lists 17 duties that it claims Bankers owed Sinmier.  This list of duties plainly conflicts with Ohio law holding that an insurance agent generally "owes no duty to third parties." *S.L. & M.B., L.L.C. v. United Agencies, Inc.*, 2021-Ohio-2780, ¶16 (8th Dist.).  Regardless, the economic loss doctrine bars Sinmier's negligence claim in toto.

[114] Sinmier's negligence *per se* claim also fails because R.C. 3938.04 does not provide civil liability for its violation. *See*, *generally*, *Eisenhuth v. Moneyhon*, 161 Ohio St. 367, 371-75, 119 N.E.2d 440, 443-44 (1954) (explaining when a statute creates a claim for negligence *per se* created by statute).  A person who violates R.C. 3938.04 is merely subject to a penalty of not more than $1,000 as determined by the Ohio superintendent of insurance.

(1) a representation or, where there is a duty to disclose, concealment of a fact; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance upon the representation or concealment; and (6) a resulting injury proximately caused by the reliance.

*Gaines v. Preterm-Cleveland, Inc.*, 33 Ohio St.3d 54, 55, 514 N.E.2d 709, 712 (1987). Further, "a party cannot maintain an action for fraud when the fraudulent representations were not made to him to induce him to act." *Moses v. Sterling Commerce America, Inc.*, 2002-Ohio-4327, ¶21 (10th Dist.), citing *Wells v.. Cook*, 16 Ohio St. 67 (1865), syllabus. *See also*, *Howick v. Lakewood Village Ltd. Partnership*, 2007-Ohio-4370, ¶61 (3rd Dist.) (holding that plaintiffs could not maintain a fraud claim based on misrepresentations made at a meeting that they did not attend).

Sinmier's fraud claim is based upon four EOPIs that Bankers prepared during the time period of August 23, 2018 through March 27, 2019.[115] As shown herein, Sinmier cannot maintain a fraud claim based on the EOPIs.

### 2. Sinmier Cannot Maintain a Fraud Claim Based upon EOPIs that Bankers Prepared on August 23, 2018 and August 27, 2018.

The facts are irrefutable that before the Loss, Bankers did not provide any information (including the August 23, 2018 and August 27, 2018 EOPIs) to Sinmier. Sinmier itself has admitted this. Sinmier has admitted that: Vintro provided Sinmier with all of the insurance information (*e.g.*, the EOPIs) before the closing; Sinmier was relying on Vintro's representations regarding the insurance that it was purchasing; Sinmier had no communications with Bankers about insurance coverage when making the loan to Vintro; and Sinmier had no communications

---

[115] *See*, Second Amended Complaint (Doc. 75, PageID#: 965).

{01504402v8 }                                      25

with Bankers before the Loss.[116]  Sinmier therefore cannot satisfy the first element of a fraud claim because Bankers made no representation to Sinmier.  Sinmier's fraud claim also fails because the coverage reflected in the EOPIs was correct when Bankers prepared the EOPIs and because there is no evidence that Bankers intended to mislead Sinmier by preparing the EOPIs. Sinmier, therefore, cannot satisfy the third and fourth elements of a fraud clam.

Finally, Sinmier's fraud claim fails because Sinmier cannot demonstrate justifiable reliance.  "Reliance is justifiable if the representation does not appear unreasonable on its face and if there is no apparent reason to doubt the veracity of the representation under the circumstances." *Salyers v. Brennan Builders, Inc.*, 2015 WL 1286011, *15 (S.D. Ohio 2015), *aff'd*, 628 Fed.Appx. 427 (6th Cir. 2015), citing *Lepera v. Fuson*, 83 Ohio App.3d 17, 26, 613 N.E.2d 1060, 1065 (1st Dist. 1992).  "However, there must be a balance between reliance and responsibility:"

> The rule of law is one of policy and its purpose is, while suppressing fraud on the one hand, not to encourage negligence and inattention to one's own interests. There would seem to be no doubt that . . . . <u>in ordinary business transactions, individuals are expected to exercise reasonable prudence and not to rely upon others with whom they deal to care for and protect their interests</u>. . . . (citations omitted and emphasis added)

*Id*.  *See also*, *Morgan v. Cohen*, 2019-Ohio-3662, ¶46 (8th Dist.), *Amerifirst Savings Bank of Xenia v. Krug*, 136 Ohio App.3d 468, 495-96, 737 N.E.2d 68, 87 (2nd Dist. 1999).  In determining whether reliance is justified, courts "'consider the various circumstances involved, such as the nature of the transaction, the form and materiality of the representation, the relationship of the parties, the respective intelligence, experience, age, and mental and physical condition of the parties, and their respective knowledge and means of knowledge.'" *Bender v. Logan*, 2016-Ohio-5317, 76 N.E.3d 336, ¶54 (4th Dist.) (citations omitted). *Accord*, *Morgan*, 2019-Ohio-3662, ¶46.

---

[116] P. Grewal Depo. 1 at p. 131, P. Grewal Depo 2 at 390-91, 414-16, 428, and P. Grewal Depo. 3 at 475.

Sinmier's alleged reliance on the EOPIs was not justified as a matter of law.  On its face, the EOPI warns that it "**CONFERS NO RIGHTS UPON THE ADDITIONAL INTEREST**" and that coverage is dictated by the terms of the policy.  In *Lu-An-Do, Inc. v. Kloots*, 131 Ohio App.3d 71, 80-81, 721 N.E.2d 507, 514 (5th Dist. 1999), the Fifth District examined insurance certificates and held that reliance on them is not justifiable <u>as</u> <u>a</u> <u>matter</u> <u>of</u> <u>law</u> because the face of certificates indicate "in warning language that only the policy of insurance can set forth the true coverage."  The Fifth District reasoned that based upon the warnings "the insurance policy itself is the only document upon which a person should rely when determining if a person's interest in property is protected under that insurance policy."  *Id.*

Sinmier is a sophisticated commercial lender which was represented by <u>two</u> <u>law</u> <u>firms</u> when it made the $7 million loan to Vintro.[117]   Sinmier relied on its counsel to determine whether there was sufficient evidence of insurance.[118] Further, Pargat Grewal (Sinmier's principal) is wealthy educated person who invests in, acquires, and manages commercial real estate.[119]  The EOPI indicated that the effective date for Berkley policy was August 23, 2018 (an earlier anticipated closing date).  When the deal closed on September 7, 2018, Sinmier did not request an updated EOPI, did not request proof of payment by Vintro for the insurance, and did not request a copy of the policy to confirm coverage.  If Sinmier had done any of those, Sinmier would have learned that Vintro had not purchased the insurance, and Bankers would have been alerted to the closing.  Sinmier had a duty "to exercise reasonable prudence" to protect its own interests.  Sinmier cannot blame Bankers for Sinmier's failure to request and to review the insurance policy to confirm coverage.  *See*, *Lu-An-Do*, *supra*; *Brown v. Woodmen Acc. & Life Co.*, 84 Ohio App.3d 52, 56, 616 N.E.2d 278, 280 (12th Dist. 1992) (claimants were precluded

---

[117] P. Grewal Depo. 1 at p. 24-25.
[118] P. Grewal Depo. 3 at p. 571.
[119] P. Grewal Depo. 1 at p. 12-21.

from asserting reliance on an agent's purported guarantee of coverage, because they "had only to ask" for the policy to confirm coverage and failed to do so); *Certain Underwriters At Lloyd's of London v. NFC Mining, Inc.*, 427 Fed.Appx. 404, 405 (6th Cir. 2011) (holding that "NFC could not reasonably think that a certificate of liability insurance, as opposed to the insurance contract itself, would confer coverage for coal dust damages"); *Geeta Hosp. Inc. v. Dependable Quality Construction, LLC*, 2021 WL 1599188, *6 (S.D. Ohio 2021) ("[T]he Court is not required to ignore the document on which Plaintiff says it relied. And that document makes clear on its face that it conferred no rights upon Plaintiff").  Sinmier's alleged reliance on the EOPIs (rather than the policy itself) was not justified as a matter of law.

Accordingly, Sinmier's claim for fraud based upon the August 23, 2018 and August 27, 2018 EOPIs fails because Sinmier cannot satisfy the elements of the claim.

### 3. Sinmier Cannot Maintain a Fraud Claim Based upon EOPIs that Bankers Provided After the Loss on February 11, 2019 and March 27, 2019.

Sinmier cannot maintain a fraud claim based upon the February 8, 2019 EOPI.[120]  First, the EOPI showed 8/23/18 as the effective date and the expiration date demonstrating the policy had been cancelled flat.  Assuming *arguendo* that the EOPI is a representation -- which Bankers denies -- it was not false.  Second, there is no evidence that Bankers intended to mislead Sinmier.  Third, not only is there is no evidence that Sinmier relied on the EOPI, any reliance was not justifiable because, as previously addressed, based on the EOPI's warnings the insurance policy itself is the only document upon which a mortgagee can justifiably rely.  Reliance also was not justified because the EOPI indicated that the policy had expired on 8/23/18.  Finally, as Bankers provided this EOPI after the Loss, it was not the cause Sinmier's alleged damages. Sinmier already had made the loan, and the Loss already had occurred.

---

[120] Paragraph 149 alleges an EOPI provided on February 11, 2019, but Bankers actually provided it to Sinmier on February 8, 2019.  P. Grewal Depo. 3 at p. 477-478 and Ex. 444.

Sinmier also cannot maintain a fraud claim based upon the March 27, 2019 EOPI.  While this EOPI incorrectly showed an expiration date of 8/23/19 for the Berkley policy, there is no evidence that the incorrect date was anything more than a mistake.  A mistake does not equate to an intent to mislead.  While the EOPI is not a representation, there is no evidence that Sinmier relied on it.  As previously addressed, reliance on an EOPI is not justifiable as a matter of law.  Further, reliance on this EOPI was not justifiable because it had the wrong name of the insured and the wrong address for Sinmier (two items previously corrected in August 2018), and because Sinmier knew that the cancelled Berkley policy was a builder's risk policy designed to cover a multi-million-dollar renovation project that never commenced.[121]  Finally, as Bankers provided this EOPI to Sinmier <u>two</u> <u>months</u> <u>after</u> <u>the</u> <u>Loss</u>, at a time when Sinmier could not have procured insurance retroactively to cover the Loss, the EOPI plainly was not the cause Sinmier's damages.

Accordingly, Sinmier's claim for fraud based upon the February and March EOPIs fails because Sinmier cannot satisfy the elements of the claim.

### E.  BANKERS IS ENTITLED TO SUMMARY JUDGMENT BECAUSE NO ACT OF BANKERS WAS THE PROXIMATE CAUSE OF SINMIER'S LOSS.

#### 1.  Vintro's Misrepresentation of the Purchase Price Was the Proximate Cause of Sinmier's Alleged Loss.

Sinmier loaned $7 million to Vintro based upon Vintro's misrepresentation that the purchase price for Maui Sands was $18.95 million.[122]  When asked if Sinmier would have made the loan if Sinmier had known the true purchase price, Sinmier testified "absolutely not."[123]  But for Vintro's misrepresentation, Sinmier would not have made the loan and would not have sustained damages.  Vintro's misrepresentation, therefore, was the proximate cause of Sinmier's loss.  Accordingly, Bankers is entitled to summary judgment against all of Sinmier's claims.

---

[121] *See*, Berkley Motion for Summary Judgment, Doc. 343, PageID #: 17813-17814.
[122] P. Grewal Depo. 1 at p. 248; P. Grewal Depo. 2 at p. 261.
[123] P. Grewal Depo. 2 at p. 260.

### 2. Alternatively, Sinmier's Failure To Read The Policy Was the Proximate Cause of Its Loss.

The facts are irrefutable that Sinmier never requested or reviewed the Everest policy or the Berkley policy before Sinmier made the loan or before the Loss.  Under Ohio law, the insured (or in this case the mortgagee) "has a duty to examine the coverage provided and is charged with knowledge of the contents of the policy."  *Kincaid v. Erie Ins. Co.*, 128 Ohio St.3d 322, 2010-Ohio-6036, 944 N.E.2d 207, ¶16.  "An agent or broker is not liable when a customer's loss is due to the customer's own act or omission."  *Craggett v. Adell Ins. Agency*, 92 Ohio App.3d 443, 453, 635 N.E.2d 1326, 1332 (8th Dist. 1993).

If Sinmier had requested the Berkley policy, Sinmier would have learned that Vintro never purchased it.  If Sinmier had requested and had reviewed the Everest policy, Sinmier would have known that Sinmier was not identified as a mortgagee.  Sinmier breached its duty to review the policy, and that breach was the proximate cause of its loss.  Accordingly, Bankers is entitled to summary judgment against all of Sinmier's claims.  *See*, *Rose v. Landon*, 2005-Ohio-1623, ¶24-27 (12th Dist.) (affirming summary judgment on insureds' claim against insurance agent; insureds' breached their duty to read their policy and that breach was "the sole and proximate cause of any loss sustained as a result of being underinsured").

## V.      CONCLUSION

For the foregoing reasons, Bankers urges the Court to enter an Order granting summary judgment in favor of Bankers and against all of Sinmier's claims.

Respectfully submitted,

NICOLA, GUDBRANSON & COOPER, LLC


/s/ R. Christopher Yingling
Richard G. Witkowski (0009839)
R. Christopher Yingling (0066551)
1400 Republic Building
25 West Prospect Avenue
Cleveland, Ohio  44115
Phone: (216) 621-7227
Fax:     (216) 621-3999
Email:  witkowski@nicola.com
            yingling@nicola.com

Attorneys for Defendant
Bankers Insurance, LLC


## CERTIFICATE OF SERVICE

I hereby certify that on November 4, 2022 the foregoing was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.


/s/ R. Christopher Yingling
One of the Attorneys for Defendant
Bankers Insurance, LLC

{01504402v8 }                                                31

## CERTIFICATION AS TO TRACK ASSIGNMENT AND PAGE LIMITATIONS

I hereby certify that this case has been assigned to the complex track and that this filing

adheres with the page limitations set forth in L.R. 7.1(F).

/s/ R. Christopher Yingling
One of the Attorneys for Defendant
Bankers Insurance, LLC