## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**SINMIER LLC,**                                        CASE NO. 3:19 CV 2854

  Plaintiff,

  v.                                                    JUDGE JAMES R. KNEPP II

**EVEREST INDEMNITY INSURANCE
CO., et al.,**
                                                       **MEMORANDUM OPINION AND**
  Defendants.                                          **ORDER**


### INTRODUCTION

Currently pending before the Court are four fully briefed motions for summary judgment brought by Defendants Everest Indemnity Insurance Company and EverSports & Entertainment Insurance[1] against Plaintiff Sinmier LLC.[2] Three of these motions seek partial summary judgment on contractual issues (Docs. 288), the rights of a mortgage holder (Doc. 290), and damages (Doc. 304). The fourth motion seeks summary judgment on all claims brought by Sinmier against Everest and EverSports (Doc. 306). Relatedly pending is Defendant Alternative Risk Company's Motion for Summary Judgment against Sinmier. (Doc. 383).

For the reasons discussed below, the Court GRANTS EverSports and Everest's Motion for Summary Judgment (Doc. 306) and DENIES AS MOOT their Motions for Partial Summary

---

1. EverSports & Entertainment Insurance was previously called Specialty Insurance Group ("SIG"). *See* Doc. 168. For consistency and clarity, the Court will refer to this party as EverSports herein, even when referencing documentation pre-dating the name change.

2. Also pending before the Court are Sinmier's Motion for Summary Judgment against Berkley (Doc. 311); Berkley's Motion for Summary Judgment against Sinmier (Doc. 342); and Bankers' Motion for Summary Judgment against Sinmier (Doc. 372). These motions will be addressed in a subsequent opinion.

Judgment (Docs. 288, 290, 304). The Court further GRANTS Alternative Risk's Motion for Summary Judgment (Doc. 383).

BACKGROUND

This case arises out of wind and water damage to a water park and hotel property. Plaintiff Sinmier was the mortgagee/lender to Vintro Hotels and Resorts Ohio, LLC, on a seven million dollar loan to purchase the Maui Sands Resort and Waterpark in Sandusky, Ohio. A mortgage was filed on September 7, 2018. *See* Doc. 76-2. The facts relevant to the pending motions are as follows.

Events Leading to Policy

In July 2018, Vintro contacted Michael Barnum of Bankers Insurance LLC to inquire about insurance coverage for the property. (Barnum Depo., at 232-35). Bankers is an independent insurance agent with no affiliation to Everest. *See id.* at 230-31.[3]

*First Everest Policy*

On August 1, 2018, Barnum contacted Chad Brown of Alternative Risk – a wholesale insurance broker – to seek insurance quotes for Vintro. *See* Doc. 307-2, at 67. In an email, Barnum told Brown that Vintro was attempting to close on the property on August 3 and was seeking coverage as of that day. *Id.* He attached an executive summary of the property, an unsigned Acord insurance application, and a waterpark/slide supplement. *See id.* at 67-68; 70-105; Allen Depo., at 89-91.

---

3. As an independent insurance agent, Bankers usually provides information regarding its clients' insurance needs to various insurers or brokers in order to obtain quotes or proposals to provide the requested coverage. *See* Barnum Depo., at 243; Allen Depo., at 73-74. If a client accepts a particular quote, Bankers instructs the insurer or broker to bind the coverage, and the insurer issues a binder and then an insurance policy. (Allen Depo., at 75-76).

Linda Allen of Bankers testified the Acord application identified the insurance Vintro sought through Bankers. (Allen Depo., at 96-100). This application included various sections such as "Applicant Information", "Umbrella/Excess", "Commercial General Liability", and "Property". (Allen Depo., at 96-100). On each of these sections, the area identifying an "Additional Interest" was blank. *See* Ex. 53, Doc. 307-2, at 71, 75, 80, 83, 84, 86, 87. In several of the sections, the "Additional Interest" section offered a "mortgagee" as a potential additional interest; the box was not checked. *Id.* at 71, 80, 83, 84, 86, 87.

Brown, on behalf of Alternative Risk, forwarded this information to multiple insurers to solicit quotes for coverage. (Brown Depo., at 114); (Ex. 330, Doc. 307-3, at 98-102). Also on August 1, 2018, Alternative Risk sent the Application and Executive Summary to EverSports. (Ex. 418, Doc. 307-4, at 60-61). EverSports is a managing general agent for Everest and has underwriting authority on Everest's behalf. (Speidel Depo., at 12).

Bankers later told Alternative Risk, which told EverSports, that the closing date had been postponed to August 10. *See* Ex. 419, Doc. 307-4, at 98-104.

On August 20, 2018, Bankers told Alternative Risk that a different insurer, Berkley, was quoting coverage for the property, and that Alternative Risk would be binding the general liability, liquor liability, and lead umbrella. (Doc. 307-3, at 75); (Brown Depo., at 46-47). Alternative Risk also conveyed to EverSports Bankers' request to "add back in" business personal property and business income loss. (Doc. 307-3, at 87). Bankers provided Alternative Risk with a new Accord application dated August 20, 2018. (Doc. 307-3, at 77-86). Like the previous application, the "Additional Interest" areas of the application were left blank. (Doc. 307-3, at 78, 81, 82, 84, 85).

Also on August 20, 2018, Lee Friedman of Vintro emailed Barnum of Bankers to state, "I also need to make sure the lender is an additional insured: Sinmier, llc." (Ex. 366, Doc. 307-5, at 5); (Friedman Depo., at 14-15). Barnum replied to ask "Additional Insured or Loss Payee/Mortgagee? Or both?"; Friedman responded, "Just additional insured". (Ex. 366, Doc. 307-5, at 5).

On August 21, 2018, Alternative Risk forwarded the requested quote from EverSports to Bankers. (Ex. 60, Doc. 307-2, at 178-245).

Also on August 21, 2018, Barnum emailed Allen stating he "spoke to the insured", who wanted to reduce business income coverage and that "He does have 2 additional insureds to add: Sinmier, LLC [and] Sun Development, LLC."[4] (Ex. 8, Doc. 307-1, at 17-18); Allen Depo., at 36. That same day, Friedman emailed Barnum again:

> Mike the lender information.
>
> SINMIER, LLC, its successors and/or assigns
> 30201 Orchard Lake Rd. #120
> West Bloomfield, MI 48334
> \
> They also want the following:
> "additional insured" on liability and "mortgagee" on property is the norm in Ohio
>
> AI
>
> so the sun development use the hotel address for them.

(Doc. 307-5, at 8). Barnum forwarded this email to Allen. *Id.*

On August 23, 2018, Allen of Bankers emailed Brown of Alternative Risk to accept the quote for coverage and request coverage be bound effective that same day, as provided by the quote. (Ex. 60, Doc. 307-2, at 178-79). She further noted:

> 5) Add the following as AI

---

4. Sun Development's interest is not at issue here.

4

     a. Sinmier LLC Its Successors and/or assigns, 30201 Orchard Lake Rd. #120, West Bloomfield MI 48334

     b. Sun Development, LLC 5513 Milan Rd. Sandusky OH 44870

*Id.* She attached to the email the signed August 20, 2018, Acord application; as with the previous applications, the sections to identify an "Additional Interest" were blank. (Doc. 307-2, at 209-45).

     Brown forwarded this email to Daniel Speidel at EverSports. (Ex. 332, Doc. 307-4, at 17). Speidel testified he understood the "add the following as AI" instruction to mean he "was being told to add Sinmier and Sun Development as additional insureds to the general liability" because "[i]t's kind of just industry lingo to use AI as additional insured." (Speidel Depo., at 73-74). Brown testified he did not recall having any discussions with Speidel or anyone else at EverSports about adding a mortgagee to any of the policies. (Brown Depo., at 122-23).

     Everest issued an insurance policy, effective August 23, 2018. (Ex. 62, Doc. 307-2, at 246-390). Sinmier and Sun Development were listed as Additional Insureds under the Commercial General Liability portion of the policy (Doc. 307-2, at 354-55); no mortgage holders or loss payees were listed (Doc. 307-2, at 265).

     On September 14, 2018, Brown of Alternative Risk emailed Speidel of EverSports to note the closing on the property had not yet occurred. (Doc. 307-3, at 89). Speidel responded that EverSports could not change the effective date on a bound policy, and thus it would need to "do a Cancel/Re-Write." *Id.*

     *Second Everest Policy*

     On October 16, 2018, Barnum of Bankers emailed Brown of Alternative Risk requesting a revised quote for an effective date of October 19, 2018, and with several changes in coverage:

     -Property Changes

- o Revise property coverage for building 1 to as follows:
  - Building limit - $6,000,000
  - BPP limit - $1,244,000 (same as before)
  - BI EE limit - $500,000 on ¼ monthly limitation
- o Remove property coverage for building 2 and building 3. They have decided on the design option to demolish and rebuild new versus remodel.
- o Add $1mil coverage for waterpark property/equipment
- o The property coverage of the waterpark equipment was previously insured under our other builders risk policy. However, we are going to hold off on purchasing coverage for that until construction begins.

-General Liability Changes
- o Due to the changed plans of demo buildings instead of remodel, the gross receipts are going to be significantly less over the next 12 months. After construction is complete, the following year should be more in line with prior projections. Please revise the GL to be based on the following exposure basis:
  - Hotel - $1,800,000
  - Restaurant - $200,000

(Doc. 307-1, at 23). Brown did not receive an Acord application with this email, nor did he recall any communication with anyone at Bankers regarding the need to identify Sinmier as a mortgagee or any party as an additional interest. (Brown Depo., at 146).

Barnum, Allen, and Brown testified they understood this email listed the coverage Vintro sought and for which Bankers sought quotes. (Barnum Depo., at 343-44); (Allen Depo., at 141-43); (Brown Depo., at 140-44). Brown forwarded this email to Drew Ott at EverSports to obtain a quote consistent therewith. (Brown Depo., at 144); (Ex. 331, Doc. 307-3, at 103).

EverSports provided Alternative Risk a quote for a policy from Everest the following day, October 17, 2018 (Speidel Depo., at 95-96; Brown Depo., at 145-46; Ex. 425, Doc. 307-4, at 121-32); Alternative Risk sent the quote to Bankers (Brown Depo., at 145-46).

In an October 19, 2018, email, Bankers (Barnum) directed Alternative Risk (Brown) to bind the coverage as quoted. (Ex. 69, Doc. 307-2, at 391). Attached to this email were the quotes – signed by Inderjit Grewal on behalf of Vintro on October 18 – along with terrorism exclusion

forms, signed statement of values, and liquor application. *Id.* at 391-415. Alternative Risk (Brown) passed this request to EverSports (Ott / Speidel). (Ex. 426, Doc. 307-4, at 136). EverSports sent Alternative Risk the policy numbers for the package and the excess policies (Doc. 307-4, at 137); Alternative Risk forwarded these to Bankers at 10:10 a.m. on October 19 (Doc. 307-2, at 66).

On October 22, 2018, EverSports provided the binder to Alternative Risk, which then provided it to Bankers on October 24, 2018. (Brown Depo., at 97-98); (Doc. 307-3, at 66-74); (Doc. 307-3, at 90-95). The email from EverSports to Alternative Risk said "***__*Please*__ *REVIEW* *this binder for accuracy and notify us immediately if there are any discrepancies or errors.*" (Doc. 307-3, at 90) (emphasis in original). The correspondence from Alternative Risk to Bankers contained the following language: "Agent is responsible for reviewing the binder and policy for accuracy". The binder itself stated:

> This binder contains a broad outline[]of coverage and does not include all the term[s], conditions and exclusions of the policy (or policies) that may be issued to you. The policy (or policies) contains the full and complete agreement with regard to coverage. Please review the policy (or policies) thoroughly with your broker upon receipt and notify us promptly in writing if you have any questions.

(Doc. 307-3, at 69, 91). The binder listed endorsement and exclusion policy forms, including additional insured forms under the general liability section; there is no mention of a mortgagee or loss payee interest. *Id.* at 72-73. In a terms and conditions section, the binder stated it was "conditioned upon [EverSports]'s receipt and review of the additional underwriting information identified below", including a "Completed, Signed, and Dated Application." *Id.* at 71-72.

Vanjay Tomic, an Alternative Risk employee who performed "processing tasks", testified that her training regarding policy verification and binders included "that [a] mortgagee can be on

the application and . . . we are supposed to search for it on the application." (Doc. 363-3, at 12-13).

Later on October 22, Allen emailed Brown "the signed apps for the Package and Umbrella for this risk." (Doc. 307-2, at 417). Attached were revised Acord applications, dated October 17, 2018, and signed by Grewal on October 19, 2018, at 15:51. *Id.* at 420-47. In the Application Information Section of the form, under "Premises Information", four buildings were identified and numbered – the Family Suites building, the Maui West Hotel, the Cabana building, and the Waterpark. *Id.* at 421. These applications contained revisions to the "Additional Interest" section of the forms. In the Application Information Section of the form, under "Additional Interest", the box for "mortgagee" was checked and "Sinmier LLC" was identified. *Id.* at 421. The remainder of the Additional Interest sections (including a reference or loan number, lien amount, interest end date, and "interest in item number") were left blank. *Id.*; *see also id.* at 424 (ACORD 45 "Additional Interest Schedule" form listing same information). Under the "Property Section" and "Equipment Floater Section" of the revised forms, the "Additional Interest" section remained blank. *Id.* at 433, 434, 440. In the property section, the box next to the words "Additional Interest" and before "Acord 45 attached for additional names" is not checked. *Id.* at 433, 434. By contract, in the "Equipment Floater Section" (where "loss payee" or "lienholder" are options under "Additional Interest" but "mortgagee" is not) a box is checked next to this text: "ADDITIONAL INTEREST / CERTIFICATE RECIPIENTS [X] ACORD 45 Attached." *Id.* at 430.

Speidel testified specifically regarding these forms:

Q:     Okay.  Would this application have been important to you as the underwriter as respects how the policy ultimately was issued?

A:      The policy - - the application itself, yes. This particular box being checked in the general section of the application, potentially not.

Q:      Why is that?

A:      Well, it's listing a mortgagee on a general section. It's not on a property section. So we wouldn't know what buildings or what types of coverage that mortgagee would even apply to.

* * *

Q:       . . . Is this Additional Interest Schedule of importance to you as an underwriter in writing the policy?

A:      It could be.

Q:      All right. Why is that?

A:      We would want to ensure that what we're being asked to include is included in the policy.

(Speidel Depo., at 90-92). Speidel's testimony continued, responding to questions about an "X"

on the form next to "Acord 45 Attached."

Q:      . . . And there's no particular party listed under any of those three boxes; is that right?

A:      That's correct.

Q:      All right. But there is an X under the box called "Acord 45 Attached." Do you see that?

A:      I do.

Q:      All right. Is that of underwriting importance to you?

A:      If it were something we weren't already instructed on, it could be, but we via email had been instructed to include an additional insured to the GL.

* * *

Q:      Okay. Were you asked to list an additional insured by Mr. Brown?

A:      Yes.

9

Q:      Okay. And can you tell me where that was?

A:      It's in another exhibit, but it's an email from Mr. Brown to myself
        requesting Sinmier and Sun Development be added as additional insureds.

Q:      Okay. Was that the one - - one of the ones that we talked about earlier?

A:      I believe it was for the original policy bind order.

Q:      Okay. The original policy bind order you recall stating that they wanted
        them to be listed as additional insured.

A:      Correct.

(Speidel Depo., at 93-94).

Alternative Risk contacted Bankers on October 30, 2018, to identify certain missing information in the application. (Doc. 307-2, at 457-58). On November 6, 2022, Bankers sent the revised and signed Acord applications to Alternative Risk. (Doc. 307-2, at 457); (Brown Depo., at 152-53); (Allen Depo., at 174).

On November 14, 2018, Alternative Risk received a copy of the Everest Policy; it emailed Bankers a copy the following day. *See* Brown Depo., at 105; Allen Depo., at 174-75; Doc. 307-2, at 574. In the email, Alternative Risk stated: "Please review and check the policy for any errors or discrepancies. If you find any, please notify us immediately so that we can inform the carrier and get the corrective endorsement(s) issued." (Doc. 307-2, at 574). The policy as issued listed Sinmier and Sun Development as additional insureds on the Commercial General Liability Coverage part of the policy. *See id.* at 518, 519. Sinmier was not otherwise listed on the policy.

Barnum did not recall if he reviewed the policy upon receipt (Barnum Depo., at 167), and Allen testified she had never reviewed it (Allen Depo., at 175). Brown testified Alternative Risk does not review the quotes it receives from insurance companies, but "rel[ies] on the retail agent

10

to review and make sure that things are adequate." (Brown Depo., at 44).; *see also* Brown Depo., at 74 ("we totally rely on the retail agent as the insured's representative to look and be sure that things are correct"). Alternative Risk does a "high level overview checking [the policy] against the quote and binder." *Id.* at 76.

<u>Insurance Claim</u>

In January 2019, Vintro submitted a claim to Everest based on wind and water damage. (Doc. 307-1, at 24). Everest advanced remediation funds to Vintro during the claims process. (Barron Depo., at 185-90); *see also* Doc. 307-8, at 11-13 (sworn statements in proof of loss and related emails). Statements Grewal executed in conjunction therewith attested that "no other person had any interest therein or encumbrance thereon." (Doc. 307-8, at 11, 13). In June 2019, Vintro and Everest entered into a settlement agreement to resolve the claim. (Doc. 295). Sinmier was not included in this process.

<u>Mortgage Default / Foreclosure</u>

Vintro defaulted on its loan, and Sinmier instituted a foreclosure action. *Sinmier, LLC v. Vintro Hotels & Resorts, Ohio LLC*, No. 19 CV 705 (N.D. Ohio). That case ultimately settled. By way of the settlement, Sinmier received a deed in lieu of foreclosure to the property, an assignment of interest regarding insurance claims/proceeds, the promise of a monetary payment of $627,375.00, a consent judgment, and the release of escrow funds. *See* Doc. 119-1.

<u>Sinmier's Claims Against Everest, EverSports, and Alternative Risk</u>

Sinmier subsequently brought the instant suit against Bankers, Berkley, Alternative Risk, EverSports, and Everest.

Against Everest, Sinmier brings claims of Breach of Contract – Third-Party Beneficiary (failure to list Sinmier as mortgagee) (Count I); Declaratory Judgment (Count XI); and Agency

Liability (for the acts/omissions of EverSports and Alternative Risk) (Count VIII). (Doc. 76, at 12-13; 22). Against Alternative Risk, Sinmier brings a Breach of Contract – Third-Party Beneficiary claim (Count IV) and a Negligence claim (Count VI). *Id.* at 17, 19-20.

In Count I, Sinmier asserts "Vintro ordered Bankers to list Sinmier as mortgagee on its policies and signed Acord applications", "Everest / [EverSports] accepted the applications which listed Sinmier as a mortgagee[,] and there was a contract between Vintro and Everest / [EverSports] whereby Everest / [EverSports] had agreed to list Sinmier as a mortgagee on the property section of the Everest policy." *Id.* at 12. Sinmier further seeks a declaratory judgment against Everest (Count XI). *Id.* at 25-26.

In Count VIII, Sinmier makes an Agency Liability claim, asserting EverSports and Alternative Risk were agents of Everest who "accepted signed applications for insurance from Vintro on behalf of Everest which stated that Sinmier was to be listed as mortgagee on the property coverage part of the Everest Policy", Alternative Risk or EverSports "bound property insurance coverage for Vintro and Sinmier", and Everest is liable for Alternative Risk and EverSports' acts or omissions, "*to wit*, not procuring coverage as ordered by Bankers and Vintro." *Id.* at 22.

In Count IV, Sinmier asserts it was a Third-Party Beneficiary to a contract between Alternative Risk and Bankers to procure insurance coverage. *Id.* at 17.

In Count VI, Sinmer asserts a negligence claim against Alternative Risk for, in essence, failing to ensure Sinmier was identified as a mortgagee on the insurance policy. *Id.* at 19-20.

## STANDARD OF REVIEW

Summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

When considering a motion for summary judgment, the Court must draw all inferences from the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The moving party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* Further, the nonmoving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *See* Fed. R. Civ. P. 56(c)(3) (noting the court "need consider only the cited materials").

### DISCUSSION

In their motion for summary judgment on all claims, Everest and EverSports argue Sinmier cannot establish there was a contract to add Sinmier as a mortgagee on the Everest Policy, and thus all of its claims based on that purported contract fail as a matter of law. *See* Docs. 306, 307. It further contends Sinmier's agency claim related to Alternative Risk and EverSports's actions is barred by the economic loss doctrine. *See id.*; Doc. 383. Alternative Risk also argues the economic loss doctrine bars Sinmier's claims against it and that Sinmier cannot establish Alternative Risk owed Sinmier any duty upon which to base a negligence claim. *See* Doc. 383. Finally, Alternative Risk argues it is entitled to summary judgment on the third-party beneficiary claim.

For the reasons discussed below, the Court finds Everest and EverSports, as well as Alternative Risk, are entitled to summary judgment.

<u>Contract</u>

Everest/EverSports contend Sinmier's contract-based claims against it must fail because Sinmier cannot prove the existence of a contract between Vintro and Everest/EverSports to include Vintro as a mortgagee on the policy.

"[A]n insurance policy is a contract between an insured and the insurer." *Pilkington N. Am., Inc. v. Travelers Cas. & Sur. Co.*, 112 Ohio St. 3d 482, 487 (2006). The interpretation and construction of a written contract are questions of law. *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St. 2d 241 (1978). "The purpose of contract construction is to discover and effectuate the intent of the parties. The intent of the parties is presumed to reside in the language they chose to use in their agreement." *Graham v. Drydock Coal Co.*, 76 Ohio St. 3d 311, 313 (1996). The Court is to "honor the plain meaning of the policy's language 'unless another meaning is clearly apparent from the contents of the policy.'" *Ohio N. Univ. v. Charles Constr. Servs., Inc.*, 155 Ohio St. 3d 197, 199 (2018) (quoting *Westfield Ins. Co. v. Galatis*, 100 Ohio St. 3d 216, 219 (2003)).

To succeed on a breach of contract claim under Ohio law, a plaintiff must establish the "existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." *Doner v. Snapp*, 98 Ohio App. 3d 597, 600 (1994). "Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration." *Kostelnik v. Helper*, 96 Ohio St. 3d 1, 3 (2002) (internal quotation and citation

14

omitted). "A meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract." *Id.* at 4.

The parties do not dispute that the final issued policy – the second Everest Policy – does not list Sinmier as a mortgagee. And Sinmier does not present evidence or argument in support of its assertion in the Amended Complaint that "[Alternative Risk] and/or [EverSports] had binding authority for Everest *and bound coverage* including Sinmier as mortgagee" (Doc. 76, at ¶ 67) (emphasis added). The binder does not mention Sinmier or any mortgagee. *See* Doc. 307-3, at 66-74. Thus, the dispute at present is whether there is evidence of a separate contract between Vintro and Everest to list Sinmier as a mortgagee on the second Everest policy. *See* Doc. 76, at ¶ 63 (asserting a breach of the contract between Vintro and Everest / [EverSports] to include Sinmier as a mortgagee on the property insurance").

Everest and EverSports contend Sinmier cannot create a genuine issue of material fact regarding the existence of this contract. They argue Sinmier cannot establish there was any mutual assent or meeting of the minds between Vintro and Everest regarding listing it as a mortgagee on the property coverage part of the policy or as a loss payee on the inland marine coverage portion of the policy. In opposition, Sinmier contends evidence of such a contract (to list Sinmier as a mortgagee on the property portion of the policy[5]) exists in the form of (1) the Acord application submitted after the binder and before issuance of the policy, and (2) the fact that Sinmier was listed on the liability portion of the policy. The Court finds neither creates a genuine issue of material fact.

---

5. In opposition, Sinmier does not present an argument regarding the inland marine coverage part of the policy, but only argues it should have been included as a mortgagee on the property part of the policy. *See* Doc. 363.

First, Sinmier contends the final Acord application, submitted after the binder issued, and before the policy, demonstrates an issue of fact regarding mutual assent because that application identifies Sinmier as mortgagee. That is, it contends that because the binder required the completed application as a subjectivity, Sinmier argues, "it shows that the application was what was needed to finalize the issuance of the Policy." (Doc. 363, at 11).[6] But the Acord application to which Sinmier points does not instruct Everest to list Sinmier as a mortgagee or loss payee on the property section of the policy. Although the application does identify Sinmier as a mortgagee in the additional interest section of the "Applicant Information Section" (Doc. 307-2, at 421), it contained no such indication for any mortgagee or loss payee specifically in the Property Section (Doc. 307-2, at 433-44). The boxes for "mortgagee" and "loss payee" are not checked, nor is the box checked referencing the attached Acord 45 form which listed Sinmier as a mortgagee. There can be no meeting of the minds over something that was never requested, and none of the correspondence or dealings between the parties leading up to issuance of the policy instructed Everest to list Sinmier as a mortgagee on the property portion of the policy.

Second, Sinmier asserts there is evidence from which a jury could find Everest accidentally listed Sinmier as an additional insured on the liability portion of the policy, rather than a mortgagee on the property part, because the final signed application only requested mortgagee status, not additional insured status. That is, it contends this is evidence Everest mistakenly listed Sinmier improperly and this inconsistency demonstrates an issue of fact regarding whether there was a meeting of the minds to list Sinmier as a mortgagee. The problem with this argument is that Sinmier points to no evidence supporting it, and Everest/EverSports

---

6. Sinmier emphasizes the temporary nature of the binder. *See* Doc. 363, at 13-15. But Everest and EverSports do not contend otherwise, nor does the fact that a binder is temporary create a genuine issue of material fact regarding a meeting of the minds to list Sinmier as a mortgagee on the property coverage part of the final policy.

16

point to evidence demonstrating this action was intentional and based on the prior correspondence and email instruction to list Sinmier as an additional insured on the general liability part of the policy. *See* Doc. 307-2, at 178-79; Doc. 307-4, at 17 (email from Allen to Brown, which was forwarded to Speidel); (Speidel Depo., at 73-75, 93-94); (Doc. 307-2, at 246-390 (first Everest policy)); (Doc. 307-3, at 66-74 (binder)). The Court finds Sinmier's speculation insufficient to establish an issue of fact.

Even in the light most favorable to Sinmier, this evidence does not demonstrate a question of fact regarding a meeting of the minds between Vintro and Everest to list Sinmier as a mortgagee on the insurance policy. Sinmier has therefore failed to establish an issue of fact regarding the existence of the contract upon which Counts I, VIII, and XI of its Second Amended Complaint against Everest and EverSports are based.[7]

Because the Court finds Everest and EverSports have demonstrated there is no genuine issue of material fact regarding the purported contract upon which Counts I, VIII, and XI of the Amended Complaint is based, their other motions for partial summary judgment relative to that purported contract (Docs. 288, 290, 304) are denied as moot.

---

7. Count VIII is an agency claim. However, it is based upon the same factual allegations that EverSports and Alternative Risk were agents of Everest who "accepted signed applications for insurance from Vintro on behalf of Everest which stated that Sinmier was to be listed as mortgagee on the property coverage part of the Everest Policy", Alternative Risk or EverSports "bound property insurance coverage for Vintro and Sinmier", and Everest is liable for Alternative Risk and EverSports' acts or omissions, "*to wit*, not procuring coverage as ordered by Bankers and Vintro." (Doc. 76, at 22). As set forth above, Sinmier has failed to establish a genuine issue of material fact about the basis for this claim. Moreover, as the Court finds below that Alternative Risk is entitled to summary judgment on the underlying negligence claim upon which the agency claim is based, Everest is entitled to summary judgment on the agency claim on that basis.

Negligence / Agency Liability for Negligence (Counts VI and VIII)

Everest and EverSports also separately move for summary judgment on Count VIII of the Amended Complaint, and Alternative Risk moves for summary judgment on Count VI. Count VI asserts a negligence claim against Alternative Risk. Count VIII asserts an agency liability claim against Everest for the actions of Alternative Risk and EverSports. Everest, EverSports, and Alternative Risk all argue the economic loss doctrine bars the claims asserted; Alternative Risk further argues that  as a wholesale broker,  it owed no duty to Sinmier upon which a negligence claim can be based. The Court finds summary judgment appropriate as to these claims.

Count VI asserts a negligence claim against Alternative Risk on the basis that "Sinmier was known to [Alternative Risk] and was readily identifiable to it as a mortgagee on the Property"; "Sinmier was readily identifiable, direct and intended as a party to be covered for the building"; and "[a]s an insurance broker, [Alternative Risk] had a duty to exercise good faith and reasonable diligence in obtaining insurance for the insured and mortgagee as ordered by Bankers, and to procure coverage as ordered." (Doc. 76, at 19-20). It further asserts Alternative Risk owed Sinmier the following duties:

a)  To procure coverage as ordered.

b)  To properly process Acord applications for insurance to effectual coverages desired and/or promised or agreed to.

c)  To clarify with Bankers any coverage issues so as to notify the insureds of gaps in coverage.

d)  To promptly obtain and review the Everest Policy so as to confirm that coverage was issued as ordered and consistent with the signed applications submitted.

e)  To follow-up with [EverSports]/Everest about the Everest package policy and to send [the] same to Bankers so as to be deliverable to Vintro.

    f)   To review proposals issued by [EverSports]/Everest to confirm that Sinmier was listed as mortgagee as it had requested.

    g)   To act as a reasonably prudent insurance broker.

    h)   To exercise due caution and care so as to avoid losses to Sinmier occasioned by its negligence.

(Doc. 76, at 20).

Relatedly in Count VIII, Sinmier asserts Alternative Risk and/or EverSports "accepted signed applications for insurance from Vintro on behalf of Everest which stated that Sinmier was to be listed as mortgagee on the property coverage part of the Everest Policy" and Alternative Risk and EverSports are agents of Everest and Everest is liable for their acts or omissions in "not procuring coverage as ordered by Bankers and Vintro". (Doc. 76, at 22).

Everest and EverSports, along with Alternative Risk, contend Sinmier's claims in this regard are barred by the economic loss doctrine because they seek economic damages only for claims arising under contract and not from any independent tort duty.[8] Alternative Risk further contends Sinmier cannot establish Alternative Risk – as a wholesale insurance broker – owed any duty to Sinmier at all.

Sinmier does not dispute that it seeks economic losses, but responds that the economic loss doctrine does not bar its claims because an independent duty was breached. It contends Ohio law recognizes a separate tort cause of action for negligent procurement against an insurance agent by a direct, intended, and specifically identifiable third-party beneficiary. It distinguishes the cases cited by Everest / EverSports and Alternative Risk as involving claims by the insured

---

8. Everest disputes that Alternative Risk is an agent of Everest, but asserts "that issue need not be decided here where summary judgment is proper regardless of any alleged agency status". (Doc. 307, at 31 n.14).

itself (and thus a party to contract), rather than a third-party beneficiary thereof. Sinmier further contends Alternative Risk owed it a duty to procure coverage.

"The economic-loss rule generally prevents recovery in tort of damages for purely economic loss." *Corporex Dev. & Constr. Mgmt., Inc. v. Shook, Inc.*, 106 Ohio St. 3d 412, 414 (Ohio 2005) (citing *Chemtrol Adhesives, Inc. v. American Mfrs. Mut. Ins. Co.*, 42 Ohio St. 3d 40, 45 (Ohio 1989)). Specifically, "[t]he well-established general rule is that a plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable." *Chemtrol Adhesives*, 42 Ohio St. 3d at 44. The rule is based on the idea that tort law is "designed to redress losses suffered by breach of a duty imposed by law to protect societal interests", while contract law "holds that 'parties to a commercial transaction should remain free to govern their own affairs.'" *Corporex Dev.*, 106 Ohio St. 3d at 414 (citing in part *Chemtrol Adhesives*, 42 Ohio St. 3d at 44).

The economic loss rule has been specifically applied to bar negligence claims by an insured against an insurance broker for failure to procure coverage. *See All Erection & Crane Rental Corp. v. Acordia Nw., Inc.*, 162 F. App'x 554, 559-60 (6th Cir. 2006) (dismissing negligence claims by insured against both retail broker and wholesale broker); *see also Momentive Specialty Chem., Inc. v. Chartis Specialty Ins. Co.*, 2012 WL 832288, at *4 (S.D. Ohio) ("It has been repeatedly held that regardless of the general duty owed by an insurance broker to an insured to exercise diligence in obtaining insurance, the economic loss doctrine bars pure negligence claims (and professional negligence claims) against insurance companies, agents or brokers.") (footnote omitted); *Mafcote, Inc. v. Genatt Assocs., Inc.*, 2007 WL 527870, at *6 (S.D. Ohio). The "inability to recover under an insurance policy for injury or damage is an economic loss . . . [E]nding up with an insufficient insurance policy cannot be considered

20

personal injury or property damage and must, therefore, be characterized as an economic loss." *Potts v. Safeco Ins. Co.*, 2010 WL 1839738, at *3 (Ohio Ct. App.).

There is an exception to the economic loss rule for claims "based upon a tort duty independent of contractually created duties." *Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 569 (6th Cir. 2006) (citing *Corporex Dev.*, 835 N.E.2d at 705); *see also Burke v. Time Ins. Co.*, 2011 WL 2600673, at *2 (S.D. Ohio) ("An exception to the economic loss doctrine exists when there is a preexisting duty in tort.") (citing *Haddon View Inv. Co. v. Coopers & Lybrand*, 70 Ohio St. 2d 154, (Ohio 1982)). "[A] tort claim based upon the same actions as those upon which a breach-of-contract claim is based will exist independently of the contract action 'only if the breaching party also breaches a duty owed separately from that created by the contract, that is, a duty owed even if no contract existed.'" *425 Beecher, L.L.C. v. Unizan Bank, Nat'l Ass'n*, 186 Ohio App. 3d 214, 230 (Ohio Ct. App. 2010) (internal quotation omitted. This exception has been applied in the context of intentional torts, fraud, and negligent misrepresentation. *See, e.g.*, *Mulch Mfg., Inc. v. Advanced Polymer Sol., LLC*, 947 F. Supp. 2d 841, 856-57 (S.D. Ohio 2013) (collecting cases).

Sinmier argues it falls within the independent duty tort exception based on a claim for negligent procurement against an insurance agent by a direct, intended, and specifically identifiable third-party beneficiary to a policy. For this proposition, it cites *Minor v. Allstate*, 111 Ohio App. 3d 16 (1996) and *Emahiser v. Complete Coverage Insurance, LLP*, 53 F. Supp. 3d 1025 (N.D. Ohio). In *Minor*, a mother obtained homeowner's insurance for a home that she owned, but was occupied only by her daughter, who was not named on the policy. 111 Ohio App. 3d at 18-19. Following a burglary, the daughter filed a claim, which the insurance company denied because she was not a listed insured. The daughter sued the insurance agent for negligent

procurement. The evidence revealed the agent understood, or should have understood, the mother wished for the policy to include or benefit her daughter. The mother testified she was "sure" she told the agent that her daughter was residing in the home; the daughter testified she was physically present with her mother and the agent when the three specifically discussed how much coverage to obtain, and the contents of the home primarily belonged to the daughter. *Id.* at 21. The court concluded that under these facts "[t]he evidence reasonably supports an inference that [the agent] knew that [the mother] wished to benefit [the daughter] with insurance coverage for her personal property when she asked [the agent] to procure insurance to protect the residence premises. [The agent's] undertaking to procure insurance implies a promise that the coverage he obtained would provide that benefit." *Id.* at 22.

In *Emahiser*, another Judge of this court found that "[t]he implication of *Minor* is that a third party may maintain a negligent procurement claim where the third party is a readily identifiable and known beneficiary at the time the agent procured insurance." 53 F. Supp. 3d at 1029-30.[9] The court found, however, in the context of a suit against a tortfeasor's insurance agent regarding an automobile accident, that "the driving public at large" was not a sufficiently specific intended beneficiary. *Id.* at 1031. It ultimately held that a negligence claim by an injured driver against the tortfeasor's insurance agent "is too far attenuated under the facts . . . because Plaintiff does not have standing to pursue a negligent procurement claim against Defendant" and noted "Defendant's alleged negligence created for Plaintiff a risk of economic loss only—i.e., a

---

9. Other courts have distinguished *Minor* in the context of the economic loss doctrine, explaining that the defense was not raised in that case. *See Mafcote, Inc. v. Genatt Assocs., Inc.,* 2007 WL 527870, at *6 (S.D. Ohio) ("Mafcote, for its part, relies on cases which have recognized a negligence cause of action against an insurance broker or agent for failure to procure insurance. . . . [citing, *inter alia*, *Minor*], however, it does not appear from the analysis and discussion in any of these cases that the defendant agents and brokers therein raised the economic loss doctrine as a defense to liability against the negligence claims.").

risk that Plaintiff would be unable to collect on a judgment entered against [the tortfeasor]." *Id.* (citing *Corporex Dev..,* 835 N.E.2d 701).

The Court finds – consistent with the above analysis – that Sinmier has not established a genuine issue of material fact regarding whether it was a direct, intended, and specifically identifiable third-party beneficiary to the Policy, because it has not established there was a contract between Vintro and Everest to list Sinmier as a mortgagee or that Alternative Risk was specifically instructed that Sinmier was to be so identified. As such, even assuming *arguendo* the inapplicability of the economic loss doctrine to this particular situation, Sinmier has not established a genuine issue of material fact that it falls within the exception it identifies thereto – a third-party beneficiary negligent procurement claim against Alternative Risk.

This is consistent with *Daniel James*, in which the Sixth Circuit held a wholesale broker cannot be held liable to an insured for a gap in coverage if the plaintiff could demonstrate neither "a special relationship between [the wholesale insurance broker and the agent] nor the foreseeability of [the plaintiff's] injury." *Daniel James Ins. Agency, Inc. v. Floyd W. of Louisiana, Inc.,* 145 F.3d 1330 (6th Cir. 1998) (unpublished). Its rationale applies equally here:

> There is no evidence that [the retail broker] was required to use [the wholesale broker] to place its business or contracted with or relied on [the wholesale broker] to advise it on placing its business. Further, [the wholesale broker] had no direct contact with [the insured]. . . . [The insured] did not rely on [the wholesale broker] to provide its expertise or knowledge in obtaining extra expense insurance. No special relationship [existed] between [the wholesale broker] and [the retail broker].

> * * *

> Here, it was not reasonably foreseeable that the client of an experienced, sophisticated, and professional retail insurance agent, such as [the retail broker], would be under insured if a wholesale insurance broker, such as [the wholesale broker], did not review and compare the client's other policies with the retail agent's proposed change request for a gap in coverage. This situation simply does

not present an unreasonable risk of harm to either the client or the retail insurance agent.

*Id.* Although *Daniel James* involved the failure to identify a gap in coverage as opposed to a failure-to-procure coverage claim, the chain of communication and parties' roles supports the same result. Here, Alternative Risk had no contact with Vintro; it only communicated through Bankers. There  was no duty extending from Alternative Risk to Sinmier, Vintro's lender, where there was no special relationship or foreseeability of injury.

Sinmier has failed to identify any other independent duty Alternative Risk owed to Sinmier on which to base a negligence claim. As such, the economic loss doctrine applies and Alternative Risk is entitled to summary judgment on Count VI. So too is Everest entitled to summary judgment on Count VIII.[10]

Breach of Contract – Third-Party Beneficiary (Count IV)

In Count IV, Sinmier brings a claim against Alternative Risk contending "Bankers and [Alternative Risk] contracted for the placing of commercial property insurance for Vintro whereby Sinmier was to be listed as a mortgagee on the Everest Policy"; "Sinmier was a direct and intended beneficiary to the contract between [Alternative Risk] and Bankers to include Sinmier as a mortgagee on the Everest Policy"; and that "[i]n failing to procure property coverage mortgagee status for Sinmier, [Alternative Risk] breached its contractual obligations to Bankers, resulting in damage to Sinmier." (Doc. 76, at 17).

---

10. In Count VIII, Sinmier asserts Alternative Risk and/or EverSports "accepted signed applications for insurance from Vintro on behalf of Everest which stated that Sinmier was to be listed as mortgagee on the property coverage part of the Everest Policy", Alternative Risk and EverSports are agents of Everest, and Everest is liable for their acts or omissions in "not procuring coverage as ordered by Bankers and Vintro". (Doc. 76, at 22). Because the economic loss doctrine precludes liability on the part of Alternative Risk, Everest cannot be held liable on agency principles. *See, e.g., Faieta v. World Harvest Church*, 891 N.E.2d 370, 400 ("where an agent is not liable, the principal is also not liable").

In moving for summary judgment, Alternative Risk argues the third-party beneficiary contract claim fails as a matter of law because (1) "there is no evidence of a contract between [Alternative Risk] and Bankers . . . [Sinmier] cannot be an intended third-party beneficiary of a non-existent contract."; and (2) even if there is a contract, Sinmier cannot establish that contract was primarily entered to benefit Sinmier. (Doc. 383). In conjunction with its first argument, Alternative Risk notes that Sinmier attached no such contract (between Alternative Risk and Bankers) to its Second Amended Complaint. *Id.* at 15 n.7. Sinmier responds to the second argument, contending it is not required, under Ohio law, to prove the contract was primarily entered to benefit it, but "[r]ather, the law is that the third-party must directly benefit rather than incidentally." (Doc. 390). It does not address Alternative Risk's argument regarding failure to identify the contract. In Reply, Alternative Risk repeats its first argument and notes that Sinmier did not respond thereto: "Plaintiff's Opposition fails to address a fundamental requirement of its third-party beneficiary claim – the existence of a contract involving [Alternative Risk]". (Doc. 398).

The Court agrees with Alternative Risk – Sinmier has failed to identify evidence to establish a genuine issue of material fact regarding whether there was a contract between Alternative Risk and Bankers upon which Sinmier could base a third-party beneficiary claim. *See United Tel. Co. of Ohio v. C.J. Mahan Constr. Co.*, 63 Ohio App. 3d 437, 443 (1989) ("There was no contract between plaintiff and ODOT upon which defendant could claim to be a third-party beneficiary."). As such, summary judgment is granted to Alternative Risk on Count IV.

CONCLUSION

For the foregoing reasons, good cause appearing, it is

25

ORDERED that Everest and EverSports Motion for Summary Judgment on All Plaintiff's Claims (Doc. 306) be, and the same hereby is, GRANTED; and it is

FURTHER ORDERED that Everest and EverSports' Motions for Partial Summary Judgment (Docs. 288, 290, and 304), be and the same hereby are, DENIED AS MOOT; and it is

FURTHER ORDERED that Alternative Risk's Motion for Summary Judgment (Doc. 383), be and the same hereby is, GRANTED.

 s/ *James R. Knepp II*                        
UNITED STATES DISTRICT JUDGE