IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**SINMIER, LLC,**　　　　　　　　　　　　　CASE NO. 3:19 CV 2854

　　　　Plaintiff,

　　v.　　　　　　　　　　　　　　　　　　JUDGE JAMES R. KNEPP II

**EVEREST INDEMNITY INSURANCE CO., et al.,**

　　　　　　　　　　　　　　　　　　　　　**MEMORANDUM OPINION AND**
　　　　Defendants.　　　　　　　　　　　　**ORDER**

### INTRODUCTION

Currently pending before the Court are Plaintiff Sinmier LLC and Defendant Berkley National Insurance Company's cross motions for summary judgment (Docs. 311, 342). Sinmier seeks summary judgment in its favor on Count XI of its Amended Complaint; Berkley seeks summary judgment in its favor on Counts II, V, and XI.

For the reasons discussed below, the Court grants Berkley's motion and denies Sinmier's motion.

### BACKGROUND

As the parties and the Court are now well-familiar, this case arises out of wind and water damage to a water park and hotel property. Plaintiff Sinmier was the mortgagee/lender to Vintro Hotels and Resorts Ohio, LLC, on a seven million dollar loan to purchase the Maui Sands Resort and Waterpark in Sandusky, Ohio. Vintro sought insurance from various insurance companies, including a builder's risk policy from Defendant Berkley.

The facts relevant to the current motions are as follows.

<u>Early Communications</u>

On August 6, 2018, Annette Allen of Bankers Insurance (an independent insurance agency) emailed James Hennig of Berkley requesting a quote for a "builders risk/renovation" policy for Vintro. (Doc. 346-1). The reason for requesting such a policy was that Vintro was "purchasing the property" planning "a renovation of 2 of the hotel buildings." *Id.* Two days later, Allen provided additional information to Berkley regarding the existing structures and renovation plans/costs. (Doc. 346-2, at 2-3). After some back-and-forth emails[1] regarding the request, Hennig provided a "Proposal for Insurance". *See* Doc. 346-3. The Proposal included a summary of proposed coverage ("builder's risk renovation/addition coverage")[2], property values, and coverage limits, as well as a quoted annual premium of $54,991. *Id.* at 11-15. It stated the proposal was valid until October 15, 2018. *Id.* at 11. The Proposal further stated:

> This proposal is a conditional quote for coverage requested and does not constitute a binder of insurance or price guarantee. It may be revised to reflect further or additional information provided to us. Premiums are subject to adjustment after underwriting review and [m]ay be revised at the expiration per premium audit. The proposal must be accepted or rejected in its entirety, unless otherwise noticed in this proposal. We will consider all counteroffers, but will not always accept such counteroffers. Certain coverages, terms, conditions, perils or limits requested may not be included in this proposal. Conditional quotes are valid for thirty (30) days from the date of this proposal (unless otherwise indicated) or up to the proposal effective date, whichever is sooner.

*Id.* at 11. In an August 21, 2018, email, Hennig told Allen that the premium could be "[f]ull pay or 50% down and 50% due in 6 months." (Doc. 346-4, at 4). Allen requested a quarterly payment plan instead. *Id.* Hennig agreed, stating, he would "be okay with 4-pay. 25% down, and 25% due on 4th, 7th, and 10th Months." *Id.* at 3. On August 23, 2018, Allen emailed Hennig: "Please bind

---

1. In these emails, Hennig noted "If written, the policy number will be: MIM-1022859-50 / Berkley National Insurance Company." (Doc. 346-3, at 6).
2. "A builder's risk policy is a species of property loss insurance by which the builder seeks to insulate itself from liability occasioned by damage to or loss of the structure which the builder has contracted to produce." 9A Couch on Ins. § 132:20.

coverage per the attached quote effective 8/23/18. The risk would like the 4 pay plan. 25% down. Direct Bill. Let me know if additional information is needed to issue the policy." *Id.* at 2. Hennig responded: "This is bound. Thanks for the business!" *Id.* Hennig testified this meant Berkley "bound the limits and premises on the proposal at the agreed-upon premium." (Hennig Depo., Doc. 346-5, at 65). Hennig further testified he then sent Allen the policy number; he understood "that [it's] possible it could end up on the certificate of insurance, whatever the certificate is intended based on the terms . . . more as a reference number than anything else." (Hennig Depo., Doc. 355, at 70).

Evidence of Property Insurance Forms

That same date, on August 23, 2018, Bankers issued an "Evidence of Property Insurance" form. (Doc. 343-16). The form identifies the insured as "Doubletree Sandusky Ohio", Plaintiff as a mortgagee, provides a policy number (MIM-1022859-50), and an effective date (August 23, 2018) and expiration date (August 23, 2019). *Id.* The top of that form states:

> **THIS EVIDENCE OF PROPERTY INSURANCE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE ADDITIONAL INTEREST NAMED BELOW. THIS EVIDENCE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS EVIDENCE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE ADDITIONAL INTEREST.**

*Id.* It lists various coverage, and further states "NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS EVIDENCE OF PROPERTY INSURANCE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES"

and: "**SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH POLICY PROVISIONS.**" *Id.*

Following some emails to correct information – including that the insured should be Vintro rather than Doubletree – Bankers provided an updated Evidence of Property Insurance form on August 27, 2018. (Doc. 343-18). It otherwise contained the same information including the disclaimer language. *See id.* at 4. Sinmier's corporate representative, Pargat Grewal testified he did not review the disclaimer language, but that his attorneys "probably did". (Doc. 343-12, P. Grewal Depo., at 569-70).

On the same date as the initial Evidence of Property Insurance form issued, someone acting on Sinmier's behalf emailed Vintro stating "please have your camp get me the insurance dec page showing all insureds . . . as soon as possible this morning." (Doc. 343-12). Berkley asserts there was no response to this email and Pargat Grewal testified Sinmier never received a copy of a policy or a declarations page. (Doc. 343-12, P. Grewal Depo., at 568-69).

Binder

Hennig of Berkley, Allen of Bankers, and Michael Barnum of Bankers all testified that a "binder" is not the same as an insurance policy. (Barnum Depo., Doc. 343-7, at 412); (Allen Depo., Doc. 343-6, at 177); (Hennig Depo., Doc. 346-5, at 65). Berkley's 30(b)(6) deponent testified that when coverage is bound, it is effective "[t]emporarily." (Beasley Depo., Doc. 658, at 33); *see also id.* ("That is a temporary agreement of insurance that is negotiated. There's still time to negotiate the terms and the forms. And it just gives them the opportunity to bind what has been quoted to them, and we then can charge the premium for that."). Beasley also testified that Berkley can bind coverage without receiving the premium, but "[i]f we do not receive premium

4

within the . . . expiration date of the proposal or the billing time frame, then there's no contract and no policy in force and the policy is null and void." *Id.* at 33-34. He further testified that the premium payment was billed to Vintro. (Beasley Depo., Doc. 378-1, at 27-28).

On August 28, 2018, Hennig emailed an underwriting assistant at Berkley referencing the account as a "Sold Deal". (Doc. 356). Hennig testified this term did not have any specific meaning, but he "use[s] that internally within our platform underwriting files, so to speak, to let the underwriting assistant know the last iteration of the proposal that we agreed upon because there might be multiple proposals in there." (Hennig Depo., Doc. 355, at 73).

Policy

Berkley created a policy for the period of August 23, 2018 to August 23, 2019. (Doc. 352). Internal emails between Hennig and an assistant show discussions about the draft policy between August 28 and August 31, 2018. (Doc. 346-9). Berkley asserts this policy was simply a draft and was never "issued". Sinmier asserts the policy was "issued". It appears undisputed that the policy document was never sent to anyone external to Berkley. *See, e.g.,* P. Grewal Depo., Doc. 343-12, at 573 ("We received a copy of the policy during this litigation. That's the first time we received the policy."); (Doc. 368, at 29) ("[T]he Policy was never sent by Bankers to Vintro or Sinmier."); (Doc. 362, at 9) ("[Berkley] did not finalize a policy for Vintro and did not send a final policy to anyone—not Bankers, Sinmier, or Vintro.").

The policy provided:

"We" may cancel this policy, or one or more of its parts, by written notice sent to "you" at "your" last mailing address known to "us". If notice of cancellation is mailed, proof of mailing will be sufficient proof of notice.

"We" may cancel this policy, or one or more of its parts, by written notice sent to "you" and "your" agent at the last mailing addresses known to "us". If notice of cancellation is mailed, proof of mailing will be sufficient proof of notice. The

5

> notice of cancellation will include the policy number, the date of the notice, the effective date and time of cancellation, and the reason for cancellation.
>
> * * *
>
> If "we" cancel this policy for nonpayment of premium, "we" will give notice at least ten days before cancellation is effective. If "we" cancel this policy for any other reasons, "we" will give notice at least 30 days before cancellation is effective.

(Doc. 352, at 12). Elsewhere, the policy listed Sinmier on a named insured extension (*id.* at 9) and defined "you" as "the persons or organizations named as the insured on the declarations" (*Id.* at 23). When asked whether he agreed that Sinmier "was included as a named insured on this policy", Hennig responded:

> I mean, my recollection is that they were requested to be added as additional insured, so that kind of goes back to when we're finalizing the terms and conditions of the policy is trying to figure out what forms need to be corrected, what needs to be changed or modified to meet the agreed-upon proposal terms.

(Hennig Depo., Doc. 346-5, at 104-05); *see also* Doc. 378-2 (email from Allen to Hennig stating "we need the following as AIs [additional insureds] to the policy when issued").

Subsequent Communications

On September 17, 2018, Allen forwarded Hennig an email indicating Vintro's closing on the property was delayed. (Doc. 343-8, at 3). Specifically, in the email, Barnum of Bankers stated:

> I spoke to the insured this week. They advised that they actually still not have closed on the purchase of the property. In addition to the title issue, they learned that the health department has certain outstanding requirements that the prior owner had to complete. . . . Both parties agreed on the closing awaiting this, expectant to come sometime next week.

*Id.* at 3-4.[3] Hennig responded:

> I'm okay with a cancel and rewrite. However, please note that my original proposal advised that my quote was valid until 10/15/2018. If the binding date

---

3. Through litigation, this has been revealed to be untrue. Vintro actually closed on the property on September 7. *See* I. Grewal Depo., Doc. 343-13, at 29-30.

> looks like it might go past this date, then I will need to send an updated proposal. Most likely the terms will remain the same, unless there are any other extenuating circumstances, such as a change in terms, exposures or reinsurance pricing.

*Id.* at 2. Hennig testified that at this time:

> in my mind, there was not binding at that point when they had informed me they had not closed. They had the option to bind again until 10/15. You couldn't be bound on something where there was no financial interest, so to me the whole deal had to be stopped and it was like no binding had ever occurred at this point. . . . We could only bind what we were advised that there was an insurable interest. At this point then there was no insurable interest.
> * * *
> In my mind there couldn't be a bound coverage [as of the time of this September 17, 2018] email because there was no insurable interest, there was no closing.

(Hennig Depo., Doc. 346-5, at 83, 84).

It is undisputed that Vintro did not pay the 25% premium down payment agreed to and required by the Proposal (and later emails) at any point in time.

On October 3, 2018, Hennig emailed Allen at Bankers, asking, "Can you advise what is going on with this one? Are we bound? If not, I am going to cancel the policy." (Doc. 346-6). Barnum responded: "Sorry for the delay. I spoke to the owner and he is hoping to finalize this deal shortly. However, this has gone on long enough so if you want to just cancel and then we can restart once they officially close on the property, that is up to you." *Id.* Hennig says he took Barnum up on the offer to cancel. (Hennig Depo., Doc. 355, at 89-90); Doc. 346-7 ("I am going to have this cancelled flat. We can revisit once they have settled upon the date.").

Separately, and on the same day, Berkley issued a "Direct Notice of Cancellation for Nonpayment of Premium" to Vintro. (Doc. 320). It listed policy number MIM 1022859-50, with effective date of August 23, 2018, and expiration date of August 23, 2019. *Id.* It further stated:

> You are hereby notified in accordance with the terms and conditions of the policy and in accordance with either state or federal law, that this policy will cancel on **10/13/2018, at 12:01 A.M. CST**. However, if no amount of premium is ever paid

> on this policy prior to 10/13/2018, then this policy will be null and void back to the Effective Date indicated above.
>
> A minimum payment of $13,748.00 must be received prior to **10/13/2018, at 12:01 A.M. CST** in order to prevent the cancellation of this policy.

*Id.* Hennig testified he would not necessarily be informed if an account was cancelled for nonpayment. (Hennig Depo., Doc. 355, at 64). This notice was mailed to Vintro. *See* Doc. 320. It was not provided to Sinmier. Berkely also created a form "Cancellation Memorandum" that referenced the policy number, and noted that the cancellation, "effective 08/23/2018 forms part of policy MIM 102289 50". (Doc. 369).

It is undisputed Vintro did not submit any payment prior to the deadline (or at any point).

Sinmier's Claims Against Berkley

Sinmier brings the instant suit against Berkley and other Defendants related to losses incurred based on wind and water damage at the property in January 2019.

Against Berkley, Sinmier assert claims of Breach of Contract (Count II); Agency Liability (Count IX); and Declaratory Judgment (Count XI). (Doc. 76). Count II asserts breach of contract under a builder's risk policy (policy number MIM 1022859-50) based on Berkley's alleged failure to provide notice to Sinmier of cancellation of said policy. *Id.* at 14-15. It contends Berkley did not comply with the notice requirements of Ohio Revised Code § 3937.25(C) and (D) or the notice requirements of the Evidence of Property Insurance or the policy. *Id.* Count IX asserts Bankers acted as Berkley's agent in issuing the Evidence of Property Insurance. *Id.* at 23. Finally, Count XI seeks a declaratory judgment regarding Sinmier's rights relative to the insurance policies at issue. *Id.* at 25-26.

### STANDARD OF REVIEW

Summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When considering a motion for summary judgment, the Court must draw all inferences from the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The moving party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* Further, the nonmoving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *See* Fed R. Civ. P. 56(c)(3) (noting the court "need consider only the cited materials").

### DISCUSSION

The core dispute in the cross-motions between Berkely and Sinmier is primarily a narrow one: whether there was a Berkley insurance policy in place. Sinmier's breach of contract claim against Berkley is based on Berkley's purported failure to inform Sinmier it was cancelling the insurance policy it issued to Vintro. Its agency claim is based on Bankers' issuance of the Evidence of Insurance document. And the declaratory judgment claim seeks to establish Sinmier's rights vis-à-vis the insurance policy. For the reasons set forth below, the Court finds Berkley is entitled to summary judgment on each of Sinmier's claims.

"[I]nsurance policies are contracts." *Mortg. Network, Inc. v. Ameribanc Mortg. Lending, LLC*, 177 Ohio App. 3d 733, 739 (Ohio Ct. App. 2008). "Generally speaking, the party seeking to enforce a contract must prove that a valid contract exists, which means that the party must demonstrate that there was an offer and an acceptance ('meeting of the minds') and that the parties' agreement was supported by consideration." *Id.* at 740. As to insurance contracts specifically, an Ohio appellate court explained:

> "Broadly defined, insurance is a contract by which one party, for a compensation called the premium, assumes particular risks of the other party and promises to pay to him or his nominee a certain or ascertainable sum of money on a specified contingency." *State, ex rel. Duffy, v. Western Auto Supply Co.* (1938), 134 Ohio St. 163, 168. In a general sense, a premium is whatever sum of money is paid by the insured as consideration for the issuance of a policy, together with whatever liabilities, if any, attach or may attach in consideration of the receipt and benefit of such policy. *Barrick v. Ohio St. Grange Mut. Ins. Assn.* (C.P.1959), 83 Ohio Law Abs. 545, 547. The premium is the agreed price or consideration paid to the insurance company for undertaking to indemnify the insured against a specific peril. In consideration for the premium, the insurer agrees to indemnify the insured against the risk upon the terms and conditions specified in the insurance contract. Thus, the premium paid and the risk assumed comprise the consideration which constitutes the essence of the insurance contract. *See* 5 Couch, Cyclopedia of Insurance Law 2d (1984) 530, Section 30:1, *et seq.*

*Pitman v. Allstate Ins. Co.,* 1991 WL 247528, at *3 (Ohio Ct. App.).

The dispute here centers around whether the insurance policy negotiated between Vintro and Berkley ever went into effect – specifically, whether there was acceptance or consideration to support such a contract.

Binder

Both parties agree that a binder is a temporary policy of insurance that is effective until the issuance of a formal policy. *See Clements v. Ohio State Life Ins. Co.*, 33 Ohio App.3d 80, 85 (1989); 1A Couch on Insurance 3d ed. § 13:1; *see also Blazavich v. CNA Ins. Cos.*, 1998 WL 353870, at *4 (Ohio Ct. App.) ("A binder is an insurance contract which provides present

10

temporary protection to an applicant until the insurer processes his or her application and issues a policy."). A binder can be "conditioned upon the fulfillment of certain requirements" and "the duration of the temporary coverage may also be specified." *Clements v. Ohio State Life Ins. Co.*, 33 Ohio App. 3d 80, 85 (Ohio Ct. App. 1986).

Berkley provided an insurance proposal on August 21, 2018, which included a quoted annual premium of $54,991. (Doc. 346-3, at 11-15). That proposal stated it was valid until October 15, 2018. *Id.* at 11. Subsequent communication between the parties included an agreement to the terms of the proposal, and for the premium to be paid in four installments. *See* Doc. 346-4, at 3 (Hennig email: "25% down, and 25% due on 4th, 7th, and 10th Months."); Doc. 346-4, at 2 ("Please bind coverage per the attached quote effective 8/23/18. The risk would like the 4 pay plan. 25% down. Direct Bill.").

Sinmier argues "the proposal was accepted and the fact that no premium was paid is not legally dispositive." *See* Doc. 370, at 9. But it does not identify what consideration was provided for any purported contract. Sinmier further argues, "Berkley's underwriter never said, 'this is bound once the payment is made for the down payment.' Instead . . . he told the agent, 'This is bound.'" (Doc. 370, at 8). In arguing insurance coverage took effect, Sinmier further cites Beasley's deposition testimony that when coverage is bound it is effective "temporarily" and that coverage can be bound without receipt of payment. (Beasley Depo., Doc. 658, at 33). Beasley also testified Berkley can bind coverage without receiving the premium, but "[i]f we do not receive premium within the . . . expiration date of the proposal or the billing time frame, then there's no contract and no policy in force and the policy is null and void." *Id.* at 33-34.

The original proposal offered insurance coverage in exchange for payment of $54,991; this was later modified to insurance coverage in exchange for a "down" payment of one quarter

11

of the amount, and quarterly payments thereafter. "[T]he premium paid and the risk assumed comprise the consideration which constitutes the essence of the insurance contract." *Pitman*, 1991 WL 247528, at *3. Because Vintro never paid the "down" payment of the premium required by the proposal, it did not accept the proposal for a final insurance policy on its terms, there was no consideration, and thus no contract and no coverage.

Ohio courts have held that where a premium payment is a condition precedent to coverage, and that payment is not made, an insurance contract is not formed. In *White v. Lawler*, an Ohio appellate court explained that "lapse of an insurance policy is different than the cancellation of an insurance policy." 2005-Ohio-3835, at ¶ 11 (internal citation and quotation omitted). There, where the plaintiff's check for his automobile insurance policy had been dishonored, "[b]ecause plaintiff never tendered payment he never provided any consideration for insurance coverage from defendant. Accordingly, the policy was never activated . . . ." *Id.* at ¶ 112. Second, in *Caccavale v. W. & S. Life Assur. Co.*, where an application had a provision requiring a premium payment for coverage to be effective, "[the plaintiff's] failure to provide consideration—in the form of the first month's premium . . . is dispositive of her breach of contract action with regard to the 2000 policy and Binder. [The plaintiff's] 2000 policy and Binder failed for lack of consideration." 2008-Ohio-825, ¶ 34 (Ohio Ct. App.); *see also Schulman v. New York Life Ins. Co.*, 1979 WL 210324, at *3 (Ohio Ct. App.) ("Reasonable minds could only conclude that there existed at least two valid conditions to the policy of insurance becoming effective, namely delivery of the policy to the applicant and payment of the first premium during his lifetime, and further we find that reasonable minds could only conclude that those conditions were not fulfilled. Therefore, the policy of insurance never went into effect, and the appellee was entitled to summary judgment as a matter of law."); *Cf. Myers v. Baker*,

12

1980 WL 352158, at *2 (Ohio Ct. App.) ("Said letter clearly set forth two conditions precedent which had to be fulfilled before the waiver became effective. Since appellant at no time complied with the requirement, no waiver came into existence.").

In support of consideration, Sinmier relies upon *Mortgage Network, Inc. v. Ameribanc Mortgage Lending, LLC*, 177 Ohio App. 3d 733 (Ohio Ct. App. 2018). In that case, the insured paid the premium to the insurer's agent, who kept the money and did not provide it to the insurer. *Id.* at 737. The trial court held that the contracts failed for lack of consideration. *Id.* The appellate court reversed, holding that the trial court "confused payment of consideration and receipt of that payment." *Id.* at 740. "The fact that [the insurer] did not actually receive the money [the insured] paid is irrelevant, because [the insured] believed it was paying the premiums to a duly authorized agent of [the insurer]." *Id.* No such payments occurred here.

Moreover, even assuming the binding of the policy had temporary independent effect absent payment, the terms of that binder were those included in the Proposal (and subsequent emails regarding quarterly premium payments including a down payment), and the Proposal by its terms expired on October 15, 2018. (Doc. 346-3, at 11). The Court finds the reasonable minds could only conclude that a "down" payment by October 15, 2018 was a condition precedent to the final insurance policy becoming effective. It is undisputed that no payment was made prior to this date, and the losses at issue here did not occur until January 2019 (that is, not within the period in which the binder could arguably have been in effect).

Sinmier's argument is built upon the unstable foundation that a final insurance policy was created and thus certain requirements were necessary to cancel that policy. Because it – as an additional insured under the policy – was not notified of "cancellation", it contends that cancellation was ineffective. In support of this argument, it relies upon the language of the

13

policy, the Evidence of Property Insurance, and Berkley's Notice of Cancellation.[4] The Court finds none of these arguments change the result above.

Policy Language

Sinmier contends that any cancellation of the policy was ineffective because it did not comply with the policy's terms. That is, that it, as a named insured, be notified in writing of cancellation for non-payment. (Doc. 312, at 14-18). But the terms of the policy are only relevant and applicable if a contract was formed. Because no consideration was ever paid for the policy, the Court finds its terms are irrelevant.[5]

Evidence of Property Insurance

Sinmier next relies on the Evidence of Property Insurance form Bankers provided to it on August 27 to establish the insurance policy went into effect. In essence, although not so worded, Sinmier is asking the Court estop Berkley from denying the existence of the policy based on this representation or, in other words, hold Berkley liable for such a misrepresentation.

Even assuming *arguendo* Sinmier is correct that Bankers was Berkley's agent for purposes of issuing the Evidence of Insurance, the Court agrees with Berkley that said document provides Sinmier no enforceable rights. Again, the document states, in bold capitalized letters:

> **THIS EVIDENCE OF PROPERTY INSURANCE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE ADDITIONAL INTEREST NAMED BELOW. THIS EVIDENCE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES**

---

4. In its Amended Complaint, Sinmier also relies upon statutory requirements for notices of cancellation in Ohio Revised Code § 3937.25. (Doc. 76, at 14). However, in its briefing on the pending motions, Sinmier now acknowledges that the statute is not applicable to the facts of this case. (Doc. 312, at 14)

5. Moreover, the Court notes that the policy itself acknowledges this: "*IN RETURN FOR YOUR PAYMENT OF THE PREMIUM* AND SUBJECT TO ALL TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY." (Doc. 352, at 7) (emphasis added).

14

**BELOW. THIS EVIDENCE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE ADDITIONAL INTEREST.**

(Doc. 343-18, at 4).

Ohio courts have found such disclaimers to preclude reasonable reliance. In *Lu-An-Do, Inc. v. Kloots*, where a Certificate of Insurance contained similar disclaimer language, the Ohio appellate court explained that "[t]his language should have warned the appellant that (1) he had no rights just because he had the Certificate of Insurance, and (2) the actual insurance policy would be the document to look at to see if his interests were covered. Further, because of this language, neither of the appellees could have foreseen that the appellant would rely on the Certificate of Insurance for information on the extent of coverage on the appellant's property interest." 131 Ohio App. 3d 71, 77 (Ohio Ct. App. 1999). In so holding, it cited a prior appellate case wherein the court "held that a party cannot justifiably rely upon an alleged negligent misrepresentation by an insurance agent when the party could have discovered the accuracy or validity of the representation by reviewing the insurance policy." *Id.* at 78 (citing *Brown v. Woodmen Acc. & Life Co.*, 84 Ohio App. 3d 52, 56-57 (Ohio Ct. App. 1992)); *see also Brown*, 84 Ohio App. 3d 57 ("[W]e have already found that it was within appellants' ability to readily discover the coverage for alcoholism treatment under the Woodmen insurance policy by requesting the documentation regarding such coverage from Alvin Janson. Therefore, as a matter of law, under *Pedler,* recovery under a theory of equitable estoppel was not available to appellants[.]"); *Pedler v. Aetna Life Ins. Co.*, 23 Ohio St. 3d 7, 9-11 (Ohio 1986) (holding that "an insurer may enforce the limitation on eligibility for coverage clearly stated in its master policy . . . despite the acceptance of premium payments and the issuance of a certificate specifying greater coverage" where the insured "either knows the facts or is in a position to know

15

them or where the circumstances are such that he should have known them; or where the circumstances surrounding the transaction are sufficient to put a person of ordinary prudence on inquiry which would have disclosed the facts.") (internal quotation omitted)); *Geeta Hosp. Inc. v. Dependable Quality Constr., LLC*, 2021 WL 1599188, at *5 (S.D. Ohio) ("Generally, a certificate of liability insurance does no more than certify that insurance existed on the day that it was issued; many certificates contain disclaimers that expressly explain that no rights are created.") (citing, *inter alia*, *Certain Underwriters at Lloyd's of London v. NFC Mining, Inc.*, 427 F. App'x 404, 405 (6th Cir. 2011) ("NFC could not reasonably think that a certificate of liability insurance, as opposed to the insurance contract itself, would confer coverage for coal dust damages.").[6]

Here, it is undisputed that Sinmier never sought additional information regarding coverage or a policy. And the Evidence of Property Insurance form expressly states that it "CONFERS NO RIGHTS" on Sinmier. Sinmier contends that "the Policy was never sent by Bankers to Vintro or Sinmier. How could Sinmier review a policy that Berkley now says does not exist?" (Doc. 368, at 29). But this is precisely the point – Sinmier did not ask to see it to confirm and "a party cannot justifiably rely upon an alleged negligent misrepresentation by an insurance agent when the party could have discovered the accuracy or validity of the representation by reviewing [or here, *requesting*] the insurance policy." *Id.* (citing *Brown*, 84 Ohio App. 3d 52, 56-57. As such, Sinmier cannot rely on it to bring a claim.

---

6. Sinmier relies on *Midland Enterprises, Inc. v. St. Paul Fire & Marine Insurance Co.* for the proposition that "a certificate is not a policy itself, but it serves as evidence of coverage". 139 Ohio App. 3d 650, 655 (Ohio Ct. App. 2000). But there was no mention in *Midland* of the "confers no rights" disclaimer language that appears in the Evidence of Insurance form in the instant case and as existed in *Lu-An-Do*.

Notice of Cancellation

This leaves the cancellation documents. Although there is certainly logical appeal to Sinmier's argument that "[h]ow can you cancel something that does not exist[?]", Ohio courts have rejected similar arguments in similar factual situations. In *White v. Lawler*, the plaintiff submitted a check with his application for automobile insurance on February 20. 2005-Ohio-3835 at ¶ 2. That check was returned for insufficient funds. *Id.* On February 27, plaintiff "made a deposit in his checking account to cover the . . . check to defendant, but never reissued a check." *Id.* On March 1, the plaintiff was in an automobile accident. *Id.* He later received a Notice of Cancellation from defendant stating that his coverage would be cancelled as of March 23. *Id.* The plaintiff appealed the trial court's grant of summary judgment to the defendant and argued in part the notice of cancellation created an issue of fact regarding whether the policy was in place at the time of the accident. The appellate court rejected this argument, finding that because a condition precedent to the policy – payment – was not fulfilled, the policy never went into effect and therefore cancellation was "not relevant":

> Plaintiff further argues that because the Notice of Cancellation stated that coverage would be cancelled as of March 23, 2002, one can infer that defendant waived and/or extended the time to meet the Application's down payment requirement, and, therefore, he was insured on the date of the accident. According to plaintiff, the Notice of Cancellation supports his contention that he must have had coverage on March 1st because, otherwise, there would be nothing to cancel. We reject this argument.
>
> * * *
>
> In the case at bar, plaintiff's down payment check had been dishonored. The condition precedent of that payment, therefore, was not fulfilled. Because plaintiff never tendered payment he never provided any consideration for insurance coverage from defendant. Accordingly, the policy was never activated and, therefore, there was nothing to cancel. Moreover, because defendant had no obligation to inform plaintiff that he had forfeited coverage by not making the required down payment, the issue of cancellation is not relevant.

*Id.* at ¶ 12. That is, because the policy never took effect, the court found irrelevant documents purporting to "cancel" that policy. *Id.* The same logic applies here. Because Vintro never provided the required consideration for the final insurance policy, "the policy was never activated and, therefore, there was nothing to cancel." *Id.* As such, any subsequent actions taken in relation to that policy are immaterial.

Because the Court finds that there is no genuine issue of material fact regarding whether an insurance policy (contract) was formed, Sinmier's claims for breach of contract (Count II) and declaratory judgment (Count XI) against Berkley must be dismissed. Further, because the Evidence of Property Insurance form confers no rights on Sinmier, Berkley is also entitled to summary judgment on the agency claim based thereon (Count IX).

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Sinmier's Motion for Summary Judgment Against Berkley on Count XI (Doc. 311) be, and the same hereby is, DENIED; and it is

FURTHER ORDERED that Berkley's Motion for Summary Judgment (Doc. 342) be, and the same hereby is, GRANTED.

                         s/ *James R. Knepp II*
                         UNITED STATES DISTRICT JUDGE