# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

**SINMIER LLC,**

    Plaintiff,

v.

**EVEREST INDEMNITY INSURANCE CO., et al.,**

    Defendants.

CASE NO. 3:19 CV 2854

JUDGE JAMES R. KNEPP II

**MEMORANDUM OPINION AND ORDER**

## INTRODUCTION

Currently pending before the Court is Defendant Bankers Insurance LLC's Motion for Summary Judgment. (Doc. 372). Plaintiff Sinmier LLC opposed (Doc. 392), and Bankers replied (Doc. 399). Sinmier also filed a Motion for Leave to File Sur-Reply (Doc. 400), which Bankers opposed (Doc. 401). Also pending is Defendants Everest Indemnity Insurance Company and EverSports & Entertainment Insurance, Inc.'s Motion for Joinder in Bankers' Motion (Doc. 379). Sinmier opposed (Doc. 394), and Everest and EverSports replied (Doc. 397).

For the reasons discussed below, the Court denies Sinmier's Motion for Leave to File Sur-Reply (Doc. 400); denies as moot Everest and EverSports's Motion for Joinder (Doc. 379)[1]; and grants Bankers' Motion for Summary Judgment (Doc. 372).

## BACKGROUND

This case arises out of wind and water damage to a water park and hotel property. Plaintiff Sinmier was the mortgagee/lender to Vintro Hotels and Resorts Ohio, LLC, on a seven

---

1. This Court previously granted summary judgment to Everest and EverSports. (Doc. 410). As such, the motion for joinder is moot.

million dollar loan to purchase the Maui Sands Resort and Waterpark in Sandusky, Ohio. Bankers is an independent insurance agent which sought insurance for the property on behalf of Vintro. The facts relevant to the current motions are as follows.

Mortgage Default / Foreclosure

Vintro defaulted on its loan, and Sinmier instituted a foreclosure (and receivership) action against Vintro and Inderjit Grewal (Vintro's sole member) in March 2019. *Sinmier, LLC v. Vintro Hotels & Resorts, Ohio LLC*, No. 19 CV 705 (N.D. Ohio). Vintro initially opposed foreclosure and appointment of a receiver, representing, *inter alia*, "[t]he value of the property is sufficient to discharge the mortgage debt." *Id.* at Doc. 11-1 (Grewal Affidavit). In its First Amended Complaint, Sinmier asserted claims of breach of note and mortgage, breach of guaranty, and foreclosure; it also asserted a claim of fraud and intentional misrepresentation. *Sinmier, LLC v. Vintro Hotels & Resorts, Ohio LLC*, No. 19 CV 705 (N.D. Ohio) (Doc. 38). Sinmier settled the case against Vintro and Grewal in October 2019. *See* Doc. 119-1. The Settlement Agreement provided Sinmier a deed in lieu of foreclosure to the property (*id.* at 3), and explained:

> **10. Sinmier's Release of Vintro from Deficiency Amount.** Upon receipt of the Deed in Lieu of Foreclosure, Sinmier shall fully release Vintro from any liability or responsibility it may have to pay any deficiency amount following the sale of Maui Sands, whether by foreclosure sale or otherwise. The Deed in Lieu of Foreclosure shall be considered payment in full of Vintro's monetary obligations under the Note or Mortgage. Notwithstanding the foregoing, Sinmier is not releasing Defendants from any claim related to the allocation of proceeds described in paragraph 2 of this Agreement, **or for any of the other obligations described in paragraphs 2 and 3[,] from any obligation to pay the Defendant's Monetary Payment, or for any claims arising from the disclosures contained in Exhibit B, or from any of the obligations contained in this Agreement.**

*Id.* at 5-6 (emphasis in original). Referenced paragraph two provides:

        **2. <u>Assignment of Interest- Insurance Claims/Proceeds.</u>** Defendants will provide Sinmier with specific details related to any insurance claims(s) Defendants have submitted or tendered to any insurance carrier or provider for Maui Sands. Defendants shall provide Sinmier details including the claim numbers(s) for any insurance claim(s) submitted, the date(s) any insurance claims(s) was/were made, the underlying factual circumstances causing the insurance claims(s), and the amount(s) paid or expected to be paid by any insurance carrier(s) associated with or related to any insurance claim(s) made by Defendants related to Maui Sands. The parties will subsequently determine the allocation of any of those insurance proceeds and determine to what extent those proceeds should be paid to Sinmier or retained by Defendants. The Parties are not, in any way, releasing or extinguishing any claims or rights related to or involving the distribution of any insurance claim(s) or insurance proceeds, whether the proceeds have already been paid, are pending payment or payment is due but not processed. Defendants shall fully cooperate with Sinmier and utilize all reasonable efforts as it relates to the pursuit of any insurance claims or recovery of any insurance proceeds. Defendants agree to execute a Power of Attorney attached as Exhibit F regarding any insurance proceeds simultaneously with the execution of this Agreement.

*Id.* at 3.[2] Other terms of the Settlement Agreement include a monetary payment of $627,375.00 from Defendants to Sinmier within nine months of the settlement agreement (secured by a then-unfiled consent judgment) and a release of escrow funds. *Id.* at 4.

        Sinmier did not have Maui Sands appraised, and Pargat Grewal (Sinmier's 30(b)(6) deponent) testified he did not know if, when Sinmier accepted the deed in lieu of foreclosure, Maui Sands was worth more or less than the amount owed by Vintro on the loan. (P. Grewal Depo., Doc. 372-6, at 494-95). The deed in lieu of foreclosure states that "[t]he value of the Property is not in excess of the amount of the obligations due under the Note and Mortgage, and in consideration of the conveyance of the Property, Grantor will receive a release of liability on the note, subject to the condition that this Deed shall convey the Property to Grantee free of all liens and encumbrances except those set forth in the separately executed Settlement Agreement[.]" (Doc. 76-1).

---

2. Referenced paragraph three involves a liquor license that is not at issue here.

Sinmier points out that the "current value of the property is unclear", citing "[t]he most recent offer" from April 2021 for $1,700,000. (Doc. 392-1, at 3, 7-8) (Grewal Affidavit and attached offer).

Sinmier's Claims Against Bankers

Sinmier subsequently brought the instant suit against Bankers, Berkley National Insurance Company, Alternative Risk Company, EverSports, and Everest to recover damages arising out of the losses at the property.

Against Bankers, Sinmier asserts claims of Breach of Contract – Third Party Beneficiary (Count III); Negligence (Count V); Negligence *Per Se* (Count VII); and Misrepresentation/Fraud (Count X). (Doc. 76, at 15-16, 18-19, 21, 24-25). Count III asserts Sinmier as mortgagee was a Third-Party Beneficiary to the contract between Vintro and Bankers to place insurance as ordered and "Bankers issued an Acord Evidence of Property Insurance and a Certificate of Insurance that listed Sinmier . . . as 'mortgagee.'" *Id.* at 16. Count V asserts Bankers breached its duties to third-party beneficiary Sinmier to obtain coverage for it as mortgagee. *Id.* at 18. Count VII asserts Bankers was negligent *per se* for issuing certificates of insurance for coverage that purportedly did not exist, in violation of Ohio Revised Code § 3938.04. *Id.* at 21. And Count X asserts misrepresentation or fraud for representing that property coverage was in place when it was not. *Id.* at 24.

## STANDARD OF REVIEW

Summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When considering a motion for summary judgment, the Court must draw all inferences from the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 587 (1986). The Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The moving party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* Further, the nonmoving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *See* Fed R. Civ. P. 56(c)(3) (noting the court "need consider only the cited materials").

## DISCUSSION

Bankers first argues it is entitled to summary judgment on all of Sinmier's claims because Sinmier obtained a deed in lieu of foreclosure which extinguished any rights it held as a mortgagee. It asserts, in essence, that Sinmier as a mortgagee lacks standing to bring any of the claims it asserts against Bankers. It presents separate arguments for dismissal of each individual claim. The Court finds Bankers' first argument dispositive and grants summary judgment to Bankers on that basis.

Extinguishment of Interest

At the outset, Bankers contends all claims against it must fail because Sinmier's receipt of a deed in lieu of foreclosure extinguishes any insurable interest Sinmier had as a mortgagee to the Maui Sands property. (Doc. 372, at 27-28). That is, once Sinmier accepted the title to the property as payment in full on the Mortgage/Note, it had no rights to assert as a mortgagee. Sinmier responds that (1) a deed in lieu of foreclosure (as opposed to a true foreclosure sale)

5

does not extinguish Sinmier's rights, and (2) the debt was not actually discharged because the settlement agreement did not release the $627,375.00 payment or the insurance proceeds, neither of which Sinmier has received, and expressly provided for an assignment of interest in insurance proceeds. (Doc. 392, at 18). Bankers replies that the dispositive issue is whether the mortgage debt was eliminated and asserts that it was. (Doc. 399, at 12-17).[3]

It is a basic principle that "[a] mortgagee of real or personal property has an insurable interest in the amount of a debt secured by a mortgage on the property." *N. Assur. Co. v. Nat'l Guarantee & Fin. Co.*, 21 Ohio Law Abs. 641, 643 (Ohio Ct. App. 1936). A Tennessee court described the "well-settled" rule in the majority of jurisdictions "that where . . . a loss payable mortgagee is . . . vested with rights under an insurance policy, subsequent partial or full extinguishment of the debt giving rise to the insurable interest will reduce the loss payable mortgagee's interest in the insurance proceeds to the extent that the debt has been satisfied." *Benton Banking Co. v. Tenn. Farmers Mut. Ins. Co.*, 906 S.W.2d 436, 438 (Tenn. 1995) (collecting cases); *see also Lee v. Royal Indem. Co.*, 108 F.3d 651, 653 (6th Cir. 1997) (applying Tennessee law and finding mortgagee no longer had any interest under an insurance policy after it mistakenly bid the full amount of the mortgage at the foreclosure sale). In *Benton*, after a fire loss, the mortgagee bank accepted a promissory note from a third party in the full amount of the

---

3. Sinmier moves for leave to file a sur-reply. (Doc. 400). It argues Bankers' argument in reply regarding extinguishment by the deed in lieu of foreclosure is significantly lengthier than its original argument on this point and includes citations to new non-binding caselaw. *Id.* Bankers opposes, contending its arguments in reply were simply responding to the arguments Sinmier raised in opposition. (Doc. 401). It is well-established that a party cannot raise new issues in a reply brief; he can only respond to arguments raised for the first time in the opposition." *In re FirstEnergy Corp. Sec. Litig.*, 316 F. Supp. 2d 581, 599 (N.D. Ohio 2004) (citing *United States v. Campbell*, 279 F.3d 392, 401 (6th Cir. 2002)). The Court finds Bankers' arguments in reply are directly responsive to those made by Sinmier in opposition. As such, the Court denies Sinmier's motion.

note. 906 S.W.2d at 437-38. The bank subsequently asserted it was the proper payee under the insurance policy. *Id.* at 438. The court held that because the mortgagee was only entitled to insurance proceeds to the extent of the mortgage debt, and that debt had been extinguished, the bank had no right to the insurance proceeds. *Id.* at 440. Ohio courts hold similarly. *See Barwick v. State Farm Fire & Cas. Co.*, 2011 WL 5317305, at *6 (Ohio Ct. App.) (relying on *Benton* to determine mortgagee's interest "in the insurance proceeds was extinguished to the extent of the payment it received in partial satisfaction of the debt").

*Deed in Lieu of Foreclosure*

Sinmier does not dispute the basic principles of the above caselaw, but argues, first, that a deed in lieu of foreclosure does not extinguish a mortgagee's interest in the same manner as a sheriff's sale or actual foreclosure sale, and thus the cases cited by Bankers are distinguishable. (Doc. 392, at 18) ("This distinction is critical because in the cases of foreclosure[] sales, the mortgagee receives signals to competing bidders on the open market that the property is worth at least the amount of the debt and/or the mortgagee receives payment, which extinguishes the debt."). In response, Bankers contends that it is not the method by which the debt has been satisfied that matters, but simply the fact that it has been satisfied. (Doc. 399, at 13) ("The chokepoint issue is not how Sinmier obtained title to Maui Sands but rather whether the mortgage debt has been extinguished.").

Sinmier is correct that none of the cited cases address a deed in lieu of foreclosure. However, at least one court has addressed this question in the context of a deed in lieu of foreclosure and determined that the extinguishment of the mortgage debt precludes a mortgagee's recovery of insurance proceeds. *See MBank, Inc. v. State Farm Fire & Cas. Co.*,

7

2011 WL 6182421, at *5 (D. Or.).[4] In *MBank*, the mortgagee and mortgagor entered into a settlement agreement by which the mortgagee obtained an estoppel deed. *Id.* at *2. That deed provided that the mortgagor would not be responsible for any deficiency. *Id.* The *MBank* court held that the mortgagee and mortgagor "understood, agreed and expressly stated that the transfer for the Deed to [the mortgagee] would extinguish [the mortgagor's] obligation for the loan." *Id.* at *5. Because of this, and because the deed "expressly state[d] [the mortgagor] waives its right to collect any deficiencies *for the debt* . . . the Deed and Agreement were in lieu of foreclosure and the transfer constituted a complete satisfaction of [the mortgagor's] debt owed to [the mortgagee] on the loan." *Id.* (emphasis in original). In conclusion, the court explained:

> MBank's insurable interest extended only to the amount of the debt and it is entitled to only one satisfaction of that debt. The Deed provided to MBank pursuant to the Agreement constituted a total satisfaction of the mortgage debt and eliminated MBank's insurable interest. . . . Once MBank took clear title to Lot 25 it was no longer a creditor against that property and it no longer had an insurable interest under the Policy.

*Id.* at *6. The court held this was so even though the mortgagee argued the property was worth less than the full amount of the debt. *See id.* at *4-6.

Similarly here, the Settlement Agreement provided that the deed in lieu of foreclosure "shall be considered *payment in full* of Vintro's monetary obligations under the Note or Mortgage" and that "[u]pon receipt of the Deed in Lieu of Foreclosure, Sinmier shall *fully release* Vintro from any liability or responsibility it may have to pay any deficiency amount following the sale of Maui Sands, whether by foreclosure sale or otherwise." (Doc. 119-1, at 5-6)

---

4. Although the Court in *MBank* applies Oregon law, it applies the same legal principles as Ohio would. Compare *MBank*, 2011 WL 6182421, at *4 ("[T]he Oregon Supreme Court recognized that when the mortgagee purchases property and extinguishes the mortgage debt, the mortgagee is not entitled to insurance proceeds under a standard mortgage loss-payable clause."), *with Barwick*, 2011 WL 5317305, at *6 ("subsequent partial or full extinguishment of the debt giving rise to the insurable interest will reduce the loss payable mortgagee's interest in the insurance proceeds to the extent that the debt has been satisfied") (internal quotation omitted).

(emphasis added). The plain language of the Settlement Agreement thus demonstrates the deed in lieu of foreclosure was accepted in complete satisfaction of the amount Vintro owed Sinmier on the Note. Thus, the Court holds that full extinguishment of the mortgage debt – regardless of the mechanism by which it occurs – extinguishes the mortgagee's insurable interest.

*Settlement Agreement*

Next, Sinmier argues that the plain language of the Settlement Agreement itself demonstrates that the full amount debt was not actually discharged because (1) Sinmier has not received the promised $627,375 cash payment, and (2) the agreement provided for an assignment of interest related to insurance claims and proceeds. That is, Sinmier argues that it "does have an insurable interest in the property beyond the limited value of what it received in taking the deed to the property." (Doc. 392, at 21). This argument is not well-taken.

As to the $627,375 promised payment, the Court finds this obligation is a separate one created by the Settlement Agreement itself, not an interest Sinmier had in insurable property as a mortgagee, and not an interest secured by the mortgage. *See* Doc. 119-1, at 4. Therefore, the Court finds unpersuasive Sinmier's argument that the debt was not discharged because of this separate unpaid debt (secured by a separate then-unfiled consent judgment[5]). That Sinmier retained other rights by virtue of the settlement agreement does not mean that the mortgage debt itself was not extinguished by the deed in lieu of foreclosure.

As set forth above, the Settlement Agreement states that the deed in lieu of foreclosure "shall be considered payment *in full* of Vintro's monetary obligations under the Note or

---

5. Sinmier recently took action to file and enforce that consent judgment. *See Sinmier, LLC v. Vintro, LLC*, No. 19 CV 705 (Doc. 42) (Plaintiff's Motion to Enter Agreed Judgment Order); (Doc. 43) (Agreed Judgment Entry in favor of Plaintiff against Defendants Vintro Hotels & Resorts Ohio LLC and Inderjit Grewal, jointly and severally in the amount of $627,375.00 entered June 22, 2023).

9

Mortgage." (Doc. 119-1, at 6) (emphasis added). It also, as Sinmier points out, discussed insurance claims. *Id.* at 3. However, although Sinmier represents that the Settlement Agreement "assigned all rights to insurance proceeds to Sinmier", the Court finds the language of the agreement (1) does not support this interpretation, and (2) does not vest rights to insurance proceeds to Sinmier in its status as mortgagee.

First, although the title of paragraph two uses the word "assignment", the language that follows does not specifically assign any rights:

> **2. <u>Assignment of Interest- Insurance Claims/Proceeds.</u>** Defendants will provide Sinmier with specific details related to any insurance claims(s) Defendants have submitted or tendered to any insurance carrier or provider for Maui Sands. Defendants shall provide Sinmier details including the claim numbers(s) for any insurance claim(s) submitted, the date(s) any insurance claims(s) was/were made, the underlying factual circumstances causing the insurance claims(s), and the amount(s) paid or expected to be paid by any insurance carrier(s) associated with or related to any insurance claim(s) made by Defendants related to Maui Sands. The parties will subsequently determine the allocation of any of those insurance proceeds and determine to what extent those proceeds should be paid to Sinmier or retained by Defendants. The Parties are not, in any way, releasing or extinguishing any claims or rights related to or involving the distribution of any insurance claim(s) or insurance proceeds, whether the proceeds have already been paid, are pending payment or payment is due but not processed. Defendants shall fully cooperate with Sinmier and utilize all reasonable efforts as it relates to the pursuit of any insurance claims or recovery of any insurance proceeds. Defendants agree to execute a Power of Attorney attached as Exhibit F regarding any insurance proceeds simultaneously with the execution of this Agreement.

(Doc. 119-1, at 3). Rather, it preserves the right for Sinmier and Defendants (both Vintro and Grewal) to allocate the distribution of insurance proceeds. That the parties separately agreed to pursue and allocate insurance claims does not demonstrate that Sinmier retained any rights under any insurance policy *as a mortgagee* to those proceeds. *See Barwick*, 2011 WL 5317305, at *7 ("'The mortgagee's interest in the insurance proceeds is recognized as security for the payment of the debt. The insurance is an alternative source of payment and once the debt is paid by some

10

other means, any right to the insurance is thereby extinguished. Equity requires that subsequent events, such as payment of the underlying debt, not be ignored when the court distributes the insurance proceeds.'") (quoting *Lee*, 108 F.3d at 654) (in turn, quoting *Benton*, 906 S.W.2d at 439). Vintro did concurrently execute a document entitled Durable Power of Attorney Regarding Adjustment, Settlement & Obtaining Proceeds of Insurance Claim. (Doc. 1-7). But the Power of Attorney document provides Sinmier the right to adjust and pursue claims as Vintro's agent. *See id.* Sinmier's claims in the instant case are not claims brought in its capacity as agent of Vintro. Rather, Sinmier seeks to vindicate rights it asserts it independently had as mortgagee under an insurance policy. *See* Doc. 76, at 15-16, 18-19, 21, 24-25.

Finally, Sinmier contends the policy reason underlying the above rule is to avoid unjust enrichment of an insured party, and no such unjust enrichment would occur here. This is so, it contends, because "Plaintiff now has title to a severely damaged property that is worth a fraction of the loaned amount, leaving a significant deficiency. Additionally, Sinmier has not received the insurance proceeds or cash amount to which it is entitled." (Doc. 392, at 23). As set forth above, the Court finds the insurance proceeds and cash amount were separate agreements. And Sinmier expressly released Vintro from payment of any deficiency on the original mortgage and note. *See* Doc. 119-1, at 5-6 ("Upon receipt of the Deed in Lieu of Foreclosure, Sinmier shall fully release Vintro from any liability or responsibility it may have to pay any deficiency amount following the sale of Maui Sands, whether by foreclosure sale or otherwise. The Deed in Lieu of Foreclosure shall be considered payment in full of Vintro's monetary obligations under the Note or Mortgage.").

11

Sinmier's claims against Bankers are based solely on its interest as a mortgagee. *See* Doc. 76, at 15-16, 18-19, 21, 24-25. Because the mortgage debt was extinguished by the Settlement Agreement, its claims against Bankers must fail.

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Sinmier's Motion for Leave to File Sur-Reply (Doc. 400) be, and the same hereby is DENIED; and it is

FURTHER ORDERED that Everest and EverSports Motion for Joinder (Doc. 379) be, and the same hereby is DENIED AS MOOT; and it is

FURTHER ORDERED that Bankers' Motion for Summary Judgment (Doc. 372) be, and the same hereby is GRANTED.

 s/ *James R. Knepp II*  
UNITED STATES DISTRICT JUDGE